IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WHOLE FOODS MARKET GROUP, INC.,   )
550 Bowie Street   )
Austin, TX 78703-4644   )
   )
     Plaintiff,   )
   )
   v.   )   Civil Action No.
   )
WICAL LIMITED PARTNERSHIP,   )
1120 Vermont Ave., N.W., Suite 900,   )
Washington, D.C. 20005-3532   )
   )
   Serve: GYFB Inc., Registered Agent   )
          1200 New Hampshire Ave., N.W.   )
          Suite 555   )
          Washington, D.C. 20036   )
   )
   Defendant.   )

## VERIFIED COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND OTHER RELIEF

Plaintiff, Whole Foods Market Group, Inc. ("Whole Foods" or "Plaintiff"), by and through its undersigned counsel, for its Complaint against Wical Limited Partnership ("Wical" or "Defendant") states and alleges as follows:

## NATURE OF THE ACTION

1.      By this action, Whole Foods seeks a declaration that its Landlord's attempts to default Whole Foods and forfeit its tenancy located at 2321 Wisconsin Avenue, NW, Washington, D.C. 20007 where it has operated its "Georgetown Store" since 1996 are unlawful. Whole Foods also seeks an injunction against Defendant's attempts to forfeit its interest in the premises.

2.      Whole Foods has been operating its Georgetown Store since 1996. Whole Foods has timely paid all rents due and owing under the lease. Whole Foods employs over 150 people at this location and provides a valuable resource to the community.

3.    Wical has threatened to terminate the lease and has issued a baseless Notice of Default despite Plaintiff's timely payment of all rents due and its substantial and ongoing efforts to comply with all requirements of the lease, all in an apparent attempt to unjustifiably extract additional rent from Whole Foods.

4.    Specifically, Defendant claims that Whole Foods violated its lease when it closed the Georgetown Store for a period exceeding 60 days. However, the closure was necessary to promptly and effectively address a potential health issue, and to enable Whole Foods to comply with its lease obligations to keep the premises free of pests and to improve the Georgetown Store and operate at the high level of quality expected from Whole Foods. Whole Foods closed the Georgetown Store to address the impact to the store from an infestation problem which had resulted in violation notices from the District of Columbia. Whole Foods closed the store on March 13, 2017 to begin work to address the infestation issue. This required the demolition of a substantial portion of the interior of the store. It will have to be rebuilt. Whole Foods is required by the Lease to keep the property clean and free of pests and operate the store in accordance with the same standards of quality as it does in similar stores. To do so, it was required to demolish and rebuild the interior of the store and to rebuild with a substantial upgrade. To date, Whole Foods has spent in excess of $1,000,000 on the project. To complete the upgrade required by the lease, the cost will be in the millions. A closure in excess of 60 days is necessitated by the unfortunate timing of these events, by the time required to prepare plans, and to go through the permitting process. Whole Foods was prepared to submit the application for permits on May 23, 2017, but on May 26, 2017, Defendant refused to provide its consent as owner of the property as required by the District's permitting application process, causing Plaintiff further delays in obtaining necessary permits.

Plaintiff's delays are expressly excusable under the lease. Whole Foods continues to pay all rent. There is no harm whatsoever to Defendant.

5.      Nevertheless, Defendant issued a Notice of Default to Whole Foods on May 15, 2017, alleging a breach of the lease, demanding a cure within 15 business days, and threatening to terminate the lease. Plaintiff believes that the Notice of Default is unlawful, that the 15 day cure period does not apply to a non-monetary default where the tenant is working diligently to cure a breach of its obligation to keep the premises free from pests, and is diligently pursuing a cure. Plaintiff is informed and believes Defendant's purpose in issuing the Notice of Default was to strong-arm Whole Foods into paying additional rent and committing to a longer term after Plaintiff has expended substantial funds in furtherance of the repair and improvement project.

6.      If Defendant's Notice of Default is sustained, Plaintiff stands to suffer significant hardship in that it would either be coerced into paying increased rent to stay at the Georgetown Store location, or forced to close the Georgetown Store and relocate, terminating employees, losing the investment Plaintiff has made into repairing and improving the Georgetown Store, paying more in improvement costs at a new location, and harming Plaintiff's reputation in the community. Plaintiff is therefore without an adequate legal remedy.

