IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WHOLE FOODS MARKET GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-cv-01079 |
| | ) | |
| WICAL LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S EMERGENCY MOTION FOR ENTRY OF TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION,
AND FOR JUDICIAL ESCROW OF PLAINTIFF'S RENTS**

Plaintiff, Whole Foods Market Group, Inc. ("Whole Foods" or "Plaintiff"), by and through its undersigned counsel, respectfully moves this Court, pursuant to Federal Rule of Civil Procedure 65, for a temporary restraining order to preserve the status quo, and to prevent termination of the lease at the Georgetown Store, and for a preliminary injunction pending a ruling on the merits, against Wical Limited Partnership ("Wical" or "Defendant"), and for judicial escrow of Plaintiff's rental payments. In support of its Motion, Plaintiff states as follows:

**INTRODUCTION & SUMMARY OF THE NEED FOR RELIEF**

1.      The facts of this case are set forth in detail in Plaintiff's Verified Complaint, which is incorporated herein.[1] In summary, Defendant is threatening to terminate Whole Foods' tenancy as early as June 6, 2017. Whole Foods and Wical are parties to a 1996 lease of the property at 2321 Wisconsin Avenue, NW, Washington, D.C. 20007 (the "Georgetown Store") which, presuming all extensions are exercised, will not expire until January 31, 2036. On May 15, 2017, Wical issued a baseless Notice of Default and threatened to terminate the lease

---

[1] Capitalized terms used herein are defined in the Verified Complaint.

despite Plaintiff's substantial efforts to conform to the lease, all in an apparent attempt to unjustifiably extract additional rent from Whole Foods.

2.      Whole Foods has been operating its Georgetown Store since 1996. Whole Foods has timely paid all rents due and owing under the lease. Whole Foods employs over 150 people at this location and provides a valuable resource to the community.

3.      Defendant claims that Whole Foods violated its lease when it closed the Georgetown Store for a period exceeding 60 days. However, the closure was necessary to promptly and effectively address a potential health issue and to enable Whole Foods to improve the Georgetown Store to comply with its lease obligation to operate at the high level of quality expected from Whole Foods. Whole Foods closed the Georgetown Store to address an infestation problem which had resulted in violation notices from the District of Columbia. Whole Foods closed the store on March 13, 2017 to begin work to address the infestation issue. This required the demolition of virtually the entire interior of the store. It will have to be rebuilt. Whole Foods is required by the Lease to operate the store in accordance with the same standards of quality as it does in similar stores. To do so, a substantial upgrade is required. To date, Whole Foods has spent in excess of $1,000,000 on the work. To complete the upgrade, the cost will be in the millions. A closure in excess of 60 days is necessitated by the unfortunate timing of these events, the time required to prepare plans, and go through the permitting process. Plaintiff's delays are expressly excusable under the lease. Whole Foods continues to pay all rent. There is no harm whatsoever to Defendant.

4.      Plaintiff believes that Defendant's purpose in issuing the Notice of Default was to strong-arm Whole Foods into paying additional rent and committing to a longer term after Plaintiff has expended substantial funds in furtherance of the repair and improvement project. If

Defendant's Notice of Default is sustained, Plaintiff stands to suffer financial hardship in that it would either be coerced into paying increased rent to stay at the Georgetown Store location or forced to close the Georgetown Store and relocate, terminating employees, losing the investment Plaintiff has made into repairing and improving the Georgetown Store, paying more in improvement costs at a new location, and harming Plaintiff's reputation in the community.

5.     In addition, by issuing the Notice of Default, Defendant has breached its contractual duty of good faith and fair dealing, which has damaged Plaintiff.

6.     Moreover, on May 26, 2017, Defendant refused to consent to Plaintiff's application for permits with the District of Columbia, which is required to submit the permit application. Without the property owner's consent, Plaintiff's ability to obtain permits, which is expected to take 6 months or more, is threatened and substantially delayed. Plaintiff believes that Defendant's refusal to consent is in direct violation of the Lease.

**TEMPORARY RESTRAINING ORDER & PRELIMINARY INJUNCTION**

7.     As discussed above and in the Verified Complaint, there is a serious dispute concerning the interpretation of the lease and Defendant's entitlement to terminate and forfeit Plaintiff's tenancy. Defendant is threatening Plaintiff with substantial and immediate irreparable harm even though Defendant would not be harmed by allowing Plaintiff to continue pursuing its repair and remodeling project and eventually re-open the Georgetown Store, which is ultimately the relief sought in this lawsuit. Plaintiff has no adequate remedy at law to prevent the unlawful and pretextual termination of the lease.  For these reasons, Plaintiff is seeking both a Temporary Restraining Order and Preliminary Injunction pursuant to Federal Rule of Civil Procedure 65 to keep the relationship between the parties in the status quo pending a ruling on the merits of the dispute.

