IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

WHOLE FOODS MARKET GROUP, INC.

Plaintiff,

v.

WICAL LIMITED PARTNERSHIP

Defendant.

Case No. 1:17-cv-01079-RCL

**DEFENDANT WICAL LIMITED PARTNERSHIP'S OPPOSITION TO
PLAINTIFF'S EMERGENCY MOTION FOR ENTRY OF TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND FOR JUDICIAL
ESCROW OF PLAINTIFF'S RENTS**

J. Douglas Baldridge (DC Bar No. 437678)
Moxila A. Upadhyaya (DC Bar No. 494373)
Kevin W. Weigand (DC Bar No. 1004998)
VENABLE LLP
600 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 344-4000
Facsimile: (202) 344-8300
jbaldridge@venable.com
mupadhyaya@venable.com
kwweigand@venable.com

*Attorneys for Defendant Wical Limited Partnership*

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

FACTUAL SUMMARY ......................................................................................................... 3

ARGUMENT ......................................................................................................................... 6

I.       LEGAL STANDARD .................................................................................................. 6

II.      NO IRREPARABLE HARM FLOWS FROM THE ABSENCE OF AN ORDER
         FORCING WICAL TO CONSENT TO WHOLE FOODS' PERMIT REQUEST. .......... 7

         A.       Whole Foods Fails to Substantiate its Claimed Harm. ............................... 9

         B.       Even Assuming Whole Foods is Harmed, the Harm is Not Irreparable. ................... 9

III.     WHOLE FOODS FAILS TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON
         THE MERITS. ........................................................................................................... 11

         A.       Whole Foods Cannot Convert its Own Neglect Into "Force Majeure." ................ 11

         B.       The Lease Forbids Whole Foods From Closing For More Than Sixty Days Under
                  Any Circumstances. ......................................................................................... 13

         C.       Whole Foods Fails to Show a Likelihood of Success on its Remaining Arguments
                  Regarding Breach ............................................................................................ 15

         D.       Whole Foods' Request Would Alter the Status Quo and Provide the Ultimate
                  Relief It Seeks. .................................................................................................. 17

IV.      THE BALANCE OF EQUITIES FAVORS WICAL. ...................................................... 18

V.       AN INJUNCTION IS NOT IN THE PUBLIC INTEREST AND WOULD REWARD
         WHOLE FOODS FOR ITS BREACH. ........................................................................ 19

VI.      WHOLE FOODS SHOULD PAY RENT TO WICAL WHILE THIS CASE IS
         PENDING. .................................................................................................................. 20

VII.     THE COURT SHOULD AWARD WICAL ITS ATTORNEY'S FEES. ........................ 22

CONCLUSION ...................................................................................................................... 22

Defendant Wical Limited Partnership ("Wical"), by counsel, respectfully requests that the Court deny Plaintiff Whole Foods Market Group, Inc.'s ("Whole Foods") Motion for Entry of Temporary Restraining Order and Preliminary Injunction, and for Judicial Escrow of Plaintiff's Rents ("Motion").  In support, Wical states as follows:

## INTRODUCTION

This case is about the failure of Whole Foods—a massive publicly-traded company and one of the nation's largest retailers—to comply with its Lease obligations and District regulations in maintaining its store at 2321 and 2323 Wisconsin Avenue, N.W.[1]  Wical is the owner of the premises and Whole Foods' landlord.  At this early stage of the case, it is undisputed that, in violation of its Lease, Whole Foods: (1) failed to keep its Store free from a rodent infestation, and was cited and shut down at least twice by the District government for that violation; (2) failed to make improvements to its Store for more than a decade, in violation of its obligation to "continuously" maintain its business in accordance with the same standards and quality as its other similar stores; (3) violated District regulations by failing to seek permits before undertaking large-scale demolition and construction efforts, resulting in a publicly-posted Stop Work Order from the District; and (4) has been closed for more than 60 days.

Now, having created its own so-called "emergency" by failing to maintain the Store and by failing to obtain permission from its landlord or the District *before* beginning large-scale alterations, Whole Foods rushes into this Court seeking an emergency order forcing Wical to consent to permit applications. Whole Foods, with all its resources and experience, has no excuse for the neglect that led to its health code violations, issuance of a Stop Work Order from the District

---

[1] The Whole Foods Store is assigned mailing addresses of both 2321 and 2323 Wisconsin Avenue, N.W., Washington, D.C. 20007. Any pleadings or documents that reference 2321 or 2323 Wisconsin Avenue are referring to the same property at issue in this matter.

government for failing to obtain the required construction permits, and failure to keep the premises up to the required standards under the Lease.

In light of Wical's agreement to refrain from terminating the Lease and instituting eviction proceedings during the pendency of this case despite its right to do so,[2] there are only two narrow questions currently before the Court: (1) is Whole Foods entitled to a preliminary injunction order forcing Wical to consent to Whole Foods' permit applications to renovate the Store, keeping the Store closed for several months in violation of its Lease; and (2) should Whole Foods be allowed to pay rent to the Court instead of Wical?   The answer to both questions—neither of which constitutes an emergency—is no.

Whole Foods' request for such drastic injunctive relief fails for several reasons.

*First,* Whole Foods fails to meet its burden to prove that it will suffer irreparable harm in the absence of an order forcing Wical to consent to its permit applications. Whole Foods makes conclusory statements about alleged monetary loss, reputational harm and loss of goodwill. But Whole Foods fails to prove that the alleged harm flows from the absence of approval of permit applications.  On this record it is just as, if not more, likely that Whole Foods' alleged harm is the result of its own failure to maintain the Store free from rodents.  In any event, Whole Foods' alleged losses are nothing more than economic harm that does not qualify as irreparable harm.

