IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| WHOLE FOODS MARKET GROUP, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:17-cv-01079-RCL |
| | ) | |
| WICAL LIMITED PARTNERSHIP, | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION FOR ENTRY OF A TEMPORARY
RESTRAINING ORDER AND PRELIMINARY INJUNCTION, AND
FOR JUDICIAL ESCROW OF RENTS**

### SUMMARY OF ARGUMENT

Because Defendant has agreed to two of the four aspects of relief sought by Plaintiff Whole

Foods Market Group, Inc.'s ("Whole Foods" or "Plaintiff") Motion (Paragraph A of the Prayer for

Relief) – to not terminate the Lease or take action to evict or take possession – there remain two

aspects of relief to be decided by the Court: (1) whether Defendant should be enjoined from

withholding its consent to Plaintiff's permit application (without prejudice to its rights); and (2)

whether Plaintiff should be permitted to pay rent to the Court pending a determination as to

whether Defendant has breached the Lease and is entitled to rent. (*See* Proposed Order, ECF 13.)

This case is about the need for the Court's fair and equitable interpretation of the 1994

lease between Whole Foods and Defendant Wical Limited Partnership ("Wical" or "Defendant")

relating to the property located at 2321 and 2323 Wisconsin Avenue, NW, Washington, D.C.

20007. For more than 20 years, Whole Foods has operated its grocery store at the designated

address without any major disputes with Defendant. As a respectable and desirable tenant, Whole

Foods has developed a strong clientele with its health-conscious core values, strict quality

standards, care for communities in which it opens its grocery stores, and environmental stewardship. Because of the reputation Whole Foods has built, Whole Foods has become one of the nation's largest retailers, and as a result, is exposed to behavior such as that of Defendant who seeks to extract from Plaintiff more than it is entitled to.

In this case, Whole Foods simply wants to continue operating its grocery store under the terms of its Lease. (*See* Compl. Exh. A (filed under seal).) Defendant seeks termination of the Lease in order to force Plaintiff to re-negotiate a new lease with higher rent and a longer term, or alternatively, to evict Plaintiff and continue to collect rent and damages from Plaintiff while remodeling the interior of the store for a new tenant, all of which threatens the business Whole Foods has built in the community and the good will it has developed.

Defendants' Opposition memorandum contains a number of factual and legal misconceptions to support its untenable arguments and convince the Court that Defendant has done nothing wrong and further interim relief is inappropriate. In fact, Wical ignores its own actions made in bad faith while blaming Whole Foods for trying to fulfill its obligations under the Lease.

Based on the true facts and applicable law, this Court should grant Whole Foods its remaining requested relief: (1) an order enjoining Wical from withholding its consent to Whole Foods' permit application so that the permitting process can proceed while the dispute is resolved, and (2) an order allowing Whole Foods to escrow its monthly rent payments with the Court pending resolution. As set forth below, this relief will make the best use of the time and resources of all parties and prejudice no one.

<u>**DEFENDANT'S FACTUAL MISCONCEPTIONS**</u>

Defendant's interpretation of the facts raise a number of factual misconceptions. The most notable factual misconception is Defendant's assertion that Whole Foods' neglect created the

rodent problem which Defendant believes was not an emergency that required temporary closure of the store. While it is true that Whole Foods' closure of the store on March 13, 2017 was voluntary, the closure was necessary on an emergency basis because the rodent problem could not be fully addressed by normal means.

Whole Foods engaged pest control services to provide periodic preventative and, when necessary, remedial pest control services. *See* Affidavit of Mark Hughes at ¶5, attached hereto as **Exhibit A**. Despite the vendor's preventative and remedial efforts, Whole Foods received two notices from the District of Columbia relating to the rodent problems. (Pl. Compl. (ECF 1) ¶¶27-29.) After receiving the second notice, Whole Foods opted to close the store on an emergency and temporary basis. (Compl. ¶¶30-35.) It was not until Whole Foods began to more thoroughly address the situation that it discovered the extent of action necessary to permanently resolve the problem.