7.      Plaintiff is seeking: (a) the Court's declaration that Plaintiff did not breach its lease and the Defendant's Notice of Default is unlawful; (b) an injunction against the Defendant from enforcing the May 15, 2017 Notice of Default, issuing any further Notices of Default, notices to quit possession, or otherwise terminating the lease and pursuing an action for possession; (c) an injunction requiring that Defendant abide by the lease and return to the status quo under the lease and consent to all permit applications at Plaintiff's request; (d) damages to compensate Plaintiff

for damages arising from Defendant's breaches of the lease, including lost profits, and (e) attorney's fees.

## THE PARTIES

8.      Plaintiff, Whole Foods, is a corporation organized and existing under the laws of Delaware, with a principal place of business in Austin, Texas. It operates the world's leading natural grocery chain. Plaintiff is duly authorized to transact business in the District of Columbia. It operates the Georgetown Store.

9.      Defendant Wical is a limited partnership organized and existing under the laws of the District of Columbia and transacting business in the District as the landlord of the Georgetown Store. On information and belief, Wical's general partner is Sylvan C. Herman, who resides in the District. On information and belief, Wical's limited partners also reside in the District.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction over the subject matter of this case pursuant to 28 U.S.C. §1332(a) and 28 U.S.C. §1367(a) because the Plaintiff is a citizen of Delaware and Texas, while the Defendant is a citizen of the District of Columbia. This Court also has jurisdiction over this action under 28 U.S.C. §§2201-02, because there is a live and justiciable controversy between Plaintiff and Defendant that requires declaratory relief specifying the obligations of each party under the Lease and injunctive relief to prevent Defendant from terminating the Lease.

11.     This Court has personal jurisdiction over the Defendant who is located in the District of Columbia.

12.     Venue is proper pursuant to 28 U.S.C. §1391(b) because the Defendant's principal place of business is located in the District of Columbia, the events giving rise to this action all

occurred in the District, the property that is the subject of this action is located in the District, and the Lease Agreement is expressly governed by the laws of the District.

## STATEMENT OF FACTS

13.    Plaintiff re-alleges and incorporates by reference the allegations contained in Paragraphs 1 through 12 of this Complaint.

### A.  Plaintiff's Lease with Defendant

14.    On March 10, 1994, Defendant entered into a Lease Agreement with Plaintiff's predecessor in interest, Bread & Circus, Inc., a wholly owned subsidiary of Plaintiff's parent company, which was later assigned to Whole Foods on March 17, 1997 (collectively the "Lease"). A true and correct copy of the Lease Agreement and Assignment of Leases is attached hereto and incorporated herein and filed under seal as Exhibit A.[1]

15.    Paragraphs 1 and 2 of the Lease provide for an initial term of twenty (20) years and six (6) months (through January 31, 2016), with an option at Plaintiff's discretion to renew the lease for up to four (4) additional terms of five (5) years each (through January 31, 2036). Plaintiff exercised one initial 5-year option to renew. It expires on January 31, 2021. Plaintiff has three more 5-year options.

16.    Paragraph 3(F) of the Lease requires Plaintiff to pay percentage rent in the event Plaintiff's gross revenues exceed a specified amount.

17.    Paragraph 4(F) of the Lease entitled Conduct of Business provides in pertinent part: "Tenant shall continuously conduct its business at the Demised Premises in accordance with the same standards of operation and in the same quality as it presently operates its other similar stores, subject to the other terms and provisions of this Lease. Tenant shall not cause injury or waste to

---

[1] Exhibit A is being attached to Plaintiff's Motion to File Exhibit A to the Verified Complaint Under Seal, which is being filed contemporaneously herewith.

the Demised Premises, reasonable wear and tear excepted. Tenant shall keep the Demised Premises and all areas appurtenant thereto (including without limitation the parking garage, loading dock and service areas) clean and free from pests, insects, rubbish, trash and garbage, and, at its own expense, arrange for removal of same."

18.     Paragraph 4(G) of the Lease entitled <u>Renovation</u> provides: "The Demised Premises may occasionally require rehabilitation, modernization or improvement. Tenant may, from time to time, close the Demised Premises to the public for such periods as may be reasonably required in order to diligently modernize or improve same, but in no event shall such closures exceed sixty (60) days in the aggregate during any three (3) year period elapsing during the Lease Term."

19.     Paragraph 5(A) of the Lease entitled <u>Non-Structural Repairs and Maintenance</u> requires the Plaintiff to make all necessary structural and non-structural repairs and replacements and perform all maintenance "in a good and workable manner in accordance with all applicable governmental requirements."