## I.      Legal Standard

8.      The elements for a temporary restraining order and a preliminary injunction are the same. *Delta Sigma Theta Sorority, Inc. v. Bivins*, 215 F.Supp.3d 17, 20 (D.D.C. 2013). The granting of preliminary injunctive relief is within the sound discretion of this Court. In determining whether a temporary restraining order or preliminary injunction should issue, this Court considers the following factors: (1) whether the plaintiff has a substantial likelihood of success on the merits; (2) whether the plaintiff will be irreparably injured if the injunction does not issue; (3) no other parties will be harmed if temporary relief is granted; and (4) whether a temporary restraining order or preliminary injunction will serve the public interest. *Housing Study Group v. Kemp*, 736 F.Supp.321, 334 (D.D.C. 1990); *Simpson v. Lee*, 499 A.2d 889, 892 (D.C. 1985) (granting preliminary injunction to prevent commercial landlord from repossessing and re-renting property). A plaintiff may have an irreparable injury justifying preliminary injunctive relief when the injury is certain, great, actual, and imminent. *Housing Study Group*, 736 F. Supp. at 330.

9.      The factors are reviewed on a "sliding scale" and a strong factor may compensate for a weak factor. *Clark v. Office of Federal Housing Enterprise Oversight*, 355 F. Supp. 2d 56, 62-63 (D.D.C. 2013) (granting motion for preliminary injunction); *R.J. Reynolds Tobacco Co. v. U.S. Food and Drug Admin.*, 823 F. Supp. 2d 36, 43 (D.D.C. 2012) (a very strong showing of irreparable harm without substantial harm to the non-movant may warrant application of a lower standard for likelihood of success, while a greater likelihood of success will weigh in favor of a preliminary injunction unless particularly strong equities favor the non-moving party). The test for a temporary restraining order or preliminary injunction "is not a wooden one," and must be flexible to grant relief in situations where there is some combination of a probability of success

on the merits and some injury. *Housing Study Group*, 736 F. Supp. at 324. Moreover, injunctive remedies "protect the integrity of the courts and the orderly and expeditious administration of justice." *1250 24th Street Associates Ltd. Partnership v. Brown*, 684 F. Supp. 326, 330-31 (D.D.C. 1988) (*quoting Urban v. United Nations*, 768 F.2d 1497, 1500 (D.C. Cir. 1985).

**II.      A Temporary Restraining Order and Preliminary Injunction are Warranted**

**A.  Whole Foods has a Strong Likelihood of Success on the Merits.**

10.      Whole Foods satisfies all the requirements for a temporary restraining order and preliminary injunctive relief. As set forth above (and in more detail in Whole Foods' Verified Complaint), Whole Foods is seeking the following relief: (a) the Court's declaration that Whole Foods did not breach its lease and the Defendant's Notice of Default is unlawful; (b) an injunction against the Defendant from enforcing the May 15, 2017 Notice of Default, issuing any further Notices of Default, notices to quit possession, or otherwise terminating the lease and pursuing an action for possession; (c) an injunction requiring that Defendant abide by the lease, to return to the status quo under the lease, and to provide its consent to Plaintiff's permit application; (d) damages to compensate Plaintiff for injury arising from Defendant's breaches of the lease, including lost profits; and (e) attorney's fees.

11.      Whole Foods will likely succeed in all of its claims, which ultimately arise from the same set of facts. First, Whole Foods is likely to succeed in its claim that it did not breach the Lease because Paragraph 30(A) of the Lease excuses the store's closure beyond 60 days where the Plaintiff is delayed or prevented from operating by reason of an event outside of Plaintiff's control, with the only exception being non-payment of rent. (*See* Compl. ¶¶ 23, 65.) Paragraphs 4(F) and 5(A) require Plaintiff to repair, maintain, and operate the Georgetown store "with the same standards of operation and in the same quality as it presently operates its other stores."

(Compl. ¶¶ 17, 19.) The closure of the Georgetown Store beyond 60 days was caused by the need to remedy local ordinance violations, improve the store to comply with the lease requirements to operate at the same standards and quality as similar stores, obtain plans and drawings, obtain permits, and perform construction. Paragraph 30(A) of the Lease specifically mentions "plan approval delay" and "restrictive governmental laws or regulations" as excusable delays.  As used in the Lease, the term excusable delays also broadly includes "other cause without fault and beyond the control of the party obligated to perform."   Whole Foods' position stems from a plain reading of the provisions of the lease, without any ambiguity or need for extensive interpretation. For this reason alone, Whole Foods is likely to prevail on its declaratory judgment claim.