*Second,* Whole Foods cannot demonstrate a likelihood of success on the merits. Whole Foods breached the Lease when it closed for more than 60 days and when it failed to maintain the Store and keep it free from pests and rodents.  Although Whole Foods claims that its breaches were "excusable" and out of its control, there is no doubt that Whole Foods is responsible for its

---

[2] As Wical stated, its agreement not to terminate the Lease or institute eviction proceedings is "without prejudice to any of its rights, arguments or positions in this matter or in any future dispute." ECF No. 13, at ¶ 5.

own predicament. Having admittedly neglected for more than a decade to take advantage of the contracted-for provisions of the Lease allowing renovations over time (pursuant to which Whole Foods cannot be closed for more than 60 days), Whole Foods now claims it should be allowed to close down to make repairs for unspecified months on end.  None of the clear terms of the Lease support Whole Foods' tortured interpretation.

*Third,* Whole Foods' request that the Court force Wical to take affirmative action is *anything but* the maintenance of the status quo.  The Court should deny the request because it is actually an effort to alter, not maintain, the status quo and would order Wical to consent to the ultimate relief going to the heart of the merits of this case.

*Fourth,* the balance of equities weighs against an injunction. It appears that Whole Foods has already begun demolishing the interior of the Store without Wical's permission and in violation of District law. Having been cited with a Stop Work Order by the District government, it is inequitable for Whole Foods to ask the Court to reward its misconduct. Despite the fact that Whole Foods' harm is self-inflicted and Wical's harm is the result of Whole Foods' breach, Whole Foods wants the Court to force Wical to approve permit applications that Wical has not even seen, and which could substantially alter Wical's property.

*Fifth,* the public interest favors the enforcement of binding contracts. Whole Foods repeatedly breached the terms of the Lease and should not be rewarded as a result.

*Finally*, Whole Foods should not be allowed to withhold its rent from Wical and pay it into the Court Registry. Both the lease and District law require that this commercial tenant continue to pay its rent to Wical during the pendency of this dispute.

## FACTUAL SUMMARY

Whole Foods is a publicly-traded company and the 31st-largest retailer in the United States. National Retail Federation, *Top Retailers 2016*, https://nrf.com/resources/annual-retailer-lists/top-

100-retailers/stores-top-retailers-2016 (last visited June 26, 2017). Whole Foods has been operating its store at 2321 and 2323 Wisconsin Avenue, N.W. (the "Store") since 1996. Compl. ¶ 2. Its lease with Wical (the "Lease," attached as Exhibit A to the Complaint) requires Whole Foods to keep the premises in good repair and clean order (Compl. Ex. A ¶ 5(A)); keep the premises free from pests (Compl. Ex. A ¶ 4(F)); and maintain the same quality as similar Whole Foods stores. Compl. Ex. A ¶ 4(F). Whole Foods may not make any structural alterations without Wical's prior written consent. Compl. Ex. A ¶ 7(A).

Although the Lease permits Whole Foods to "occasionally" close the premises to "diligently modernize or improve" the Store, the Lease prohibits any closure lasting longer than an aggregate of 60 days during any three-year period. ¶ 4(G). Rather than make gradual renovations and improvements to keep the premises in good condition under this provision, Whole Foods never closed the Store between 1996 and 2017 for renovations, and has not made any significant improvements for "more than a decade." Compl. ¶ 26. Not surprisingly, Whole Foods now seeks to modernize the Store through a grand-scale renovation. *See* Compl. ¶ 35.

In 2017, the District of Columbia issued ordinance violations to Whole Foods stemming from rodent problems in the Store. Compl. ¶ 27. Whole Foods was required to close the Store on two separate occasions, and it has remained closed since March 13, 2017. Compl. ¶¶ 27, 29-30. Whole Foods now claims it must empty its inventory, gut, and rebuild the entire Store to cure its health violations and comply with the Lease. Compl. ¶ 31-32. But news reports indicate that the health department allowed Whole Foods to reopen on March 16, 2017, and Whole Foods opted to remain closed to remodel the Store and "offer [its] customers a fresh, new shopping experience." *See* Justin Wm. Moyer, *D.C. Whole Foods Closes for Renovation After Problem with Rodents*, Wash. Post, Mar. 16, 2017, *available at* https://www.washingtonpost.com/local/public-safety/dc-

whole-foods-closes-for-renovation-after-problem-with-rodents/2017/03/16/7567fb18-0a85-11e7-924c-25b7f4fdf51d_story.html?utm_term=.70855632cd56 (attached as **Exhibit A**). In other words, Whole Foods has admitted that the renovations it seeks to make are not narrowly tailored to remediate the rodent problems, but rather are a full-scale modernization of the Store.

Since it closed in March, Whole Foods has begun demolishing the interior of the Store in violation of District ordinances and the terms of the Lease. *See* Ogden Decl. ¶¶ 3-5.  Paragraph 7 of the Lease requires Whole Foods to provide Wical with construction plans or working drawings, names of proposed contractors, and certificates of liability insurance. *See* Compl. Ex. A, at ¶ 8.  To date, Whole Foods has not provided any of this information to Wical. Ogden Decl. ¶ 8.  Yet Whole Foods went ahead and began demolishing the interior anyway, resulting in a Stop Work Order issued by the District on May 21, 2017 for conducting interior demolition without permits. Ogden Decl. ¶¶ 4-5 (attaching photograph of Stop Work Order).