While the District of Columbia may have allowed Whole Foods to re-open the store on March 16, 2017, the remediation necessary to fully resolve the rodent problem could not be permanently accomplished overnight as Defendant suggests. Rather, over a period of weeks, Whole Foods identified and resolved a number of sources of the rodent problem, including: (1) defects in the construction of the building (the responsibility of Defendant who constructed the building, *see* paragraph 31 of Lease, which requires Wical to perform certain construction and improvements "in a good and workmanlike manner, at Landlord's sole cost and expense"); and (2) an ongoing rodent infestation[1] throughout the District of Columbia, for which the Department

---

[1] *See* Washington Post article, *I saw 13 rats in 20 minutes. D.C., we have a rodent crisis* (Oct. 17, 2016), *available at* https://www.washingtonpost.com/local/i-saw-13-rats-in-20-minutes-dc-we-have-a-rodent-crisis/2016/10/17/ba7dcef0-949f-11e6-bb29-bf2701dbe0a3_story.html?utm_term=.935aedd7c5cc;   WJLA   article, *D.C. named third most rat-infested city in the U.S.* (Oct. 17, 2017), *available at* http://wjla.com/news/local/dc-named-third-most-rat-infested-city-in-the-us; Fox 5 article, *To battle rat problem, DC considering cracking down on businesses' storage of trash* (May 3, 2017), *available at* http://www.fox5dc.com/news/local-news/252507854-story;

of Health has instituted a Rodent Control Program[2] involving community outreach, abatement, and procedures for reporting and correcting problems. A copy of the articles referenced herein are attached as **Exhibit B**.

As a result, Whole Foods could not discern the full extent of the problem or complete full and permanent remedial measures until it demolished the walls and ceilings, emptied the store of many fixtures, corrected the construction defects, and cleaned the store thoroughly. (Compl. ¶¶31-35.) Therefore, the first factual misconception by Defendant – that Whole Foods "created its own so-called 'emergency'" – is incorrect. (Def. Opposition Memo. (ECF 16), at 1.) Rather, Whole Foods used reasonable business judgment in engaging pest control services, and determined that additional steps had to be taken on an emergency basis to determine the full extent of the problem and take remedial measures to permanently correct the problem.

Second, contrary to Defendant's contention that Whole Foods undertook large-scale demolition and construction efforts in furtherance of its remodeling project (Def. Opposition Memo. 1), Whole Foods was required to demolish ceilings, walls, and fixtures inside the store in order to fully resolve the rodent problem. (Compl. ¶¶31-35.) *See also* **Exhibit A** ¶4. Further, Defendant has nothing more than bare accusations that Whole Foods began construction efforts on its remodeling project. Rather, *after* demolition of certain portions of the store to address the pest problem, Whole Foods engaged an architect and general contractor to draw up plans to apply for required permits before beginning construction. (Compl. ¶¶36-37.) Once construction plans were substantially completed, Whole Foods completed its application for permits and requested consent from Defendant to submit the permit application on March 23, 2017. (Compl. ¶¶38-39.) Whole Foods has not yet begun construction efforts to rebuild or remodel the store, and by refusing

---

[2] *See* https://doh.dc.gov/service/rodent-control.

to consent to the permit application, Defendant is causing Whole Foods further and unnecessary delays in obtaining permits, which not only lengthens the time Whole Foods must remain closed, but will also result in lost profits and loss of jobs due to delays in re-opening the store.

Third, Defendant misconstrues Paragraph 30(A) of the Lease by calling it a "force majeure clause." (Opposition Memo., at 11.) Paragraph 30(A) is clearly labeled "Excuse for Nonperformance" and applies to a wide number of situations, including any "other cause without fault and beyond the control of the party obligated to perform." Whole Foods has demonstrated above that the closure to permanently correct the pest problem was done on an emergency basis due to circumstances outside of Whole Foods' control, and continued closure is the result of delays with local authorities in granting permits, which delay has been extended due to Defendant's refusal to consent to the permit application.

Finally, Defendant raises a factual misconception when it concludes that Whole Foods "cherry-picked" certain provisions of the Lease while ignoring others, resulting in a "tortured interpretation of the Lease." (Opposition Memo., at 11.) Not only does Defendant fail to explain what provisions of the Lease it claims Whole Foods has ignored, but it also ignores the entire purpose of Whole Foods' Verified Complaint and request for interim relief – to allow the Court an opportunity to interpret the Lease and determine the rights and obligations of the parties under the current circumstances which prejudice no one. Rather, Defendant makes its own assumptions and conclusions as to which Lease provisions apply, choosing to ignore Paragraph 30(A) and portions of Paragraph 18(A) while asserting its rights under other sections. Defendant is guilty of the very act it claims against Whole Foods.