20.     Paragraph 18(A) of the Lease entitled <u>Events of Default</u> provides that, in the event of a default, Defendant must provide a written notice of the violation and provide Plaintiff with fifteen (15) business days to cure the violation. If Plaintiff does not cure the violation within the cure period, Paragraph 18(A) provides that Defendant may enter and take possession of the premises and expel and remove Plaintiff. Paragraph 18(A) also provides in part: "The aforesaid reference to fifteen (15) business days in the case of a non-monetary default shall be extended to include such additional time (not in excess of sixty (60) days) reasonably required in order to permit Tenant to fully cure any such non-monetary default hereunder, provided Tenant is diligently prosecuting its cure, with the understanding that no such additional time shall pertain to any default by Tenant of its obligation to continuously operate its business operations within the Demised

premises and further that the aforesaid limitation to sixty days shall not apply in the case of a structural repair or replacement required of Tenant hereunder so long as Tenant is diligently and in good faith prosecuting such structural repair or replacement to completion."

21.     Paragraph 18(C) of the Lease entitled <u>Attorney's Fees</u> provides that Defendant shall reimburse Plaintiff for its reasonable attorney fees in the case of a Landlord default.

22.     Paragraph 27(J) of the Lease entitled <u>Reasonable Consent</u> provides: "Whenever it is necessary under the terms of this Lease for either party to obtain the consent or approval of the other party, such consent or approval shall not be unreasonably withheld or delayed."

23.     Paragraph 30(A) of the Lease entitled <u>Excuse for Nonperformance</u> provides: "If either party hereto shall be delayed or prevented from the performance of any act required hereunder (other than the payment of monies) by reason of acts of God, strikes, lockouts, labor troubles, plan approval delay, inability to procure materials, restrictive governmental laws or regulations, adverse weather, unusual delay in transportation, delay by the other party hereto or other cause without fault and beyond the control of the party obligated to perform (financial inability excepted), then upon notice to the other party, the performance of such act shall be excused for the period of the delay and the period of performance of such act shall be extended for a period equal to the period of such delay; provided, however, the party so delayed or prevented from performing shall exercise good faith efforts to remedy any such cause of delay or cause preventing performance, and nothing in this paragraph shall excuse Tenant from the prompt payment of any rental or other charges required of Tenant except as may be expressly provided elsewhere in this Lease."

24.     Since the beginning of the Lease, Plaintiff (or its assignor) timely paid all rent due to Defendant, including all annual increases. .

25.     Plaintiff has never paid or been obligated to pay percentage rent under the Lease because its gross receipts have not met the minimum required threshold.

26.     Plaintiff has never closed the Georgetown Store prior to 2017 since opening in 1996, as it was entitled to do for 60 days every 3 years. Plaintiff has not undergone any major remodeling, improvement, or modernization project at the Georgetown Store for more than a decade.

B.  Repair and Remodeling Project

27.     During 2017, Whole Foods received two notices from the District of Columbia for local ordinance violations pertaining to rodent problems at the Georgetown Store. On both occasions, the violations required the Georgetown Store to close for 24 hours or more.

28.     Despite its efforts, Whole Foods was unable to fully address the issues raised in the first notice.

29.     Whole Foods received the second violation notice from the District of Columbia on March 13, 2017.

30.     As a result of the second Notice, and to pursue a complete and lasting resolution of the problem, Whole Foods closed the Georgetown Store on March 13, 2017. Whole Foods immediately began remedial work, and has diligently pursued the project since that time.

31.     After consulting multiple contractors, Whole Foods determined that, to cure the violations from the District of Columbia and comply with its Lease obligations, the Georgetown Store must be closed, emptied of much of its inventory and fixtures, and gutted, including the removal of drywall and ceiling tiles, and a thorough cleaning of the premises.

32.     Whole Foods engaged multiple contractors to immediately begin work on the project.

33.     Since the Georgetown Store was being emptied, gutted, and cleaned, Whole Foods would be required to essentially rebuild the interior of the store - installing new drywall, ceilings, fixtures, shelving, equipment, and other design elements to restore the Georgetown Store to basic operational quality.

34.     Because, as alleged above, the Lease requires Whole Foods to operate the Georgetown Store "with the same standards of operation and in the same qualify as it presently operates other similar stores" (see, para. 19, above), simply rebuilding the store as it was prior to demolition would not comply with the Lease, Whole Foods was required to essentially rebuild a "new" store interior. Whole Foods therefore has planned additional improvements to the Georgetown Store to bring it up to the same standards and operation and quality as it operates similar stores in the District of Columbia and surrounding areas.