12.    Moreover, Whole Foods' closure was premised on the need to keep the store free of pests. Paragraph 18(A) of the Complaint allows a cure period in excess of 15 days for non-monetary breaches such as Plaintiff's need to close the store on an emergency basis, demolish walls and ceilings, seal the exterior entries to prevent neighborhood pests from entering the building, and thoroughly clean the interior of the store. Paragraph 18(A) envisions a cure period with no finite time limit where Plaintiff is continuing to diligently and in good faith prosecute the repair or replacement to completion. As such, Plaintiff is likely to succeed in its argument that Defendant's Notice of Default was issued unlawfully since it ignores portions of the Lease which extend the cure period and excuse delays in performance that are outside of Plaintiff's control.

13.    In addition, District of Columbia law abhors forfeiture and will enjoin a landlord from claiming a forfeiture whenever possible. *Entrepreneur, Ltd. v. Yasuna*, 498 A.2d 1151, 1160-64 (D.C. 1985) (enjoining landlord from claiming a forfeiture since landlord acted in bad faith, the asserted violation of the lease was pretextual, the landlord failed to give reasonable

time to cure, no damage accrued to the landlord, and the alleged breach was not willful or deliberate, but inadvertent, and the tenant acted in good faith); *Shapiro v. Tauber*, 575 A.2d 297, 300 (D.C. 1990) (even if tenant breached commercial lease by bricking over windows, the appropriate remedy would be to deny the landlord possession and require the tenant to replace the windows, since forfeitures are a harsh and disfavored sanction and will not be enforced except in extreme circumstances); *Duncan v. G.E.W., Inc.*, 526 A.2d 1358, 1365 (D.C.1987) (rejecting landlord's hyper-technical legal arguments which would prevent fair and just results, opting instead for a result that "fulfills the commercial expectations of the parties and avoids unconscionable hardship"). Leases are strictly construed against the party seeking forfeiture and courts may not enforce unconscionable forfeitures. *Yasuna*, 498 A.2d at 1160. Since the Defendant has already issued a Notice of Default threatening to forfeit the lease in 15 business days where there are less harmful remedies, and where the lease would allow Plaintiff additional time to cure any default and excuse any delay provided that Plaintiff continues to exercise diligent and good faith efforts to remedy the delay, this Court may justifiably prevent a forfeiture of Plaintiff's lease.

14.    Furthermore, Plaintiff will prevail because Defendant's Notice of Default was issued in order to coerce Plaintiff into entering into a new lease with higher rent and a longer term. Where a tenant demonstrates that a breach was declared only when the landlord for other reasons desired to dispossess the tenant, so that the alleged breach is pretextual, any action for possession by the landlord will be disallowed. *Entrepreneuer, Ltd. v. Yasuna*, 498 A.2d 1151, 1163-64 (D.C. 1985) (enjoining the landlord from terminating the lease, where the landlord acted in bad faith, the asserted violation was pretextual, and the alleged breach was not willful or deliberate, but inadvertent, and the tenant acted in good faith). Plaintiff has alleged that the

Notice of Default was pretextual, which is supported not only by the Defendant's written demands for a new lease at the same time Defendant issued a Notice of Default, but also the fact that Defendant advised Plaintiff that it no longer had a lease even before the 60-day closure period expired.

15.     Plaintiff will also prevail as a matter of law because Paragraph 18(A) of the Lease is invalid on its face since its self-help provision conflicts with District of Columbia law requiring formal court proceedings for eviction, and therefore must be stricken. In the absence of a default provision, Plaintiff will have a reasonable opportunity to cure. *Entrepreneur, Ltd. v. Yasuna*, 498 A.2d at 1163-64 (finding that landlord acted in bad faith, in part because landlord did not provide a reasonable opportunity to cure the alleged breach, while tenant took steps to attempt to cure the breach).  In the alternative, Paragraph 18(A) provides an extended cure period for 60 days or more while Plaintiff is diligently pursuing a remedy.

16.     Finally, Plaintiff will succeed because the Defendant will never prevail on a claim that Plaintiff breached the Lease. Defendant is missing two essential elements of any possible breach of contract claim: (i) Defendant has suffered no damages, and (ii) Defendant's termination of the Lease will constitute a failure to mitigate damages. To prevail on a claim of breach of contract, a landlord would have to prove not only a breach of a contractual obligation, but also some type of injury resulting from the breach. *Clark v. Bridges*, 75 A.3d 149, 156 (D.C. App. 2013) (any possible breach by the tenant in denying landlord access to the property was immaterial since landlord in fact entered the property and made repairs, so no injury is claimed or apparent and tenant not required to forfeit possession of property); *Bannum, Inc. v. 2210 Adams Place, N.E., LLC*, 4 A.3d 431, 438 (D.C. 2010) (where landlord suffered no damages, landlord cannot collect any damages from prior tenant's failure to restore the premises);

*Entrepreneur, Ltd. v. Yasuna*, 498 A.2d at 1163-64 (landlord was estopped from terminating lease, in part because landlord suffered no damages by virtue of tenant's breach). In addition, to recover, the landlord must prove that he mitigated his damages. *Hinton v. Sealander Brokerage Co.*, 917 A.2d 95, 110 (D.C. 2007) (remanding case for evaluation of tenant's damages in wrongful eviction and landlord's duty to mitigate for unlawful lease termination); *McIntosh v. Gitomer*, 120 A.2d 205, 206 (D.C. 1956) (it was the landlord's duty to make reasonable efforts to mitigate and minimize his damages).