After 60 days passed with no sign of Whole Foods re-opening, Wical sent Whole Foods a Notice of Non-Monetary Default.  Compl. ¶ 46 & Ex. B.  Under Paragraph 18(A) of the Lease, Whole Foods then had 15 business days to cure the default. Compl. Ex. A, at ¶ 18(A). Knowing that it could not open the Store in time, Whole Foods instead asked Wical to consent to a permit application without accompanying construction plans for a project that it knew would take at least an additional six months before permits could even be obtained. Compl. ¶ 58; ECF No. 5, at ¶ 6; Ogden Decl. ¶ 8. When Wical declined to consent in light of the fact that Whole Foods was in default of its Lease, Whole Foods filed this Motion for Emergency Relief. Compl. ¶ 59.[3]

---

[3]     Additional relevant facts are included in Wical's arguments below.

**ARGUMENT**

## I.   LEGAL STANDARD

A temporary restraining order or preliminary injunction is "'an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Sherley v. Sebelius,* 644 F.3d 388, 392 (D.C. Cir. 2011) (quoting *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008)).  A plaintiff has the burden to show "(1) that he is likely to succeed on the merits, (2) that he is likely to suffer irreparable harm in the absence of preliminary relief, (3) that the balance of the equities tips in his favor, and (4) that an injunction is in the public interest." *Id.* The plaintiff must "show that all four factors, taken together, weigh in favor of the injunction." *Abdullah v. Obama*, 753 F.3d 193, 197 (D.C. Cir. 2014). "The D.C. Circuit has expressly cautioned that '[t]he power to issue a preliminary injunction, especially a mandatory one, should be 'sparingly exercised.'" *Singh v. Carter*, 185 F. Supp. 3d 11, 17 (D.D.C. 2016) (alteration in original) (quoting *Dorfmann v. Boozer*, 414 F.2d 1168, 1173 (D.C. Cir. 1969)) (denying motion for temporary restraining order).

Whole Foods argues that this Court should apply the "sliding scale" approach and that, when analyzing the four factors, "a strong factor may compensate for a weak factor."  ECF No. 5, at ¶ 9.  In light of the U.S. Supreme Court's decision in *Winter*, the sliding scale approach, at best, is unsettled.  *See, e.g.*, *Mdewakanton Sioux Indians of Minn. v. Zinke*, No. Civil Action No. 16-2323 (RC), 2017 WL 2533352, at *2 n.3 (D.D.C. June 9, 2017) ("The legal foundation for the sliding scale approach is uncertain after the Supreme Court's decision in *Winter* . . . ."); *see also League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 7 (D.C. Cir. 2016) ("This court, however, has not yet needed to decide [if the sliding scale approach remains viable]."); *Real Truth About Obama, Inc. v. FEC*, 575 F.3d 342, 347 (4th Cir. 2009) (reversing precedent and ruling that, in light of *Winter*, the sliding scale approach no longer applies), *vacated on other grounds*, 130 S.

Ct. 2371 (2010), *reissued in part*, 607 F.3d 355 (4th Cir. 2010). The D.C. Circuit has not definitively ruled on whether the sliding scale approach has survived *Winter*,[4] but it has made clear that the movant *must* show a *likelihood* of irreparable harm, rather than a mere possibility of irreparable harm. *Sherley*, 644 F.3d at 392-93 ("[A] likelihood of success is an independent, free-standing requirement for a preliminary injunction.").

## II.   NO IRREPARABLE HARM FLOWS FROM THE ABSENCE OF AN ORDER FORCING WICAL TO CONSENT TO WHOLE FOODS' PERMIT REQUEST.

Wical has agreed for the time being to maintain the status quo by not terminating the Lease or instituting eviction proceedings, so the only question for the Court on this prong is whether any irreparable harm flows to Whole Foods from the absence of an order forcing Wical to consent to Whole Foods' construction permits. The simple answer is no. Whole Foods fails to offer any evidence or support—let alone sufficient support to meet its heavy burden—for its argument that it will suffer irreparable harm should the Court deny its request. On this basis alone, the Court may deny Whole Foods' Motion.

A court may not issue "'a preliminary injunction based only on a possibility of irreparable harm [since] injunctive relief [is] an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief.'" *Singh v. Carter*, 185 F. Supp. 3d 11, 16 (D.D.C. 2016) (quoting *Winter*, 555 U.S. at 22). A plaintiff must show that its injury is "great, actual, and imminent." *Hi-Tech Pharmacal Co. v. U.S. Food & Drug Admin.*, 587 F. Supp. 2d 1, 11 (D.D.C. 2008).

"Bare allegations of what is likely to occur are of no value since the court must decide whether the harm will *in fact* occur." *Wis. Gas Co. v. F.E.R.C.*, 758 F.2d 669, 674 (D.C. Cir. 1985).

---

[4]    Whole Foods incorrectly cites the date of the Court's opinion in *Clarke v. Office of Federal Housing Enterprise Oversight*, 355 F. Supp. 2d 56, 62-63 (D.D.C. 2004) as 2013. ECF No. 5, at ¶ 6. The *Clarke* opinion was issued *before* the Supreme Court's decision in *Winter*.

"The movant cannot simply make broad conclusory statements about the existence of harm. Rather, she **must submit competence evidence into the record** that would permit the Court to assess whether she, in fact, faces irreparable harm . . . ." *Aviles-Wynkoop v. Neal*, 978 F. Supp. 2d 15, 21-22 (D.D.C. 2013) (emphasis added) (citation omitted) (denying request for temporary restraining order where the "allegations in plaintiff's application are conclusory.").

Whole Foods fails to meet its burden to establish that it will suffer irreparable harm *as a result of the absence of an order requiring Wical to consent to construction permits*.[5]   The only argument that appears to relate to this issue is an unsupported conclusory statement that, "if [Whole Foods] is unable to begin the permit application process right away . . . [Whole Foods] suffers injury to its business reputation, goodwill in the community, loss of more than 150 jobs in the store, and lost profits." [6]   ECF No. 5, at ¶ 23.   This is simply insufficient to meet the high burden for establishing irreparable harm.