## DEFENDANT MISSTATES THE LEGAL STANDARD APPLICABLE TO PRELIMINARY INJUNCTIONS

Defendant's Opposition memorandum does not accurately state the legal standard applicable to preliminary injunctions. The first error appears when Defendant proposes that this Court reject the "sliding scale" approach when analyzing the factors required to grant a preliminary injunction. (Def. Opposition Memo. 6.) Defendant essentially admits that the "sliding scale" approach is still good law despite suggesting it should be overturned due to the Supreme Court's decision in *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7 (2008) (overturning preliminary injunction that jeopardized national security). In fact, the Supreme Court did not overturn the "sliding scale" approach, but instead reinforced the idea that some showing is required of each factor to issue a temporary restraining order or preliminary injunction. *Id*. at 22 ("Our frequently reiterated standard requires plaintiffs seeking preliminary relief to demonstrate that irreparable injury is *likely* in the absence of an injunction"). Moreover, Justices Ginsberg and Souter in their dissent stated: "[C]ourts have evaluated claims for equitable relief on a 'sliding scale,' sometimes awarding relief based on a lower likelihood of harm when the likelihood of success is very high. (Citation omitted.) This Court has never rejected that formulation, and I do not believe it does so today." *Id.* at 51. Moreover, the D.C. Circuit continues to weigh the four factors even post-*Winter*. *Singh v. Carter*, 168 F.Supp.3d 216, 223 (D.D.C. 2016) (granting temporary restraining order, the Court recognized the *Winter* holding while also stating that a plaintiff must "show that all four factors, taken together, weigh in favor of the injunction"); *Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F.Supp.2d 1, 12 (D.D.C. 2009) ("the Court finds that the D.C. Circuit's sliding-scale standard remains viable even in light of the decision in *Winter*") Therefore, Defendant's attempt to change the applicable legal standard is unavailing. Regardless, Whole Foods has satisfied each of the four factors required for a preliminary injunction.

Defendant further errs in repeatedly claiming that Whole Foods did not provide "proof" or "evidence" to support its allegations and arguments. However, Whole Foods filed a Verified Complaint (ECF 1) reciting of relevant facts in detail, subject to a notarized verification under penalties of perjury by an agent of Whole Foods, which was incorporated into Whole Foods' Motion.[3] (Pl. Motion (ECF 5) ¶1.)

Here, Whole Foods' Complaint was verified, signed under penalties of perjury, and notarized. As such, the Verified Complaint (ECF 1) should be taken as true to support Whole Foods' Motion for Preliminary Injunction absent Defendant's factual disputes in a counter-affidavit. Since the only counter-affidavit filed by the Defendant was the Declaration of Scott Ogden, which did not dispute the facts in Whole Foods' Verified Complaint but merely contained Defendant's arguments, the factual allegations in the Verified Complaint should be taken as true and support the requested equitable relief. The only apparent dispute of fact in Ogden's Declaration is Ogden's belief that Whole Foods had already begun "substantial interior alterations." (Ogden Decl. (ECF 17) ¶5.) However, Ogden's belief was based solely on a Stop Work Order issued by the District of Columbia and window signs reading "We are remodeling!", neither of which constitutes Ogden's personal knowledge regarding whether Whole Foods had yet begun construction. Rather, the photographs attached to Ogden's Declaration evidence that the store

---

[3] "A verified complaint or supporting affidavits may afford the basis for a preliminary injunction," especially where the facts are undisputed. *K-2 Ski Co. v. Head Ski Co.*, 467 F.2d 1087, 1088-89 (9th Cir. 1972). *See also Smotherman v. U.S.*, 186 F.2d 676, 678 (10th Cir. 1950) (holding that verified complaint upon which the restraining order was issued and the supporting affidavits afforded sufficient basis for valid restraining order); *Samuel C. Ennis & Co., Inc. v. Woodmar Realty Co.*, 89 F.R.D. 136, 139 (N.D.Ill. 1981) ("Although a verified complaint often is a necessity in seeking a temporary restraining order or a preliminary injunction, the federal rules do not require a verified complaint as a necessary predicate for permanent injunctive relief"); *Huk-a-Poo Sportswear, Inc. v. Little Lisa, Ltd.*, 74 F.R.D. 621, 624 n1 (S.D.N.Y. 1977) ("Because a 'verified complaint or affidavits standing undenied may be presumed true,' (citation omitted) a court may grant a preliminary injunction on the basis of pleadings and affidavits, even where no witnesses have been called"); *Western Air Lines, Inc. v. Flight Engineers Intern. Ass'n, AFL-CIO*, 194 F.Supp. 908, 908 (S.D. Cal. 1961) (granting temporary injunction based on factual allegations in plaintiff's complaint and affidavits, which must be taken as true, absent conflicting counter-affidavits).

windows had been covered with paper as to block Ogden, the District of Columbia, or any other onlooker from viewing the inside of the store, making Ogden's "belief" baseless, unreliable, and probative of nothing. There is no dispute that the store is closed and, hopefully, in the process of being remodeled.