35.     To fully address the pest problem and code violations, Whole Foods needed to destroy the walls and ceilings, which necessitated a complete rebuild of the interior of the store. Whole Foods' planned improvements include: modernizing the store's layout; replacing existing food display cases; replacing the salad bar; replacing the millwork, cabinetry, register stands, walls, and ceilings which were demolished in curing the ordinance violation; overhauling the elevator and conveyor system; and adding new food presentations which requires the movement of certain major systems such as plumbing and HVAC.

36.     Whole Foods immediately engaged an architect to draw up plans incorporating the repairs and improvements and approved expedited services from all vendors relating to the remodeling project.

37.     Once the architect's plans were substantially completed, they were submitted to the general contractor to draw up construction plans necessary to obtain permits.

38.     Whole Foods' general contractor has advised Whole Foods that construction plans were completed on or about May 26, 2017. They must be submitted to the District of Columbia for approval and permitting before the planned restoration and improvement work can begin. Whole Foods understands that the District of Columbia may not approve the plans and issue permits for months or more due to a backlog in permitting requests. This process is completely out of Whole Foods' control and is contemplated as an excusable delay under Paragraph 30A of the Lease (see, ¶24 above).

39.     As part of the permit application process, Whole Foods is required to obtain consent from the property owner. Whole Foods requested such consent from Defendant on March 23, 2017, and Defendant provided its written refusal to consent on March 26, 2017. Without consent from Defendant, Plaintiff is unable to apply for permits.

40.     Once the plans are approved and permits issued, Whole Foods believes the repair and remodel can be completed within 6 months.

41.     Whole Foods also believes that the repair and remodel will increase its customer base and reputation in the community, also increasing its gross sales from the Georgetown Store and enhancing the likelihood of Defendant receiving "percentage" rent.

42.     Despite the Georgetown Store being closed since March 13, 2017, Whole Foods has continued to timely make its rent payments to Defendant. It has acted, and continues to act, in good faith and with due diligence.

C.   Defendant's Attempts to Terminate the Lease and Default Notice

43.     Whole Foods has kept Defendant reasonably apprised of the closure, repairs, and remodeling.

44.     In April 2017, Whole Foods' notified Defendant of the status of the repair and remodeling project and explained that, in order to correct the ordinance violation, the store's ceiling and walls had to be completely demolished and the store's interior needed to be entirely rebuilt. Whole Foods further explained that, due to delays in obtaining plans and permits, the project would cause the Georgetown Store to remain closed more than 60 days, and that it believed the closure fell within Paragraph 30(A) of the Lease, which provides that non-performance of Lease requirements would be excused because the delay was not the fault of Whole Foods.

45.     Notwithstanding that Defendant has received all payments due under the Lease, has never been and will not be damaged, and stands only to benefit, Defendant's response to the problem has been to demand more in rent and in term under threat of forfeiture.

46.     On May 15, 2017, Defendant sent to Plaintiff a "Notice of Default if Not Cured Within Fifteen (15) Business Days." A copy of the May 15, 2017 Notice of Default is attached hereto and incorporated herein and filed under seal as Exhibit B.

47.     To date, Plaintiff has spent approximately $1 million in curing the local ordinance violation, repairing, and improving the Georgetown Store.

48.     Plaintiff anticipates that the total cost of the repair and remodeling project will be several million dollars.

49.     In addition, Plaintiff has suffered losses relating to the Georgetown Store's closure, including the loss of sales since the closure on March 13, 2017 and the interim rent payments to Defendant, which Plaintiff would be unable to recoup if the Lease were terminated.

50.     Plaintiff anticipates Defendant will attempt to terminate the lease upon the expiration of the fifteen (15) business days, and thereafter seek not only the remaining rent due

under the lease, but also reimbursement of all costs to restore the demolished interior of the Georgetown Store.

51.     Plaintiff cannot proceed with the completion of the renovation at a cost of millions of dollars, and continue to pay rent, faced with Defendant's Notice of Default and the threat of imminent forfeiture. It is therefore without an adequate legal remedy and in need of declaratory and injunctive relief.

**COUNT I**
**DECLARATORY JUDGMENT**

52.     Plaintiff re-alleges and re-incorporates by reference the allegations contained in Paragraphs 1 through 51 as and for this Paragraph 52.

 

A.     Plaintiff's Actions Are Not a Breach of the Lease

53.     The Lease requires Plaintiff to repair, maintain, and operate the Georgetown Store "with the same standards of operation and in the same quality as it presently operates its other stores." It also requires Plaintiff to keep the Demises Premises "clean and free from pests." (Exh. A, Lease ¶¶ 4(F) & 5(A).)