17.     In addition, Whole Foods will prevail on its breach of contract claim against Defendant. To state a breach of contract claim, a plaintiff must allege: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach. *Ponder v. Chase Home Finance, LLC*, 865 F. Supp. 2d 13, 18 (D.C. Cir. 2012). All contracts contain an implied duty of good faith and fair dealing, which means that neither party shall do anything that will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract. *Allworth v. Howard Univ.*, 890 A.2d 194, 201-02 (D.C. 2006). If a party to a contract "evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party," he or she may be liable for breach of the implied covenant of good faith and fair dealing. *Id.* "Fair dealing" involves reasonable rather than arbitrary or capricious action. *Id; see also Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000); *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988); *Willens & Niederman v. 2720 Wisconsin Ave. Coop. Ass'n*, 844 A.2d 1126, 1136 (D.C. 2004). Here, Defendant breached its duty of good faith and fair dealing when it issued the Notice of Default and when it refused to consent to Plaintiff's permit application. As a result, Plaintiff stands to lose the substantial cost of repairs and improvements performed to date, estimated to be

more than $1 million, the potential loss of its more than 150 employees, harm to its goodwill and reputation in the community, the value of the future leasehold, and attorney's fees to enforce Plaintiff's rights under the lease. Given the facts of this case, Plaintiff has a high likelihood to succeed in its breach of contract claim.

18.     For these reasons, Whole Foods has established a strong likelihood of success on its claim for declaratory judgment, a permanent injunction, and breach of contract, weighing heavily in favor of issuing a temporary restraining order and preliminary injunction.

**B.  Plaintiff Will Suffer Irreparable Injury in the Absence of an Immediate Injunction.**

19.     Plaintiff's Verified Complaint alleges that, if the Notice of Default were to be sustained causing Plaintiff's lease to terminate, Plaintiff would lose its substantial investment of more than $1 million in the Georgetown Store's repair and remodeling project, its more than 150 employees, the value of the future leasehold, and attorney's fees to enforce Plaintiff's rights under the lease. (Compl. ¶ 118.)  Plaintiff's goodwill and reputation in the community would also be harmed. Whole Foods has carefully crafted its reputation as the nation's healthiest grocery store whose core values include strict quality standards, caring for communities in which their stores operate by donating funds, and environmental stewardship.

20.     Harm to a business or a business' reputation can constitute irreparable harm. *District Title v. Warren*, 181 F. Supp. 3d 16, 29 (D.D.C. 2014) (finding irreparable harm and issuing injunction where defendant willfully retained and distributed funds owed to plaintiff). Even economic losses may constitute "irreparable harm" when a plaintiff's alleged damages would be unrecoverable absent the injunction. *Clark v. Office of Federal Housing Enterprise Oversight*, 355 F. Supp. 2d 56, 65 (D.D.C. 2013) (granting injunction because frozen rights to restrict stock and stock options would be unrecoverable).

21.     In addition, due to the uniqueness of property, threats to property rights can constitute irreparable harm. *Simpson v. Lee*, 499 A.2d 889, 896 (D.C. 1985) (commercial tenant would suffer irreparable injury if landlord repossessed property, because landlord could re-rent the premises which would substantially and adversely affect the tenant's rights to possess the property and retain the property's unique characteristics).

22.     In this case, Plaintiff stands to lose its more than $1 million investment to date unless injunctive relief prevents Defendant from terminating the Lease. Plaintiff will also suffer harm to its goodwill and business reputation in the community. If Defendant is allowed to terminate the Lease, Plaintiff will lose its invaluable property right in the leasehold. Defendant could potentially evict Plaintiff from the premises and install one or more new tenants or reconstruct the interior of the store to Defendant's specifications. Thereafter, if the Plaintiff ultimately prevails in this lawsuit, Plaintiff will already have lost possession of the store to a new tenant, or be forced to tear down Defendant's interior construction and remodel at an even greater cost.

23.     Finally, Plaintiff would suffer irreparable injury if it is unable to begin the permit application process right away. As set forth below, there is no harm to Defendant by requiring it to consent so that permits can be applied for. Obtaining the required construction permits from the District of Columbia is expected to take six months or more. Each month that Plaintiff remains closed, Plaintiff suffers injury to its business reputation, goodwill in the community, loss of more than 150 jobs in the store, and lost profits. If Defendant is not required by this Court to consent to the permit application, Plaintiff will not be able to begin the lengthy permit process until after this lawsuit is fully resolved. Plaintiff will never be able to recoup the lost time and lost profits from the delay.