---

[5]      Any arguments Whole Foods makes as a result of Wical's anticipated termination of the Lease or prospective eviction proceedings are not relevant given Wical's agreement for the time being to maintain the status quo regarding these two issues.   *See* ECF No. 13.

[6]      Whole Foods relies on *District Title v. Warren*, 181 F. Supp. 3d 16, 29 (D.D.C. 2014) to support its claim that "harm to a business or its reputation can constitute irreparable harm." ECF No. 5, at ¶ 20.   But in that case—and as the Court should do here—the Court rejected the plaintiff's claim of reputational harm because the plaintiff's harm was caused by its own actions. *District Title*, 181 F. Supp. 3d at 29 ("[A]ny harm to plaintiff's reputation can be laid squarely at plaintiff's own feet, and so does not constitute a basis for preliminary injunctive relief.").   The Court entered an injunction based on the plaintiff's irreparable harm to business because the evidence showed the defendant was purchasing property and re-distributing funds that plaintiff erroneously paid to him, so it was difficult "to ensure that the economic losses [the plaintiff] has suffered remain 'recoverable.'" *Id.* Similarly, in *Clarke v. Office of Federal Housing Enterprise Oversight*, 355 F. Supp. 2d 56, 66 (D.D.C. 2004), the Court found irreparable harm based on losses resulting from an inability to exercise stock options only because the defendant, a federal agency, was "likely to be immune from suit."   The Court in *Clarke* otherwise stated that "economic loss alone will rarely constitute irreparable harm." *Id.* at 65. (citation omitted).

A.   <u>Whole Foods Fails to Substantiate its Claimed Harm.</u>

Whole Foods submitted no affidavits, documents, or evidence to substantiate its claimed irreparable harm.  For example, Whole Foods fails to show that its purported injury to business reputation or goodwill is a direct result of an absence of permit approval, as opposed to Whole Foods' own admitted failure to keep the Store up to the Lease standards, in good repair, and free of rodents and pests, which has been covered extensively by the media.[7]

A preliminary injunction cannot issue where the alleged irreparable harm is the fault of the plaintiff.  *See Lee v. Christian Coal. of Am., Inc.*, 160 F. Supp. 2d 14, 33 (D.D.C. 2001) (holding that a "preliminary injunction movant does not satisfy the irreparable harm criterion when the alleged harm is self-inflicted") (citing authorities).  Without any evidence to support Whole Foods' alleged injuries to its reputation or goodwill in the community as a result of any delay in permitting—rather than poor maintenance of the Store—this Court cannot find that Whole Foods is suffering from irreparable injury.

B.   <u>Even Assuming Whole Foods is Harmed, the Harm is Not Irreparable.</u>

Even if Whole Foods has suffered any injury flowing from the absence of a permit, Whole Foods fails to provide any evidence that the injury is anything more than an economic loss, which does not meet the standard for irreparable harm. "To shoehorn potential economic loss into

---

[7]      The local news media has extensively covered the closing of Whole Foods due to its pest problems.  *See, e.g.*, *Whole Foods in Glover Park to Remain Closed for Remodeling*, Fox 5 DC (Mar. 16, 2017), http://www.fox5dc.com/news/dc-news/242078950-story; Stephen Tschida, *Whole Foods in Glover Park Reopens After 'Failure to Minimize Insects, Rodents' in Store,* ABC7 (Feb. 10, 2017), http://wjla.com/news/local/whole-foods-in-glover-park-reopens-after-failure-to-minimize-insects-rodents-in-store; *Whole Foods in DC Briefly Closed for Health Violations*, NBC Washington (Feb. 10, 2017), http://www.nbcwashington.com/news/local/Glover-Park-Whole-Foods-Closed-for-Food-Code-Violations-413385753.html.

a showing of irreparable harm, a plaintiff must establish that the economic harm is so severe as to cause extreme hardship to the business or threaten its very existence." *Hill Dermaceuticals, Inc. v. U.S. Food & Drug Admin.*, 826 F. Supp. 2d 252, 261 (D.D.C. 2011) (Lamberth, J.) (internal quotation marks omitted). "[T]here must be no other adequate legal remedies available." *Wise v. United States*, 128 F. Supp. 3d 311, 319-20 (D.D.C. 2015).

Beyond mere conclusory statements, Whole Foods fails to show how its claimed economic harm is irreparable. Whole Foods certainly does not—nor can it—claim extreme hardship to its business or a threat to its very existence. Whole Foods' bare-bones allegations of irreparable harm fail. *See, e.g.*, *Barton v. Venneri*, No. Civ. A. 05–0669 (JDB), 2005 WL 1119797, at *3 (D.D.C. May 11, 2005) (denying plaintiff's preliminary injunction motion because "plaintiff has not submitted any competent evidence into the record (i.e., affidavits, exhibits) that would permit the Court to assess whether she, in fact, faces irreparable harm").

Given Whole Foods' failure to show irreparable harm, the Court can and should deny the Motion on this basis alone. *See Chaplaincy of Full Gospel Churches v. England,* 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief"); *CityFed Fin. Corp. v. Office of Thrift Supervision*, 58 F.3d 738, 747 (D.C. Cir. 1995) (holding that if a party fails to make a showing of irreparable harm, "that alone is sufficient for us to conclude that the district court did not abuse its discretion," and the Court "need not reach the district court's consideration of the remaining factors relevant to the issuance of a preliminary injunction.").

### III.   WHOLE FOODS FAILS TO DEMONSTRATE A LIKELIHOOD OF SUCCESS ON THE MERITS.

"Where the plaintiff demonstrates little to no likelihood of success on the merits, the district court must deny injunctive relief." *Wise v. United States*, 128 F. Supp. 3d 311, 317 (D.D.C. 2015) (denying motion for preliminary injunction to enjoin foreclosure of property).