### WHOLE FOODS HAS DEMONSTRATED A LIKELIHOOD OF SUCCESS ON THE MERITS

Whole Foods' Verified Complaint, which should be taken as true for purposes of this Motion, details the facts and circumstances giving rise to Whole Foods' ultimate claims against Defendant. (ECF 1.) Specifically, Whole Foods took all reasonable steps to prevent breaches of the Lease, including hiring a contractor to provide pest control services and continuing to operate the store without closure since 1996. (Compl. ¶¶ 26, 28.) Neither the rodent problem nor the forced closure was "self-inflicted" as Defendant claims, but was on an emergency basis. The continued closure occurred as the only complete and lasting resolution of the problem. (Compl. ¶ 30.) Moreover, Whole Foods worked diligently to address and cure the rodent problem, then began the process of rebuilding by preparing plans and applying for permits. Until being recently advised of the store's closure in or about April 2017, Defendant had never once complained of any of Whole Foods' actions. Defendant never complained that Whole Foods was not keeping its store free of pests and rodents before Whole Foods advised Defendant of its complete remediation in April 2017. Defendant never complained that Whole Foods had not remodeled the store in the past nor that the store was inconsistent with similar stores in the area, until this lawsuit was filed.[4] Rather, beginning the moment Defendant learned of Plaintiff's predicament (after Whole Foods had spent more than $1 million to remediate the pest problem), Defendant claimed that Plaintiff no longer had a lease and would need to negotiate a new lease with higher rent and longer term. (Compl. ¶¶

---

[4] In fact, the store has been remodeled on three prior occasions without closure of the store. *See* **Exhibit A ¶3.**

44-47, 77.) When Whole Foods explained its belief that the closure fell within Paragraph 30(A) of the Lease, Defendant refused to consider Whole Foods' position and instead effectively declared the lease terminated before the expiration of the 60-day closure period. (Compl. ¶¶ 44-45, 78.) Defendant has exacerbated the problem by refusing to consent to Whole Foods' permit application on May 26, 2017, delaying the store from re-opening indefinitely. (Compl. ¶59.)

Defendant's argument on this point is replete with error. Defendant argues that Whole Foods cannot convert its own neglect into "force majeure"; however, Defendant is wrong because, as discussed above, Whole Foods was not neglectful, nor is Paragraph 30(A) limited to "force majeure," but is much broader and provides an excuse for performance for virtually anything outside of Whole Foods' control.  Rather than let the Court decide as Plaintiff's Complaint seeks, Defendant continues to insist that Paragraph 30(A) does not apply, which is only Defendant's illogical opinion. Defendant's position that the Lease forbids Whole Foods from closing for more than 60 days under any circumstances makes no sense, given that Paragraph 18(A) and 30(A) both provide bases for excusable delays including the 60-day closure limitation. Defendant highlights for the Court the portion of Paragraph 18(A) that Defendant believes applies, but ignores the later portion of the paragraph: ". . . further that the aforesaid limitation to sixty days shall not apply in the case of a structural repair or replacement required of Tenant hereunder so long as Tenant is diligently and in good faith prosecuting such structural repair or replacement to completion."

Defendant distracts the Court by pointing out that Whole Foods has not submitted a copy of its plans to Defendant for review, even though Paragraph 7 of the Lease states that Whole Foods may make interior non-structural alterations without Defendant's prior written consent, requiring only that Whole Foods provide Defendant with plans or working drawings "prior to commencement of any non-structural alterations." Whole Foods provided a full copy of its plans

to Defendant on July 6, 2017, with a promise that Defendant's approval of the submission would be without prejudice to its position in this case. (*See* Hughes Affid., **Exh. A** ¶11.)

Defendant also tries to deflect away from its various acts of bad faith, including: (i) Defendant's contention that Whole Foods no longer had a Lease in April 2017, prior to the expiration of the 60-day closure period in May 2017 (Compl. ¶¶ 44-45, 78); (ii) Defendant's attempts to renegotiate the Lease with a higher rent, lower percentage rent threshold, and longer term, prior to the 60-day closure period expiration and prior to issuing the Notice of Default (Compl. ¶¶ 44-45, 77-78); (iii) Defendant's refusal to recognize certain provisions of the Lease, including Paragraphs 18(A) and 30(A) (Compl. ¶¶ 44-46); (iv) Defendant's refusal to consent to Whole Foods' permit application, which prevents Whole Foods from moving forward to re-open, while at the same time accusing Whole Foods of not timely re-opening (Compl. ¶¶39, 42, 44-46); (v) Defendant issuing a Notice of Default while Whole Foods was diligently pursuing a cure (Compl. ¶ 46); and (vi) continuing to accept Whole Foods' rent payments while placing hindrances to Whole Foods' completion of the remodeling project and attempt to divest Whole Foods of possession (Compl. ¶¶42-51).