54.     While the Lease requires Plaintiff to continually operate the Georgetown Store and limit store closures to 60 days, the Lease also excuses the store's closure beyond 60 days where Plaintiff is delayed or prevented from operating by reason of an event outside of Plaintiff's control, with the only exception being non-payment of rent.

55.     Plaintiff's closure of the Georgetown Store was done on an emergency basis to conduct necessary repairs to comply with the Lease and to correct ongoing local ordinance violations.

56.     The repairs required the destruction of walls and ceilings, necessitating a complete rebuild of the store interior to restore the premises.

57.     Plaintiff's improvements of the Georgetown Store requires that Plaintiff have an architect draw up plans, acquire any necessary permits before beginning construction, and engage a contractor to carry out the construction. These significant improvements are required for Plaintiff to comply with the Lease requirements to operate at the same standards and quality as other similar stores.

58.     Construction plans were completed on or about May 26, 2017. Plaintiff began the permit application process in advance of the finished plans, and on May 23, 2017, Plaintiff requested consent from Defendant required to certify the owner's approval for purposes of the permit application.

59.     On May 26, 2017, Defendant gave its written refusal to provide consent, preventing Plaintiff from finishing the permit application.

60.     Delays caused by obtaining plans and permits are outside of the Plaintiff's control, making the delay in re-opening the store excusable under Paragraph 30(A) of the Lease.

61.     Moreover, the delay in obtaining permits is attributable to Defendant, who refused to consent to the permit application.

62.     Plaintiff provided notice of the delay in re-opening the store to Defendant in accordance with Paragraph 30(A) of the Lease on April 5, 2017.

63.     Under Paragraph 18(A), Plaintiff is entitled to in excess of fifteen (15) business days to cure the non-monetary default relating to addressing the pest problems as it is diligently and in good faith pursuing the work. Nevertheless, Defendant has claimed that Plaintiff has only

fifteen days to cure, has asserted that Paragraph 30(A) does not apply and, due to Plaintiff's inability to re-open the Georgetown Store within 60 days, it no longer has a lease.

64.     Paragraph 18(A) gives Plaintiff an extended cure period.

65.     Paragraph 30(A) does not give Defendant discretion to accept or reject the reason for the delay; rather, Paragraph 30(A) states that the non-performance "shall be excused for the period of the delay."

66.     As such, Plaintiff is in the cure period and is not in default of the Lease because the closure beyond 60 days is excused for the entire period of the delay.

### B.     The Lease Terms Must be Construed to Uphold the Lease

67.     Paragraph 4(G) of the Lease requires Whole Foods to close for rehabilitation, modernization, or improvement no more than 60 days, while Paragraphs 4(F) and 5(A) require Whole Foods to keep the Demised Premises free from pests, perform all necessary repairs and operate the Georgetown Store in accordance with the same standards and quality as other similar stores. Paragraph 18(A) allows for a cure period in excess of fifteen (15) days where Plaintiff is diligently pursuing repairs. Further, Paragraph 30(A) recognizes clearly applicable excuses for non-performance.

68.     Curing the pest problem and local ordinance violation required substantial demolition, repairs, and maintenance which forced the Georgetown Store to close and remain closed until the repair and remodeling project can be completed, necessitating plans and permits to complete the project.

69.     In addition, the Georgetown Store required substantial improvements and modernization to bring the store's quality up to the same standards and quality of similar stores.

70.     Acquiring the required plans and permits and completing construction will cause the Georgetown Store to remain closed more than 60 days.

71.     Under the circumstances, Plaintiff cannot satisfy all express requirements under Paragraph 4(G) and Paragraphs 4(F) and 5(A).

72.     At all times, Plaintiff acted in good faith in paying rent to Defendant while taking steps to meet its obligations under Paragraphs 4(F) and 5(A).

73.     The District of Columbia disfavors forfeitures of commercial leases and will not allow a forfeiture unless circumstances warrant such a harsh sanction.

74.     The event triggering the Notice of Default was not the closure of the store but rather the pest problem and the attempt to comply with Paragraph 4(F) of the Lease. Plaintiff's obligations under the Lease are therefore conflicting.

75.     Enforcing the Notice of Default would be unconscionable, since the Defendant would receive a windfall and be unjustly enriched in that it would either coerce the Plaintiff into signing a new lease with higher rent and a longer term, or it would receive the benefit of Plaintiff's work to date.