24.     Without immediate injunctive relief, Plaintiff will suffer irreparable harm to its business reputation, unrecoverable economic losses, and loss of property rights in the Georgetown Store, where it has operated for more than 20 years (since 1996).  A temporary restraining order and preliminary injunction are necessary to maintain the status quo until the Court can determine the rights of the parties on the merits.

### C. **Defendant Will Not be Harmed by Injunctive Relief**

25.     As discussed above, Defendant has suffered no damage as a result of the alleged breach by Plaintiff. Similarly, Defendant will suffer no damage should this Court issue a status quo order. Plaintiff has continued to timely make its monthly rent payments, and the Defendant is not and has never been entitled to percentage rent under the Lease, because Plaintiff's gross receipts have never met the minimum threshold to impose percentage rent.

26.     Rather, injunctive relief will prevent Defendant from taking further pretextual and bad faith actions to attempt to wrongfully terminate the Lease and evict Plaintiff. Defendant's actions to date—including issuing the Notice of Default and refusing to consent to the permit application—constitute baseless and harassing techniques with a primary motive to harass Plaintiff in the hope Plaintiff will retreat or enter a new Lease with higher rent and a longer term. Preventing such improper acts by Defendant will not harm Defendant. *1250 24th Street Assoc. Ltd. Partnership v. Brown*, 684 F. Supp. 326, 330-31 (D.D.C 1988) (court issued a series of injunctions prohibiting landlord from issuing any default notices or filing any future litigation without first obtaining court approval because landlord's default notices and motions were spurious, baseless, and harassing).

27.     Moreover, if this Court grants Plaintiff's request to require Defendant to consent to Plaintiff's permit application to the District of Columbia, neither party will be harmed, while

both parties could potentially benefit. If Plaintiff is able to submit its permit application soon, with the understanding that it could take six months or more to receive the permits, neither party will suffer during the initial six-month waiting period. If Plaintiff ultimately prevails in this lawsuit, having the permits in hand will substantially reduce the time to complete the repair and remodeling project, which will ultimately benefit Defendant by reconstructing the demolished interior of the Georgetown Store and potentially adding value to the building. It will also mitigate any damages due and owing to Plaintiff from Defendant's breaches of the Lease. In the event Defendant ultimately succeeds in this litigation, allowing Plaintiff to obtain permits now will not harm either party because the Lease would simply terminate without Plaintiff expending any funds on reconstruction.

28.     Therefore, since Defendant would not be harmed, but could stand to benefit from the injunctive relief sought, this favor weighs strongly in favor of granting Plaintiff's requested relief.

### D.  The Public Interest Will be Served by Injunctive Relief

29.     This Court has long recognized the benefit to the public interest in enforcing parties' contractual obligations and discouraging acts of bad faith. *Hospitality Staffing Solutions, LLC v. Reyes*, 736 F. Supp. 2d 192, 201 (D.D.C. 2010) ("This Court finds that the public interest would be furthered by the issuance of a preliminary injunction [to] enforce the parties' contractual agreement and ensure the confidentiality of business information, which is necessary for free and fair competition"); *Barnstead Broadcasting Corp. v. Offshore Broadcasting Corp.*, 865 F. Supp. 2, 9 (D.D.C. 1994) (granting preliminary injunction in part because the public interest is served by upholding the integrity and sanctity of contracts); *Compu Serve Data Systems, Inc. v. Freeman, III*, 498 F. Supp. 1316, 1322 (D.D.C. 1980) (declining to grant

preliminary injunction to halt performance of a contract because, "[a]bsent enormously compelling circumstances, it is against the public interest to enjoin performance of a contract," as the public interest would be best served by maintaining the status quo); *Morgan Stanley DW Inc. v. Rothe*, 150 F. Supp. 2d 67, 79 (D.D.C. 2001) ("A final factor tipping the public-interest scales to the plaintiff's side is the court's desire to see the terms of a reasonable contract enforced") (*quoting IDS Life Ins. Co. v. Sunamerica, Inc.*, 958 F. Supp. 1258, 1282 (N.D. Ill. 1997): "The public has no interest in destroying contracts, rewarding theft, and encouraging unethical business behavior.")).

30.     In this case, the public interest would be served by upholding the status quo by upholding both parties' rights and obligations under the existing Lease. The Lease was negotiated between two commercial parties in 1996, more than 20 years ago. Until now, neither party made any attempt to terminate the Lease. Now, however, Defendant is using the threat of termination to coerce Plaintiff to either enter into a new lease with a higher rent and longer lease term, or vacate the premises so Defendant can attempt to obtain a higher-paying tenant (while, in the meantime, forcing Plaintiff to continue to pay rent despite Plaintiff's lack of possessory rights). Plaintiff has, at all times, behaved in good faith by taking immediate and costly steps to abide by its Lease obligations, including to keep the Georgetown Store free of pests and to operate the store in the same quality as other similar stores. Plaintiff acted in good faith by: (i) notifying Defendant of the pest problem soon after demolition and cleanup began; (ii) continuing to pay rent despite the Georgetown Store being closed and not generating any income; and (iii) taking steps to obtain plans and apply for permits as quickly as commercially feasible.