Whole Foods seeks a declaration that it is not in breach of the Lease and that Wical's notice of default was unlawful.   Having failed to make any improvements over time pursuant to the contracted-for provisions in the Lease, Whole Foods now attempts to cram a decade's worth of improvements into one massive renovation that would take months to complete.   A plain reading of the Lease reflects that Whole Foods is in breach for, among other things, staying closed for more than 60 days, failing to keep the Store free from pests and rodents, and failing to keep the Store consistent with the standard of other Whole Foods locations. Whole Foods attempts to excuse these breaches by relying on a force majeure clause that does not apply to self-inflicted problems, and by cherry-picking certain provisions of the Lease while ignoring others.   Whole Foods' tortured interpretation of the Lease is unavailing.   *See Segar v. Mukasey,* 508 F.3d 16, 22 (D.C. Cir. 2007) ("[I]t is a cardinal principle of contract construction that a document should be read to give effect to all its provisions and to render them consistent with each other.") (internal quotations omitted).

### A.   Whole Foods Cannot Convert its Own Neglect Into "Force Majeure."

First, Whole Foods claims that the "force majeure" provision in Paragraph 30(A) excuses its breach due to events "outside of [Whole Foods'] control."   ECF No. 5, at ¶¶ 11-12. Paragraph 30(A) excuses a party from performing under the lease "by reason of acts of God, strikes, lockouts, labor troubles, plan approval delay . . . restrictive governmental laws or regulations, . . . or other cause ***without fault and beyond the control*** of the party obligated to perform." (emphasis added).

Accordingly, paragraph 30(A) is meant only to excuse performance where the performance is beyond Whole Foods' control. That is not the case here.

Whole Foods has not produced any affidavits or evidence showing that its pest problem resulted from anything other than its own failure to properly maintain the Store for the past decade. In fact, Whole Foods admits that it has had to shut down previously due to pest problems. Whole Foods also admits that the Store closed on March 13—more than two months before Whole Foods claims to have asked Wical to sign off on its permit application. Whole Foods was also permitted to re-open the Store three days later, but voluntarily decided to keep it closed for much larger alterations. *See* Exhibit A.

Whole Foods also argues that Paragraph 30(A) allows it to remain closed for a lengthy period of time to comply with Paragraph 4(F), which requires Whole Foods to "continuously conduct" its Store "in accordance with the same standards of operation and in the same quality as it presently operates its other similar stores . . . ." ECF No. 5, at ¶¶ 53-66. Again, Paragraph 30(A) does not apply here. Given the express terms of Paragraph 4(F), it was entirely foreseeable (and not an Act of God or force majeure) that Whole Foods would from time to time have to "improve the Georgetown Store and operate at the high level of quality expected from Whole Foods." Compl. ¶ 4. If the parties envisioned large-scale renovations resulting in closures for an extended period of time, they certainly could have negotiated such a provision.

The contracted-for mechanism to carry out the terms of Paragraph 4(F) is located in the very *next* provision, Paragraph 4(G), which provides that Whole Foods may "close the Demised Premises to the public for such periods as may be reasonably required in order to diligently modernize or improve same, ***but in no event shall such closures exceed sixty (60) days*** in the aggregate during any three (3) year period elapsing during the Lease Term." Compl. Ex. A ¶ 4(G)

12

(emphasis added); *see also* Compl. ¶ 18. Whole Foods admits that it never availed itself of Paragraph 4(G). *See* Compl. ¶ 26.  It cannot circumvent that provision now by claiming that its massive modernization and remodeling effort is somehow excused under Paragraph 30(A).

Finally, Whole Foods argues that it is excused from performance because of Wical's alleged delay in "plan approval" as set forth in Paragraph 30(A). ECF No. 5, at ¶ 31.  Even assuming this provision applied here (it does not), Whole Foods has not even submitted the required plans to Wical to review pursuant to Paragraph 7 of the Lease.  *See* Ogden Decl. ¶ 8. Moreover, Whole Foods cannot claim that it is excused from being closed for more than 60 days due to a delay in "plan approval" where Whole Foods apparently waited nearly three months before even developing any "plans" for the renovations that, by its own admission, would take more than 60 days to complete even if such plans were approved. Compl. ¶ 40.  Given that the cause of Whole Foods' closure (its planned major renovation) has nothing to do with an act of God or other circumstance out of its control, Whole Foods is unlikely to prevail on its argument that it is excused from performance by virtue of Paragraph 30(A).

> B.   The Lease Forbids Whole Foods From Closing For More Than Sixty Days Under Any Circumstances.

Second, Whole Foods argues that it is excused from being closed for more than 60 days under Paragraph 18 of the Lease—and that Paragraph 18 allows Whole Foods to be closed with "no finite time limit"—because it is remediating the rodent problem.  *See* ECF No. 5, at ¶ 12. But as stated above, Whole Foods' long-term closure and associated planned renovations are not narrowly tailored to remediate the pest problem and are instead designed to modernize the Store. Whole Foods seeks to circumvent Paragraph 4(G) of the Lease, which expressly prohibits Whole Foods from closing the Store for more than 60 days—even for renovations and improvements. *See* Compl. Ex. A ¶ 4(G).