Finally, Defendant attempts to mislead this Court by using an unreported case from 25 years ago to support its argument that Whole Foods' claim for breach of the implied covenant of good faith and fair dealing cannot survive when it also alleges a breach of an express provision. (Opposition Memo., at 16.) Defendant mis-quotes *Crystal Productions, Inc. v. Doc Severinsen Orchestras*, 1994 WL 507546, at *4 (Dist. D.C. Sept. 10, 1992). What *Crystal Productions, Inc.* actually said was that it agreed with the defendant's contention that, "as a matter of law, there can be no independent action for breach of [the covenant of good faith and fair dealing] alone, without any allegation that [defendant] breached an express term of the Personal Services Agreement." *Id.*

at *3. When the court later held that "plaintiff cannot maintain an independent action for breach of the implied covenant of good faith and fair dealing," it appears the court was holding such because the plaintiff did not allege any breaches of the underlying contract provisions to support its claim of breach of the implied covenant, not, as Defendant contends, because the plaintiff also brought a breach of contract claim. *See id.* at *4. In fact, the opinion is vague as to exactly what claims the plaintiff brought and what they were based on. As such, the *Crystal Productions, Inc.* case was called into doubt by *C & E Services, Inc. v. Ashland Inc.*, 601 F.Supp.2d 262, 275 (D.D.C. 2009), where the court stated that it would not rely on the *Crystal Productions, Inc.* case as it was the only case on point, unpublished, over 15 years old, and not cited by any other opinions. Moreover, the *C & E Services, Inc.* case stated that the duty of good faith and fair dealing "must arise out of a contract between the parties," and is not a means to add new terms to the agreement, but "merely requires that the parties behave fairly and reasonably in the performance and enforcement of the contract." *Id.*

Defendant's second cited case similarly does not support Defendant's argument. In *Xereas v. Heiss*, 933 F.Supp.2d 1, 8 (D.D.C. 2013), the plaintiff's complaint alleged a breach of defendant's duty of good faith and fair dealing by fraudulently inducing plaintiff to enter into a business relationship with them and then terminating plaintiff's participation in the venture after opening the business. However, the complaint did not identify an express contractual duty which defendants allegedly breached. *Id.* Moreover, the Court stated that a claim for breach of the duty of good fair and fair dealing "must necessarily arise out of the performance or enforcement of the contract." *Id.* The court recognized that D.C. law is unsettled about whether a breach of the implied duty of good faith and fair dealing may be brought as an independent cause of action without a breach of an express contractual duty claim. *Id.*

As Defendant admits, Whole Foods has claimed Defendant breached Paragraphs 27(J), 18(A), and 30(A) of the Lease. (Opposition Memo., at 16.) Whole Foods did not bring a separate cause of action for each of Defendant's breaches, but instead brought one cause of action under the scope of Defendant's breach of the implied duty of good faith and fair dealing. Therefore, there are no duplication of claims for relief, and there is no need to resolve any unsettled law because Whole Foods' claims are based on Defendant's breaches of express provisions of the Lease. Further, Whole Foods' Motion is replete with cases upholding breach of the implied covenant of good faith and fair dealing as an acceptable cause of action. (*See* Pl. Motion, ¶ 17.) Therefore, Defendant's argument that Whole Foods will not succeed on its claims should be rejected.

## WHOLE FOODS HAS DEMONSTRATED A LIKELIHOOD OF IRREPARABLE INJURY

Defendant suggests that Whole Foods should be not only held to an almost impossible standard to prove irreparable injury, but also that Whole Foods has alleged only the mere "possibility" of an injury. Defendant's interpretation of the applicable facts is unavailing. A preliminary injunction "requires only a likelihood of irreparable injury. Damocles's sword does not have to actually fall on [plaintiff] before the court will issue an injunction." *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 9 (Dist. D.C. 2016) *(quoting Winter*, 55 U.S. at 22).