C.     Defendant's Notice of Default is Unlawful and Pretextual

76.     Defendant's Notice of Default alleged that Plaintiff breached the Lease by remaining closed more than 60 days.

77.     However, from the date Defendant was first notified of the local ordinance violation and scope of the repair and remodeling project, Defendant intended to use Plaintiff's position to induce Plaintiff into signing a new lease with a higher monthly rent, lower percentage rent threshold, and longer term.

78.     In meetings between representatives of Plaintiff and Defendant, Defendant advised Plaintiff that it no longer had a lease, even though the 60-day closure period had not yet expired at the time of Defendant's statements.

79.     Defendant's Notice of Default constitutes a scheme to allow Defendant to take advantage of Plaintiff's unfortunate situation, and was issued in bad faith.

80.     Defendant's refusal to recognize Paragraph 30(A) in Plaintiff's situation also constitutes bad faith.

81.     Defendant's refusal to consent to Plaintiff's permit application was made in bad faith and in violation of Paragraph 27(J).

82.     Defendant's Notice of Default should not be sustained because equity will not allow Plaintiff to be tricked into a forfeiture.

83.     Paragraph 18(A) of the Lease provides that, in the case of Plaintiff's default of any provision of the Lease, Defendant shall send a written notice stating the violation and giving Plaintiff 15 business days to cure. However, Paragraph 18(A) also provides that the 15 day cure period is to be extended for 60 days or more while Plaintiff is diligently pursuing remedy. If Plaintiff does not timely cure the violation, Paragraph 18(A) provides that Defendant may enter the premises and expel Plaintiff without any notice to quit, demand for possession, or other court proceedings.

84.     It is well-established in the District of Columbia that a landlord must use the statutory eviction procedures and may not use self-help.

85.     Since the provisions in Paragraph 18(A) which provide for self-help are contrary to established law, Paragraph 18(A) is invalid on its face and must be stricken in this regard.

86.     As a result, Paragraph 18(A) does not allow for an applicable cure period of 15 days, and instead, Plaintiff should be allowed a reasonable time to cure any alleged default.

87.     Since Plaintiff is taking steps to complete the remodeling project on an expedited basis so it can re-open the Georgetown Store, Plaintiff has not breached the Lease because the alleged default will be cured within a reasonable time.

D.     Plaintiff is Threatened With Irreparable Harm / Defendant has Suffered No Damage

88.     Plaintiff is in the midst of a rehabilitation project on which it is committed to spend millions of dollars under threat of forfeiture.

89.     Defendant's Notice of Default contains Defendant's allegation that Plaintiff breached the Lease by remaining closed more than 60 days.

90.     Even if Plaintiff's closure longer than 60 days is not excused by Paragraph 30(A), Defendant has suffered no damages from Plaintiff's alleged breach.

91.     Plaintiff has continued to timely pay rent throughout its closure, and would like to continue to do so.

92.     Defendant would not be entitled to any other damages arising from Plaintiff's alleged breach, because it was never entitled to receive percentage rent prior to the repair and remodeling project.

93.     As a result, Defendant could not succeed in proving Plaintiff breached the Lease because it lacks an essential element to state a claim for breach of contract.

E.     The Notice of Default Constitutes Defendant's Failure to Mitigate Damages

94.     Defendant's Notice of Default proposes to terminate the Lease unless Plaintiff cures the alleged default within 15 business days, which it knows is not possible.

- 17 -

95.     Defendant's claim that Plaintiff breached the Lease requires Defendant to mitigate its damages in order to recover.

96.     By issuing the Notice of Default, Defendant may no longer be entitled to any rent from Plaintiff.

97.     Moreover, given the current demolished state of the Georgetown Store, Defendant would not be able to obtain a replacement tenant.

98.     However, if Defendant does not terminate the Lease, Plaintiff will complete the repair and remodeling project, adding value to Defendant's building.

99.     Moreover, if Defendant does not terminate the Lease, Plaintiff will continue operating the Georgetown Store upon completion of the project, and the repairs and improvements may cause Plaintiff's gross sales to increase, triggering the percentage rent Lease provision for the first time.

100.    Therefore, by issuing the Notice of Default, Defendant has failed to mitigate damages and cannot succeed on a breach of contract claim against Plaintiff.