31.     On the other hand, Defendant has acted in bad faith by declaring the Lease terminated prior to the expiration of the 60-day closure period and attempting to negotiate a new lease with higher rent and a longer term before even issuing a Notice of Default. *See Sunamerica*, 958 F. Supp. at 1282. Defendant also acted in bad faith when Defendant refused to recognize Paragraph 18A, which extends the 15-day cure period while Plaintiff is diligently pursuing a cure, and Paragraph 30(A), which excuses Plaintiff's non-performance for delays outside of Plaintiff's control. Defendant also acted in bad faith when it refused to consent to Plaintiff's permit application, which constituted part of Plaintiff's attempts to abide by its Lease obligations and cure any default, in violation of Paragraph 27(J) which requires that "such consent or approval shall not be unreasonably withheld or delayed." Defendant's refusal to consent was unreasonably withheld and has delayed Plaintiff's ability to obtain permits for its repair and remodeling project. It further prevents Plaintiff from taking the steps necessary to re-open the store: the very conduct Defendant complains of.

32.     By issuing a preliminary injunction to maintain the status quo under the Lease, this Court would serve the public interest both by upholding the integrity of the negotiated contract, rewarding Plaintiff's good behavior, and not encouraging Defendant's bad faith behavior. Therefore, the public interest weighs strongly in favor of issuing the requested relief.

### III.     Security for Injunctive Relief

33.     Rule 65(c) of the Federal Rules of Civil Procedure provides that the movant must "give security in an amount that the court considers proper to pay the costs and damages sustained by any part found to have been wrongfully enjoined or restrained."

34.     Should this or any other Court find that Defendant was wrongfully enjoined, Defendant would be entitled only to damages in the amount of the monthly rent due from Whole Foods.

35.     Whole Foods is proposing as part of this Motion to make its monthly rent payments to the Court's registry to protect both Plaintiff and Defendant.

36.     Whole Foods respectfully requests that the Court accept the rent deposited with the Court as the security specified in Rule 65(c).

<u>**JUDICIAL ESCROW OF PLAINTIFF'S RENT**</u>

37.     Plaintiff is requesting that the Court allow Plaintiff to escrow Plaintiff's rent payments with the Court until such time as the Court can determine the proper owner of the funds.

**I.     <u>Legal Standard</u>**

38.     Local Rule 67.1 allows the Court to issue an order requiring funds to be deposited with the Court. *See Atkins v. Fischer*, 515 F. Supp. 2d 138, 139 (D.D.C. 2007) (parties agreed to place $20,000 in the Court Registry for the U.S. District Court for the District of Columbia as a result of a dispute as to the rightful owner of the funds). In the ordinary course of events, if payment of rent is required during the pendency of litigation, the tenant should pay into the court registry each month the amount which he originally contracted to pay as rent. *Bell v. Tsintolas Realty Co.*, 430 F.2d 474, 484 (D.D.C. 1970).

39.     The essence of a court's equity power lies in its inherent capacity to adjust remedies in a feasible and practical way to eliminate the conditions or redress the injuries caused by unlawful action. *Freeman v. Pitts*, 503 U.S. 467, 488 (1992). Equitable remedies must be flexible if these underlying principles are to be enforced with fairness and precision. *Id.*

40.    In shaping equity decrees, the trial court is vested with broad discretionary power. *Lemon v. Kurtzman*, 411 U.S. 192, 200 (1973). Equitable remedies are a special blend of what is necessary, what is fair, and what is workable. *Id*. Traditionally, equity has been characterized by a practical flexibility in shaping its remedies and by a facility for adjusting and reconciling public and private needs. *Id.* "In equity, as nowhere else, courts eschew rigid absolutes and look to the practical realities and necessities inescapably involved in reconciling competing interests . . . . " *Id.* "The essence of equity jurisdiction has been the power of the Chancellor to do equity and to mould each decree to the necessities of the particular case. Flexibility rather than rigidity has distinguished it. The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims." *Hecht Co. v. Bowles*, 321 U.S. 321, 329-30 (1944).

## II.    Court Escrow is Warranted to Preserve the Plaintiff's Funds Given Defendant's Breaches of the Lease

41.    This case seeks the Court's declaration of the rights between the parties, appropriate injunctions, and damages. Plaintiff argues that the Defendant breached its covenant of good faith and fair dealing by issuing a Notice of Default in contravention of Paragraph 18(A) of the Lease (allowing additional time to cure a non-monetary default such as Plaintiff's obligations under Paragraphs 4(F) and 5(A) requiring Plaintiff to operate the Georgetown Store in a similar quality as it presently operates other stores and to cure the pest problem at the store), Paragraph 27(J) of the Lease (requiring Landlord to consent and approve reasonable requests such as Plaintiff's permit application), and Paragraph 30(A) (excusing any non-performance by Plaintiff that is outside of Plaintiff's control).