In an attempt to evade the Renovations clause in Paragraph 4(G), Whole Foods seeks

protection under Paragraph 18(A) of the Lease, which provides a 60-day period to cure after Notice

of a Non-Monetary Default and excuses any limitation on the cure period "in the case of a

structural repair or replacement required of Tenant."   But Whole Foods ignores the rest of the

clause, which provides that "no such additional time" will be provided if a tenant fails to comply

with its obligation to continuously operate its business operations.   The clause in Paragraph 18

reads as follows:

> The aforesaid reference to fifteen (15) business days in the case of a non-monetary
> default shall be extended to include such additional time (not in excess of sixty (60)
> days) reasonably required in order to permit Tenant to fully cure any such non-
> monetary default hereunder, provided Tenant is diligently prosecuting its cure, ***with
> the understanding that no such additional time shall pertain to any default by
> Tenant of its obligation to continuously operate its business operations within the
> Demised Premises*** and further that the aforesaid limitation to sixty days shall not
> apply in the case of a structural repair or replacement required of Tenant hereunder
> so long as Tenant is diligently and in good faith prosecuting such structural repair
> or replacement to completion.

Compl. Ex. A ¶ 18(A) (emphasis added).

Paragraph 18(A) means that in the event of a non-monetary default, Whole Foods has 60

days to cure, but only 15 days if, as is the case here, Whole Foods defaults on its obligation to keep

the Store open and operating. Whole Foods is asking the Court to provide an indefinite extension

even though the Lease expressly prohibits extensions in these circumstances.

Moreover, there is nothing in the record to support the argument that Whole Foods is

merely making "a structural repair or replacement required of Tenant hereunder . . . ." Compl. Ex.

A ¶ 18(A). This is a wide-scale renovation, modernization, and improvement, as Whole Foods has

acknowledged in its Complaint and press releases.   *See, e.g.*, Compl. ¶ 51 ("Plaintiff cannot

proceed with the completion of the renovation"); Compl. ¶ 57 ("significant improvements are

required for Plaintiff to comply with the Lease requirements to operate at the same standards and

14

quality as other similar stores."); Compl. ¶ 69 ("the Georgetown Store required substantial improvements and modernization"); Compl. ¶ 99 ("the repairs and improvements may cause Plaintiff's gross sales to increase"); *Whole Foods in Glover Park to Remain Closed for Remodeling*, Fox 5 DC (Mar. 16, 2017), http://www.fox5dc.com/news/dc-news/242078950-story. Whole Foods would be hard-pressed to tie all "planned improvements" to a health and safety need, particularly when such improvements include a new salad bar, new food presentations, and register stands. Compl. ¶ 35.

Accordingly, it is unlikely that Whole Foods will prevail on its argument that Paragraph 18(A) excuses its breach and allows Whole Foods to stay closed on a long-term basis with "no finite time limit" in order to carry out its long-term renovation plans.

### C. Whole Foods Fails to Show a Likelihood of Success on its Remaining Arguments Regarding Breach.

#### 1. *Wical is not acting in bad faith.*

Notwithstanding Whole Foods' repeated rodent problems, multiple violations of D.C. ordinances, and failure to maintain the premises, Whole Foods tries to blame Wical—whose property is now a construction zone with violation notices from the District on its windows—for "strong-arm[ing]" Whole Foods.  Compl. ¶ 5. Yet it is Whole Foods that voluntarily "committed to spend millions of dollars" (Compl. ¶ 88) and unlawfully began demolition operations for a renovation project that it had no right to perform and with plans that Wical still has not seen. Ogden Decl. ¶¶ 4-8.  It is also Whole Foods that failed to notify Wical of the District's Stop Work Order issued on May 21 when it sought Wical's approval of permit applications on May 23.  *See* Ogden Decl. ¶¶ 6-7.  There is no evidence of bad faith on Wical's part.  Whole Foods' real complaint is that Wical simply followed the terms of the Lease by issuing a Notice of Default after Whole Foods' breach.

Whole Foods relies on *Entrepreneur, Ltd. v. Yasuna*, 498 A.2d 1151, 1160 (D.C. 1985) to support its claim that Wical's Notice of Default was pretextual.  But in *Yasuna*, a landlord had financial difficulties and asked the tenant to renegotiate the rent.  When the tenant refused, the landlord sold the townhouse, in violation of a covenant providing the tenant with a right of first refusal to purchase the home.  *Id.* at 1155-57. The subsequent owner then attempted to use the tenant's long-known non-conforming use of the property to hold the tenant in default and regain possession. *Id.*  Here, Wical has complied with all of its Lease obligations and immediately sent the Notice of Default after Whole Foods remained closed for more than 60 days. Whole Foods has presented no evidence at all of pretext, other than a conclusory allegation that "Defendant's Notice of Default was issued in order to coerce Plaintiff into entering into a new lease with higher rent and a longer term." ECF No. 5, at ¶ 14.

Nor can Whole Foods succeed on its claim of a breach of the implied covenant of good faith and fair dealing.  Whole Foods accuses Wical of breaching Paragraph 27(J) of the Lease by declining to consent to the permit application. Compl. ¶¶ 81, 108, 115.  Whole Foods also accuses Wical of breaching Paragraphs 18(A) and 30(A) by issuing the Notice of Default. Compl. ¶ 114.  Whole Foods' claim for breach of the implied covenant cannot survive when it also alleges a breach of an express provision.  *See Crystal Prods, Inc. v. Doc Severinsen Orchestras*, No. Civ. A. 90-932 1994 WL 507546, at *4 (D.D.C. Sept. 10, 1992) (finding, after review of state and federal court opinions, that under District law, "plaintiff cannot maintain an independent action for breach of the implied covenant of good faith and fair dealing" when also bringing a breach of contract claim); *see also Xereas v. Heiss,* 933 F.Supp.2d 1, 8 (D.D.C. 2013) ("[B]reach of the implied covenant is not an independent cause of action when the allegations are identical to other claims for relief under an established cause of action.").

In any event, Whole Foods has no basis for a claim of breach of the implied covenant of good faith since Whole Foods (a) has not provided Wical with the constructions plans for the permits it wants Wical to approve, and (b) there is no supporting evidence of bad faith other than conclusory allegations.