Moreover, Defendant insists that Whole Foods has not presented evidence of any irreparable injury.[5] However, the Verified Complaint states that the permit process is expected to take at least six (6) months, and without the consent of Defendant, Whole Foods is unable to begin the permitting process. (Compl. ¶¶38-40.) The Verified Complaint further states that Plaintiff has

---

[5] Again, Defendant ignores the fact that Plaintiff's Motion sought an injunction not just for Defendant's consent to Whole Foods' permit application, but also to enjoin Defendant from issuing a Notice of Termination, enforcing its Notice of Default, or seeking eviction or possession, the latter of which Defendant has already conceded. While certain portions of requested relief may no longer be before this Court because of Defendant's concessions, they are still relevant to the instant Motion.

spent approximately $1 million to date to cure the local ordinance violation, and has suffered losses each day the store is closed, including the loss of sales while continuing to make interim rent payments to Defendant, the potential loss of its more than 150 employees, harm to its goodwill and reputation in the community, the value of its future leasehold, and attorney's fees to enforce Plaintiff's rights under the Lease. (Compl. ¶¶47-49, 108-09, 118.) Essentially, Whole Foods cannot continue to pay rent on the property when it is not able to progress in the lengthy renovation due to Defendant's Notice of Default, threat of imminent forfeiture, and refusal to consent to the permit application. (Compl. ¶¶51, 88.) Rather, Defendant is using Plaintiff's position to induce Whole Foods into signing a new lease with a higher monthly rent, lower percentage threshold, and longer term. (Compl. ¶¶75, 77.) Such imminent threat is inherent in Defendant's conclusion that Plaintiff no longer had a lease even before the 60-day closure period had expired. (Compl. ¶78.) In summary, Whole Foods has demonstrated a variety of grounds for irreparable harm which are all likely to occur and/or imminently occurring each day that passes without submitting the permit application. *See Brady Campaign to Prevent Gun Violence v. Salazar*, 612 F.Supp.2d 1, 26 (Dist. D.C. 2009) (holding that "Plaintiffs have met their burden to establish a likelihood of irreparable harm, even though the precise scope of that harm may not be fully known unless and until Defendants comply with the procedural obligations by [law]").

## BALANCE OF THE EQUITIES FAVORS GRANTING OF THE PRELIMINARY INJUNCTION, AND DEFENDANT'S OPPOSITION MEMORANDUM FAILS TO ALLEGE ANY HARM

As discussed at length in the Motion, there is no prejudice to Defendant whatsoever to require Defendant to consent to the permit application. Every day that Defendant does not consent to the permit application, Whole Foods is harmed.

The most egregious aspect of Defendant's Opposition memorandum is Defendant's attempt to justify its refusal to consent to Whole Foods' permit application under the balancing of

the equities factor. Here, Defendant argues, yet again, that it is harmed because the store is "dark, vacant, and unmarketable," while invalidating any loss to Whole Foods simply because it is "one of the largest retailers in the country." (Opposition Memo., at 18.) Defendant's position simply has no basis in logic, since Defendant could simply approve the permit application to reduce the "dark" time. Moreover, Defendant has voluntarily limited the scope of this Motion to whether it must consent to Whole Foods' permit application, the overarching case is about Whole Foods' right to continue operating the store. It is Defendant's position that its lease with Whole Foods is terminated, and Whole Foods must vacate the premises. If Defendant's position was upheld, Whole Foods would be forced to surrender possession, while still being obligated to pay rent to Defendant for the remaining term of the lease. In addition, it is likely that Defendant may seek damages for the cost of restoring the presently demolished interior of the store after Whole Foods' demolition in connection with the rodent problem. Defendant would receive a huge windfall in the form of Whole Foods' more than $1 million remediation, in addition to continued rent and substantial damages to repair the building. Alternatively, Defendant may force Whole Foods to pay higher rent and agree to a longer term.  Under either of these scenarios, the store will remain closed until permits are issued (either to Whole Foods or Defendant). Thus, beginning the permitting process is a vital part of both parties moving forward.