Wherefore, Plaintiff respectfully requests that this honorable Court enter an order declaring that:

(i)     Plaintiff is not in breach of the Lease by remaining closed for more than 60 days;

(ii)    So long as Plaintiff continues to diligently pursue the repair work, it is within the cure period allowed for by Paragraph 18(A) of the Lease;

(iii)   Paragraph 30(A) extends Plaintiff's obligation to re-open the Georgetown Store until the completion of the repair and remodeling project;

(iv)     The Lease is valid and enforceable, with the exception of Paragraph 18(A) to the extent it purports to allow self-help, which must be stricken;

(v)      Defendant is required to carry out its obligations under the Lease, including but not limited to, allowing Plaintiff the time and opportunity to repair, improve, and modernize the Georgetown Store and consenting to the permit application;

(vi)     Defendant's May 15, 2017 Notice of Default was issued erroneously and is invalid;

(vii)    Defendant is prohibited from issuing Notices of Default, terminating the Lease, or otherwise interfering with Plaintiff's Lease rights during the pendency of the remodeling project;

(viii)   Defendant is prohibited from entering or taking possession of the premises, and expelling Plaintiff or any of its employees, agents, or personal property, unless otherwise ordered by the Court;

(ix)     Awarding Plaintiff attorney's fees and costs of suit pursuant to Paragraph 18(C) of the Lease; and

(x)      For such other relief as this Court may deem just and proper.


**COUNT II**
**DAMAGES:**
**BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING**

101.    Plaintiff re-alleges and re-incorporates by reference the allegations contained in Paragraphs 1 through 100 as and for this Paragraph 101.

102.     The Lease constitutes a valid contract between Plaintiff and Defendant.

103.     All contracts, including the Lease, contain an implied duty of good faith and fair dealing, which means that neither party shall do anything which would have the effect of destroying or injuring the right of the other party to receive the fruits of the contract.

104.     Defendant was therefore obligated under the Lease to act in good faith and fair dealing.

105.     Defendant breached its duty of good faith and fair dealing when it issued the Notice of Default.

106.     Defendant's Notice of Default is contrary to the spirit of the Lease by penalizing Plaintiff for complying with its obligations to keep the premises free of pests and destroying Plaintiff's right to repair and remodel the Georgetown Store, continue leasing the Georgetown Store at the agreed-upon rental rates and terms, and exercise Plaintiff's options to extend the Lease until January 31, 2036.

107.     Defendant acted arbitrarily and capriciously when it issued the Notice of Default because Paragraph 18(A) allows for a longer cure period and Paragraph 30(A) excuses any non-performance on Plaintiff's part due to the delays in obtaining plans and permits, which were not in Plaintiff's control.

108.     Defendant also acted arbitrarily and capriciously when it refused to consent to Plaintiff's permit application, in violation of Paragraph 27(J), lengthening the delay in completing Plaintiff's remodeling work.

109.     As a result of Defendant's breach of its duty of good faith and fair dealing, Plaintiff has suffered damages, including, but not limited to: the substantial cost of repairs and improvements performed with the understanding that the Lease would continue; lost profits during delays caused by Defendant's refusal to consent to the permit application; potential loss of its more

than 150 employees; harm to its goodwill and reputation in the community; the value of the future leasehold; and attorney's fees to enforce Plaintiff's rights under the Lease.

Wherefore, Plaintiff respectfully requests that, in addition to the relief requested in Count I, this Court:

(i)     Order Defendant to pay damages to Plaintiff in an amount to be proven at trial arising from Defendant's breach of its contractual duty of good faith and fair dealing, including, but not limited to, lost profits;

(ii)    Award Plaintiff post-judgment interest and costs;

(iii)   Award Plaintiff attorney's fees allowed by Paragraph 18(C) of the Lease; and

(iv)    Any other relief that this Court deems is proper and just.

## COUNT III
## SPECIFIC PERFORMANCE & INJUNCTIVE RELIEF:
## BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING

110.    Plaintiff re-alleges and re-incorporates by reference the allegations contained in Paragraphs 1 through 109 as and for this Paragraph 110.

111.    Plaintiff and Defendant entered into a valid and enforceable Lease relating to the Georgetown Store.

112.    Plaintiff's Lease remains valid, and may be extended at Plaintiff's option through January 31, 2036.

113.    Defendant's Notice of Default was issued to coerce Plaintiff into signing a new lease with higher rent, a lower percentage rent threshold, and a longer term.