42.     Should Plaintiff succeed on its claims, Plaintiff may be entitled to reimbursement of its rental payments from the date Defendant issued its unlawful and pretextual Notice of Default. *Bell v. Tsintolas Realty Co.*, 430 F.2d at 485 (if the finder of fact determines that landlord's violations have nullified tenant's obligations to pay rent, the tenant may recover the escrow fund). Plaintiff has and will continue making rent payments required by the Lease in order to meet its obligations until the dispute between the parties is resolved.

43.     Nevertheless, should this Court find that Plaintiff is entitled to reimbursement of its rent payments in the absence of Court escrow of Plaintiff's rent, Plaintiff may suffer the loss of the funds because it is likely Defendant will spend them or commingle them with other funds. Since Defendant is a closely-held business, Defendant could distribute its funds to its owners and cease operating, leaving no assets from which Plaintiff may be reimbursed. Plaintiff would not only be without the funds which it paid in good faith believing the Lease to be valid, but Plaintiff would also have no remedy at law because Defendant may refuse to pay over the funds or lack assets to reimburse Plaintiff, leaving Plaintiff a recovery only with additional substantial litigation.

44.     Escrowing Plaintiff's rent payments will not harm Defendant, who already declared Plaintiff in default of the Lease. Moreover, Defendant would not suffer because Defendant would have an opportunity to argue that Defendant is entitled to the rent at a trial on the merits. Plaintiff's requested relief is narrowly tailored to the circumstances before this Court, and this Court has the authority to order the deposit of monthly rent into the Court's registry.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Whole Foods Market Group, Inc., asks this Court to enter an order granting Plaintiff's Motion for Temporary Restraining Order to maintain the status quo until a preliminary injunction hearing can be held, and thereafter issuing a Preliminary Injunction pending resolution of the dispute, and granting Plaintiff's Motion for Judicial Escrow of Funds, as follows:

A. Enjoining Defendant from issuing any further Notices of Default and from taking any steps to terminate the Lease, repossess the Georgetown Store, evict Plaintiff, or pursue forfeiture;

B. Requiring Defendant to consent to the permit application under Paragraph 27(J) of the Lease;

C. Ordering the Clerk of the United States District Court for the District of Columbia to accept Plaintiff's rental payments in escrow and ordering Plaintiff to deposit its monthly rent with the Clerk until further order of the Court; and

D. Such other and further relief as this Court deems just and appropriate.

Date: June 7, 2017

Respectfully submitted,

WHOLE FOODS MARKET GROUP, INC.

By:   */s/ Brian P. Waagner*
One of its attorneys

Brian P. Waagner (DC Bar No. 450823)
Husch Blackwell LLP
750 17th Street, NW, Suite 900
Washington, DC 20006
Phone: (202) 378-2355
Brian.Waagner@HuschBlackwell.com
*Counsel for the Plaintiff*

Of Counsel:
Norman B. Berger
Sandra D. Mertens
Gensburg, Calandriello & Kanter, P.C.
200 West Adams Street, Suite 2425
Chicago, IL 60606
Phone: (312) 263-2200
NBerger@gcklegal.com
SMertens@gcklegal.com
*Pro Hac Vice*
*Counsel for the Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WHOLE FOODS MARKET GROUP, INC.,    )
                                   )
            Plaintiff,             )
                                   )
      v.                           )        Civil Action No. 17-cv-01079
                                   )
WICAL LIMITED PARTNERSHIP,         )
                                   )
            Defendant.             )

**RULE 65 CERTIFICATE OF COUNSEL**

In accordance with the requirements of Local Rule 65.1(a), counsel for Plaintiff, Whole Foods Market Group, Inc. ("Whole Foods" or "Plaintiff"), certifies as follows:

Counsel for Whole Foods has given actual notice of this action and of Whole Foods' intention to seek a temporary restraining order or preliminary injunction to counsel for Defendant. Specifically, counsel for Whole Foods notified Richard F. Levin, Esq. of Grossberg Yochelson Fox & Beyda, who sent Whole Foods the Notice of Default dated May 15, 2017, of the filing of the action and forthcoming motion on Tuesday, June 6, 2017 by email and voicemail message. Mr. Levin acknowledged receipt of the notice via email dated June 6, 2017.

A copy the Verified Complaint filed in this action was sent by email to Mr. Levin (levin@gyfb.com) on June 6, 2017. A copy of all remaining pleadings and papers filed in this action and to be presented to the Court at any hearing on Whole Foods' Motion for Temporary Restraining Order and Preliminary Injunction, and for Judicial Escrow of Rents, will be sent to Mr. Levin shortly after filing on June 7, 2017.