### 2.      *Wical has been harmed.*

Whole Foods has attempted to force its renovations through without permission, only to claim now that it would suffer irreparable harm if Wical does not get out of the way. At the same time, Whole Foods claims that Wical cannot prevail on a claim for breach of the Lease because Wical has not been harmed at all. Whole Foods cannot escape liability where, as here, Wical continues to suffer harm repeatedly as a result of Whole Foods' breaches.

Wical is harmed because (1) Whole Foods has apparently begun large-scale alterations on Wical's property without Wical's consent and without obtaining proper plans and permits; (2) the premises appear vacant, dark, and in poor condition, which impacts the property's marketability; (3) bright red Stop Work Orders are displayed prominently on the Store; and (4) in its current state, Wical is unable to re-let the property. Ogden Decl. ¶¶ 4-5, 10-11.

Whole Foods fails to demonstrate a likelihood of success on any of these theories of liability against Wical. Whole Foods is in default only because of its own actions and omissions, and its allegations and evidence fail to satisfy this prong.

### D.   Whole Foods' Request Would Alter the Status Quo and Provide the Ultimate Relief It Seeks.

Wical disguises its request for injunctive relief as an effort to preserve the status quo. But the request for an order forcing Wical to sign permit applications is a request that goes to the merits of the case and is part of the ultimate relief Whole Foods is seeking in this litigation. The Court should deny Whole Foods' request, as this request is anything but a request to maintain the status

quo.  *See Sataki v. Broadcasting Bd. Of Governors*, 733 F. Supp. 2d 1, 11-12 (D.D.C. 2010) (denying temporary restraining order where "Plaintiff seeks to *alter* the status quo[] [d]espite Plaintiff's repeated attempts to characterizes the relief sought as 'preserving the status quo'. . . ."); *Majhor v. Kempthorne*, 518 F. Supp. 2d 221, 256 (D.D.C. 2007) (denying preliminary injunction where "the plaintiff seeks to upset the status quo by having the Court provide the ultimate relief sought by the plaintiff at the very outset of the case.");  *Bristol-Myers Squibb Co. v. Shalala*, 923 F. Supp. 212, 221 (D.D.C. 1996) (denying preliminary injunction where "if the injunction is granted, Bristol would substantially receive the ultimate relief it requests, before there has been a trial of the issues and on a record which fails to show Bristol's substantial likelihood of succeeding on the merits.").

## IV.   THE BALANCE OF EQUITIES FAVORS WICAL.

"The balance of the equities weighs the harm to [the movant] if there is no injunction against the harm to the [non-movant] if there is." *Pursuing America's Greatness v. FEC,* 831 F.3d 500, 511 (D.C. Cir. 2016).  Here, Wical faces a threat of large-scale alterations to its property that it has not approved and for which it has not seen any plans. Meanwhile, Whole Foods is merely faced with a delay resulting in a minor economic loss to one of the largest retailers in the country. The balance of the equities favors maintaining the status quo.

Wical has already suffered significant harm by Whole Foods' closure.  Whole Foods has started demolishing the interior of the Store in violation of D.C. ordinances. Wical does not even have the construction plans, names of contractors, or certificates of liability insurance that Whole Foods was required to provide. Ogden Decl. ¶¶ 8.   The premises are dark, vacant, and unmarketable. Ogden Decl. ¶¶ 10-11.  Wical attempted to enforce its rights, but now must suspend any efforts to institute eviction proceedings until this litigation is resolved.

On the other hand, if the Court denies the Motion, Whole Foods will simply have to wait until the conclusion of the litigation before it can make the renovations that it seeks. *See Singh v. Carter*, 185 F. Supp. 3d 11, 17 n.3 (D.D.C. 2016) (While "[t]he D.C. Circuit has not opined on the issue . . . application of a heightened standard of review for requests for mandatory preliminary injunction relief has been adopted in other Circuits.") (citing authorities).  Moreover, Whole Foods should not be allowed to come to this Court sitting in equity and obtain an order forcing Wical to consent to the permit applications where Whole Foods first attempted to do the work in violation of District ordinances, resulting in a Stop Work Order.

The Court should maintain the status quo and allow a full trial on the merits before taking any steps to require Wical to approve wide-scale alterations to its Store. The balance of equities, therefore, weighs in favor of Wical.

## V.    AN INJUNCTION IS NOT IN THE PUBLIC INTEREST AND WOULD REWARD WHOLE FOODS FOR ITS BREACH.

"[T]he public interest favors the orderly disposition of property and the enforcement of binding contracts." *Gov't of Jamaica v. 1201 29th St., N.W. Tenants Ass'n,* CIV. A. No. 92-0836 (JHG), 1992 WL 84908, at *4 (D.D.C. Apr. 7, 1992) (denying motion for temporary restraining order where Plaintiff sought to halt the sale of real property). The clear terms of the Lease prohibit Whole Foods from remaining closed for more than 60 days.  Whole Foods has been closed for nearly three months now and, by its own admission, will need at least six more months to even obtain construction permits. *See* ECF No. 5, at ¶ 23 ("Obtaining the required construction permits from the District of Columbia is expected to take six months or more.").

Whole Foods failed to keep the premises clean and free from pests as required by Paragraph 4(F) of the Lease; Whole Foods failed to keep the Premises in good repair as required by Paragraph 5(A) of the Lease; Whole Foods failed to maintain the same quality as similar Whole Foods stores

19

as required by Paragraph 4(F) of the Lease; and Whole Foods began demolishing the interior without Wical's consent, as prohibited by Paragraph 7 of the Lease and in violation of District law. Rather than negotiate an amendment to the Lease that would allow Whole Foods to remain closed for more than 60 days, Whole Foods unilaterally made plans for a wide-scale renovation that could take a year or more to complete. Whole Foods then ignored its Lease obligations and District law by starting the demolition of the interior without authorization, resulting in a Stop Work Order. It may be easier for Whole Foods to ask forgiveness than request permission, but it is not in the public interest to reward parties to contracts that repeatedly fail to comply with their obligations and the law.