Defendant further complains that Whole Foods should have re-opened the store within 60 days pursuant to Paragraph 18 of the lease, while ignoring Paragraph 30(A) excusing nonperformance due to delays outside Whole Foods' control. Perhaps Defendant would have preferred that Whole Foods merely "patch" the rodent problem rather than take the costly steps needed to permanently solve the problem, in order for Whole Foods to re-open within the 3 days allowed by the District.  In essence, re-opening the store within even 60 days means that Defendant

wants Whole Foods to restore the ceilings, walls, cash registers, and other fixtures which were demolished, just enough to re-open the store with minimal repairs. This ignores the fact that some of the repairs necessary to restore the store enough to open require permits, and ignores lengthy lead times on certain fixtures that would need to be replaced.  Defendant's position would then require Whole Foods to begin again the remodeling and permitting process to upgrade the store to the current standards of similar stores in the area. Such a position would not only double the time Whole Foods may need to complete the remodeling project, but would also double the cost, as Whole Foods would arguably need two sets of plans and permits, and would install new walls and fixtures and then remodel them shortly thereafter. In the meantime, Wical is entitled to receive the same rent amount it is already receiving.

The better and more fair position would be to let Whole Foods get the benefit of the work that has already been done, the money already spent, and the continued rent payments already made to Defendant. Either Whole Foods or Defendant will require permits to return the store to a state in which it can be used. Whole Foods' remodeling project will also benefit Defendant by improving the interior and fixtures of the building, adding to the value. Defendant may see increasing revenues after the remodel to the extent Whole Foods pays percentage rent. Defendant is not harmed by the store remaining dark, because the building is freestanding and Defendant has no other tenants in the building. Further, Defendant's "negative impact on marketability" argument (Ogden Decl., ¶10) is unreliable because Defendant has owned the property since 1986 and has never before expressed an interest in selling. Defendant is not harmed by allowing the permitting process to proceed. Defendant's refusal to consent continues to harm Whole Foods.

Since Defendant would not be harmed by an injunction requiring Defendant to consent to the permit application, while Whole Foods faces substantial harm in the form of lost profits, delays

in re-opening, loss of goodwill in the community, and loss of employees for every day which it is delayed in obtaining permits by Defendant's refusal, the Court should respectfully order Defendant to consent to Whole Foods' permit application. *Human Touch DC, Inc. v. Merriweather*, 2015 WL 12564166, at * (Dist. D.C. May 26, 2015) (slip copy) (granting preliminary injunction where defendant would suffer little to no harm and restraints imposed by preliminary injunction seek not to punish defendant, but rather, to immediately limit the damage resulting from her acts); *League of Women Voters of the U.S. v. Newby*, 838 F.3d at 12 (granting injunction where it would not substantially injure other interested parties).

## PUBLIC INTEREST FAVORS GRANTING PLAINTIFF'S MOTION

As discussed in Whole Foods' Motion, the public interest favors granting Plaintiff's Motion because Whole Foods stands to lose its business, its 150 employees, and goodwill.

Defendant agrees in its Opposition memorandum that the public interest favors the enforcement of contracts. This Court would serve the public interest by enforcing the Lease as interpreted by the Court, in which two separate provisions require that Defendant not unreasonably withhold its consent. (Compl. Exh A (filed under seal), ¶¶ 7(A) and 26(J).) Moreover, by Defendant's own admission of suggesting a Lease amendment, Defendant has engaged in bad faith, which public policy dictates should not be rewarded.

## WHOLE FOODS' RENT SHOULD BE ESCROWED BY THE COURT

Escrowing rent with the Court protects Defendant if it prevails, and also protects Plaintiff if it prevails. Defendant makes three invalid arguments in its attempt to prevent Whole Foods from paying its monthly rent to the Court. First, Defendant argues that Rule 67, which Defendant admits authorizes escrow as a means for "safekeeping for disputed funds pending the resolution of a legal dispute," is not applicable because Whole Foods does not seek a money judgment. (Opposition

Memo., at 20 (*quoting LTV Corp. v. Gulf States Steel, Inc. of Ala.*, 969 F.2d 1050, 1063 (D.C. Cir. 1992).) However, Counts II and III of Whole Foods' Verified Complaint allege breach of the covenant of good faith and fair dealing on the part of Defendant, seeking specific performance, injunctive relief, and/or damages as determined by this Court. In the event the Court determines that Defendant breached the Lease and/or the Lease is terminated, Whole Foods' obligation to pay rent would likely cease as of the date of Defendant's breach, which occurred before the filing of this lawsuit. As such, Whole Foods' obligation to pay rent during the pendency of this lawsuit is in dispute. Moreover, this Court may decide that Defendant owes Plaintiff damages for its breach.