114.    Defendant's Notice of Default was issued in derogation of Paragraphs 18(A) and 30(A) of the Lease.

115.    Defendant's refusal to consent to the permit application is also in violation of Paragraph 27(J) of the Lease.

116.    No damage has accrued to Defendant as a result of Plaintiff's inability to re-open the Georgetown Store within 60 days, because Plaintiff has continued to pay all rent amounts due and owing to Defendant.

117.    At all times, Plaintiff has acted in good faith to meet its Lease obligations, while Defendant has acted in bad faith in abusing its power under the Lease to extract more rent from Plaintiff.

118.    Plaintiff would suffer irreparable injury if the Notice of Default were to be sustained, because Plaintiff's Lease would be terminated, causing Plaintiff to lose its substantial investment to date in the Georgetown Store, as well as suffering the loss of its more than 150 employees; delays in re-opening the Georgetown Store caused by Defendant's refusal to consent to the permit application; harm to its goodwill and reputation in the community; the value of the future leasehold; and attorney's fees to enforce Plaintiff's rights under the Lease.

119.    If a permanent injunction is granted, Defendant will not suffer any damages or harm because Defendant is already receiving all amounts it is entitled to under the Lease.

120.    Because no adequate remedy at law exists to address Defendant's attempts to terminate the Lease and extract higher rent from Plaintiff, Plaintiff respectfully asks this Court to require Defendant to specifically perform its requirements under the Lease to act in good faith and fair dealing, allow Plaintiff a longer cure period, consent to the permit application, and excuse the

store closure in excess of 60 days under Paragraph 30(A) which is due to circumstances outside of Plaintiff's control.

121.    In addition, no adequate remedy at law exists which could address Defendant's prospective eviction of Plaintiff. Thus, Plaintiff respectfully asks the Court to enjoin Defendant's attempts to evict Plaintiff.

122.    The equities and public interest overwhelmingly favor the issuance of this injunction as District law strongly favors upholding a person's valuable property rights as well as enforcing contractual obligations. In cases involving sophisticated parties such as the Plaintiff and Defendant, the courts have an even greater interest in enforcing provisions agreed to between the parties. Consequently, by issuing the injunction, the Court will be ensuring that Defendant will continue to honor the contractual obligations it voluntarily entered into.

123.    To allow otherwise would be giving permission to Defendant to willfully and intentionally breach their contractual obligation to act in good faith and fair dealing and ignore Paragraphs 18(A) and 30(A), trample over Plaintiff's valuable property rights in the Georgetown Store, and destroy Plaintiff's business at the Georgetown Store while Defendant reaps a windfall in the improved property at the expense of Plaintiff and its customers and employees.

Wherefore, Plaintiff respectfully requests that, in addition to the relief requested in Counts I and II, this Court enter a permanent injunction:

(i)    Requiring Defendant to specifically perform its requirements under the Lease, including its duty of good faith and fair dealing;

(ii)    Requiring Defendant to extend the cure period and excuse closure in excess of 60 days under Paragraph 30(A) of the Lease;

(iii)      Requiring Defendant to consent to the permit application under Paragraph 27(J) of the Lease;

(iv)      Enjoining Defendant from taking any steps to terminate the Lease, repossess the Georgetown Store, evict Plaintiff, or pursue forfeiture;

(v)      Awarding Plaintiff attorney's fees and costs of suit pursuant to Paragraph 18(C) of the Lease; and

(vi)      For such other relief as this Court may deem just and proper.

Respectfully submitted,

WHOLE FOODS MARKET GROUP, INC.

By:    */s/ Brian P. Waagner*
       One of its attorneys

Brian P. Waagner (D.C. Bar No. 450823)
Husch Blackwell LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Phone: (202) 378-2355
Brian.Waagner@HuschBlackwell.com
*Counsel for the Plaintiff*

Of Counsel:
Norman B. Berger
Sandra D. Mertens
Gensburg, Calandriello & Kanter, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Phone: (312) 263-2200
NBerger@gcklegal.com
SMertens@gcklegal.com
*Pro Hac Vice*
*Counsel for the Plaintiff*

## VERIFICATION

I declare, under penalties of perjury that the statements in the foregoing *Verified Complaint for Declaratory, Injunctive, and Other Relief* are true and correct, except as to matters therein stated to be on information and belief, and as to such matters, the undersigned certifies that he verily believes same to be true.

WHOLE FOODS MARKET GROUP, INC.

Executed on: _____June 6TH_____, 2017      By _____

Scott Allshouse, its Regional President

Cedela Ho
NOTARY PUBLIC
Montgomery County, State of Maryland
My Commission Expires January 2, 2018

Ceus        6/06/17