- 23 -

Date: June 7, 2017

Respectfully submitted,

WHOLE FOODS MARKET GROUP, INC.

By:   */s/ Brian P. Waagner*
One of its attorneys

Brian P. Waagner (DC Bar No. 450823)
Husch Blackwell LLP
750 17th Street, NW, Suite 900
Washington, DC 20006
Phone: (202) 378-2355
Brian.Waagner@HuschBlackwell.com
*Counsel for the Plaintiff*

Of Counsel:
Norman B. Berger
Sandra D. Mertens
Gensburg, Calandriello & Kanter, P.C.
200 West Adams Street, Suite 2425
Chicago, IL 60606
Phone: (312) 263-2200
NBerger@gcklegal.com
SMertens@gcklegal.com
*Pro Hac Vice*
*Counsel for the Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on the 7th day of June, 2017, a copy of the foregoing *Plaintiff Whole Foods' Emergency Motion for Entry of Temporary Restraining Order and Preliminary Injunction, and for Judicial Escrow of Plaintiff's Rents*, including *Plaintiff's Request for Expedited Hearing* and *Rule 65 Certificate of Counsel*, is being sent by email to the following party:

> Richard F. Levin
> Grossberg, Yochelson, Fox & Beyda, LLP
> 1200 New Hampshire Ave., NW, Suite 555
> Washington, DC 20036
> Levin@gyfb.com
>
> *Counsel for the Defendant*

|       |       |
|-------|-------|
| By:   | */s/ Brian P. Waagner* |
|       | Brian P. Waagner (DC Bar No. 450823) |
|       | Husch Blackwell LLP |
|       | 750 17th Street, NW, Suite 900 |
|       | Washington, DC 20006 |
|       | Phone: (202) 378-2355 |
|       | Brian.Waagner@HuschBlackwell.com |
|       | *Counsel for the Plaintiff* |

> <u>Of Counsel:</u>
> Norman B. Berger
> Sandra D. Mertens
> Gensburg, Calandriello & Kanter, P.C.
> 200 West Adams Street, Suite 2425
> Chicago, IL 60606
> Phone: (312) 263-2200
> NBerger@gcklegal.com
> SMertens@gcklegal.com
> *Pro Hac Vice*
> *Counsel for the Plaintiff*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WHOLE FOODS MARKET GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 17-cv-01079 |
| | ) | |
| WICAL LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>REQUEST FOR EXPEDITED HEARING</u>

Plaintiff, Whole Foods Market Group, Inc. ("Whole Foods" or "Plaintiff"), by and through its undersigned counsel, respectfully requests that the Court schedule a hearing on Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunction, and for Judicial Escrow of Rents (Docket 1) as soon as possible. The expedited hearing is necessary so that the Court may consider whether to issue an appropriate restraining order to preserve the status quo pending further proceedings. Defendant, Wical Limited Partnership ("Wical" or "Defendant"), issued a "Notice of Default if Not Cured Within Fifteen (15) Business Days" dated May 15, 2017 in connection with a Lease Agreement dated March 10, 1994 between Plaintiff and Defendant. Plaintiff claims that the Notice of Default is unlawful. The 15-business day period lapsed on June 6, 2017 and Defendant may attempt to terminate the lease on or after such date. A termination notice is a required step in Defendant's attempt to evict Whole Foods from the rental property. Moreover, after such termination notice, Defendant may unlawfully attempt to execute self-help to evict Whole Foods, despite District of Columbia law which prohibits self-help in favor of the statutory eviction process.

Any termination of Whole Foods' lease with Defendant will begin causing immediate and irreparable harm to Plaintiff in that its business interests and property rights are threatened.

Moreover, Whole Foods has already begun suffering immediate and irreparable harm in that Defendant has refused to consent to Whole Foods' permit application, delaying Whole Foods' ability to repair, restore, and re-open its store.

Pursuant to Rule 65(c) of the Federal Rules of Civil Procedure, Whole Foods is requesting as part of its Motion to make its monthly rent payments to the Court's registry as security in lieu of a bond, so that Defendant suffers no risk of harm whatsoever.

Date: June 7, 2017

Respectfully submitted,

WHOLE FOODS MARKET GROUP, INC.

By:   */s/ Brian P. Waagner*
One of its attorneys

Brian P. Waagner (DC Bar No. 450823)
Husch Blackwell LLP
750 17th Street, NW, Suite 900
Washington, DC 20006
Phone: (202) 378-2355
Brian.Waagner@HuschBlackwell.com
*Counsel for the Plaintiff*

Of Counsel:
Norman B. Berger
Sandra D. Mertens
Gensburg, Calandriello & Kanter, P.C.
200 West Adams Street, Suite 2425
Chicago, IL 60606
Phone: (312) 263-2200
NBerger@gcklegal.com
SMertens@gcklegal.com
*Pro Hac Vice*
*Counsel for the Plaintiff*