## VI.   WHOLE FOODS SHOULD PAY RENT TO WICAL WHILE THIS CASE IS PENDING.

Whole Foods argues that it should pay monthly rent payments to the Court rather than Wical because "if payment of rent is required during the pendency of litigation, the tenant should pay into the court registry each month the amount which he originally contracted to pay as rent." ECF No. 5, at ¶ 38.

"The decision whether to allow a Rule 67 deposit generally lies within the discretion of the district court." *LTV Corp. v. Gulf States Steel, Inc. of Ala.*, 969 F.2d 1050, 1063 (D.C. Cir. 1992). But while "[t]he Rule 67 procedure provides a place of safekeeping for disputed funds pending the resolution of a legal dispute . . . it cannot be used as a means of altering the contractual relationships and legal duties of the parties." *Id.*

"Deposits in court may be made in actions *only* when at least part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or some thing capable of delivery." 13-67 Moore's Federal Practice - Civil § 67.03 (2017) (citing authorities) (emphasis added). Neither Whole Foods' Complaint nor its Motion seeks a money judgment, so there is no

basis for depositing Whole Foods' rent into the Court.  *See Eurolines Shipping Co. v. Metal Transp. Corp.*, 491 F. Supp. 590, 592 (S.D.N.Y. 1980) ("Rule 67 does not authorize such a deposit here, where no action has been brought seeking a judgment for a sum of money.").

Even if there were a money dispute, Whole Foods offers no reason for disregarding the terms of the Lease.  "[A] tenant of commercial property must pay rent regardless of whether the landlord has fulfilled its contractual obligations." *Pinzon v. A & G Props.,* 874 A.2d 347, 349 n.5 (D.C. 2005). Moreover, "it is settled that '[w]here covenants are independent, nonperformance by one party does not excuse the other party from the need to satisfy his obligations.'" *Norris v. Green*, 656 A.2d 282, 286 (D.C. 1995) (citation omitted). Paragraph 26(G) of the Lease expressly states that the covenants are independent, and Paragraph 3(B) prohibits Whole Foods from any set off unless otherwise stated. Both the law and contract clearly require Whole Foods to continue paying rent to Wical, and there is no basis for Whole Foods to pay rent to the Court instead.

Moreover, Paragraph 30(B) of the Lease already addresses rent payments during the pendency of a dispute: "If at any time a dispute shall arise as to any amount or sum of money to be paid by one party to the other or any work to be performed by either of them . . . the party against whom the obligation to pay or to perform is asserted shall have the right to make payment or perform such work and pay the cost thereof 'under protest.'" Whole Foods can later attempt to recover the payment made under protest. Compl. Ex. A ¶ 30(B). The Court should not alter the terms of the Lease when this scenario was expressly contemplated and agreed upon.

Whole Foods offers no evidence to justify a need for the Court to hold its rent payments, other than a baseless conclusory allegation that "Plaintiff may suffer the loss of the funds because it is likely Defendant will spend them or commingle them with other funds." ECF No. 5, at ¶ 43. Whole Foods does not point to any history of Wical commingling funds or failing to comply with

any of its obligations as a landlord in the 21 years that Whole Foods has been a tenant.  Whole Foods' request is merely an effort to force Wical to give in to its renovation demands through tactics that are effectively the same as withholding rent. The Court should refuse Whole Foods' unfounded Request.

## VII.    THE COURT SHOULD AWARD WICAL ITS ATTORNEY'S FEES.

Paragraph 18(C) of the Lease requires Whole Foods to "reimburse Landlord for all reasonable attorney's fees incurred by Landlord in connection with the enforcement against Tenant (or any assignee or subtenant of Tenant) of any of Landlord's rights or remedies under this Lease in the case of a Tenant default after written notice and expiration of the applicable cure period." If the Court denies Whole Foods' Motion, the Court should award Wical all reasonable attorney's fees it incurred in opposing Whole Foods' attempts to prevent Wical from enforcing its rights.

## CONCLUSION

For the reasons stated above, Wical respectfully requests that the Court:

1.      Deny Whole Foods' Motion in its entirety; and

2.      Award Wical its reasonable attorneys' fees incurred in defending this Motion.

Dated: June 27, 2017                      Respectfully submitted,

/s/      Moxila A. Upadhyaya
J. Douglas Baldridge (DC Bar No. 437678)
Moxila A. Upadhyaya (DC Bar No. 494373)
Kevin W. Weigand (DC Bar No. 1004998)
600 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 344-4000
Facsimile: (202) 344-8300
jbaldridge@venable.com
maupadhyaya@venable.com
kwweigand@venable.com

*Counsel for Defendant Wical Limited Partnership*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on the 27th day of June, 2017, I served a copy of the foregoing

through the Court's Electronic Case Filing System, which will send notification to the following:

>Brian P. Waagner
>Husch Blackwell LLP
>750 17th Street NW, Suite 900
>Washington, DC 20006
>Brian.Waagner@HuschBlackwell.com

>Norman B. Berger
>Sandra D. Mertens
>Gensburg, Calandriello & Kanter, P.C.
>200 West Adams Street, Suite 2425
>Chicago, Illinois 60606
>NBerger@gcklegal.com
>SMertens@gcklegal.com

>*Counsel for Plaintiff*

/s/      Moxila A. Upadhyaya
Moxila A. Upadhyaya