Defendant's second invalid argument is to suggest that Plaintiff's only recourse is to pay rent "under protest" as authorized by Paragraph 30(B) of the Lease, suggesting that "Whole Foods can later attempt to recover the payment made under protest." (Opposition Memo., at 21.) Paragraph 30(B) contains no *requirement* to pay rent "under protest," it is merely a right that can be exercised by Whole Foods. Further, Paragraph 30(B) does not foreclose on other options, such as judicial escrow of rents, especially given the lack of reference to litigation in Paragraph 30(B). Rather, Paragraph 30(B) appears to apply to pre-litigation "disputes." Moreover, Defendant would have Whole Foods pay its monthly rent during the pendency of the lawsuit, which could take a year or more, resulting in huge sums being paid to Defendant while Whole Foods cannot operate the store due to Defendant's refusal to consent to the permit application and attempts to terminate the Lease. Since Paragraph 16(D) of the Lease limits Whole Foods ability to collect a judgment from Defendant to only Defendant's "At-Risk Investment," it is possible that Whole Foods could never recoup the full amount paid because Defendant's "At-Risk Investment" could be less than the amount of rent paid during the lawsuit. Moreover, Defendants position would require further litigation and likely another lawsuit for collection, which would not be an efficient use of judicial

resources. Rather, the most equitable solution for all parties involved would require the judicial escrow of Whole Foods' rent payments during the pendency of the litigation, with the Court directing the disposition of such sums at the conclusion of the case.

Finally, Defendant's third invalid argument is that escrowing rent with the Court is "effectively the same as withholding rent." (Opposition Memo., at 22.) Such a position is unfounded. Judicial escrow would require Whole Foods to disburse its monthly rent payment to the Court, reducing cash available to Whole Foods for other expenses (especially given that the store is not generating any revenues while closed). However, rather than being held by Defendant, who may distribute the funds to its owners making it difficult or impossible to recover the payments in the future, the rent would be held by the Court, until such time as the Court determines the parties' entitlement to the disputed rent payments.

### WHOLE FOODS IS NOT OBLIGATED TO PAY DEFENDANT'S ATTORNEY'S FEES

Defendant incorrectly argues that Paragraph 18(C) of the Lease authorizes this Court to award attorney's fees if the Court denies Whole Foods' motion. Such an interpretation of Paragraph 18(C) is strained and contrary to the plain language of the provision. Paragraph 18(C) logically applies, if at all, to the ultimate resolution of any lawsuit filed in connection with enforcing either party's rights and remedies under the Lease against the other. It does not apply to a single motion or any other subpart of this litigation.

Furthermore, Defendant has already agreed to a status quo order granting a substantial part of Whole Foods' requested relief under this Motion. In the Agreed Order proposed as ECF No. 13, Defendant agreed not to terminate the Lease or institute an eviction proceeding seeking possession until this case is resolved by the Court. By Defendant's logic, Plaintiff is entitled to its attorney's fees in connection with this Motion filed to enforce Whole Foods' rights under the Lease.

<u>CONCLUSION</u>

For the reasons discussed above, as well as in Whole Foods' original Motion for Temporary Restraining Order and Preliminary Injunction, and for Judicial Escrow of Rents, Whole Foods respectfully requests that this Court enter an order:

1. Enjoining Defendant from withholding its consent to the permit application under Paragraph 27(J) of the Lease;

2. Ordering the Clerk of the U.S. District Court for the District of Columbia to accept Plaintiff's rental payments in escrow and ordering Plaintiff to deposit its monthly rent with the Clerk until further order of the Court; and

3. Such other and further relief as this Court deems just and appropriate.


Date: July 11, 2017                                    Respectfully submitted,

                                                       WHOLE FOODS MARKET GROUP, INC.

                                       By:     */s/ Brian P. Waagner*_____
                                               One of its attorneys

Brian P. Waagner (D.C. Bar No. 450823)
Husch Blackwell LLP
750 17th Street, NW, Suite 900
Washington, D.C. 20006
Phone: (202) 378-2355
Brian.Waagner@HuschBlackwell.com
*Counsel for the Plaintiff*

Of Counsel:
Norman B. Berger
Sandra D. Mertens
Gensburg, Calandriello & Kanter, P.C.
200 West Adams Street, Suite 2425
Chicago, Illinois 60606
Phone: (312) 263-2200
NBerger@gcklegal.com
SMertens@gcklegal.com
*Pro Hac Vice*
*Counsel for the Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that, on July 11, 2017, the foregoing *Plaintiff Whole Foods' Reply Memorandum in Support of its Emergency Motion for Entry of Temporary Restraining Order and Preliminary Injunction, and for Judicial Escrow of Plaintiff's Rents*, was filed electronically in the Electronic Case Filing system and service accomplished pursuant to ECF to counsel of record.

/s/ Brian P. Waagner
Brian P. Waagner