UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

**FILED**
JAN 2 4 2018
Clerk, U.S. District and
Bankruptcy Courts

WHOLE FOODS MARKET GROUP, INC.,

    Plaintiff,

v.

WICAL LIMITED PARTNERSHIP,

    Defendant.

Case No: 17-cv-01079-RCL

## MEMORANDUM OPINION

### I. INTRODUCTION

This breach of contract case was brought by plaintiff Whole Foods Market Group, Inc. ("Whole Foods") against its commercial landlord, defendant Wical Limited Partnership ("Wical"). Whole Foods's Amended Complaint, ECF No. 21, seeks relief on four separate counts. Before the Court is Wical's motion to dismiss all four counts. ECF No. 26. Upon consideration of Wical's motion, the opposition thereto, the reply brief, the applicable law, and the entire record herein, the Court will **DENY** in part and **GRANT** in part Wical's Motion to Dismiss.

### II. BACKGROUND

For purposes of this Motion to Dismiss the Court will provide (1) the relevant terms of the lease between plaintiff Whole Foods and defendant Wical and (2) a statement of Whole Foods's well pleaded facts. This is appropriate because this is a motion to dismiss and the Court must view all well pleaded facts in the complaint (and any incorporated documents) as true and in the light most favorable to Whole Foods.

1

A.  **Relevant Provisions from Whole Foods Lease with Wical[1]**

Paragraph 4(F)—Conduct of Business:

> "Tenant shall continuously conduct its business at the Demised Premises in accordance with the same standards of operation and in the same quality as it presently operates its other similar stores, subject to the other terms and provisions of this Lease. Tenant shall not cause injury or waste to the Demised Premises, reasonable wear and tear excepted. Tenant shall keep the Demised Premises and all areas appurtenant thereto (including without limitation the parking garage, loading dock and service areas) clean and free from pests, insects, rubbish, trash and garbage, and, at its own expense, arrange for removal of same."

Paragraph 4(G)—Renovation

> "The Demised Premises may occasionally require rehabilitation, modernization or improvement. Tenant may, from time to time, close the Demised Premises to the public for such periods as may be reasonably required in order to diligently modernize or improve same, but in no event shall such closures exceed sixty (60) days in the aggregate during any three (3) year period elapsing during the Lease Term."

Paragraph 5(A)—Non-Structural Repairs and Maintenance

> "[T]he tenant shall ... make all necessary structural and non-structural repairs ... and perform all maintenance ... in a good and workable manner in accordance with all applicable governmental requirements."

Paragraph 7(A)—Alterations

> "Tenant shall not make any exterior or structural alterations, installations, changes, replacements, additions, or improvements ... without Landlord's prior written consent. All other alterations, installations, changes, replacements, additions or improvements in or to the Demised Premises or any part thereof, which are not structural or exterior, may be made by Tenant, provided that Tenant has complied with its obligation (if any) to deliver to Landlord the plans or working drawings for same as below provided in this Article 7(A). The consent of Landlord under this paragraph shall not be unreasonably withheld,

---

[1] Whole Foods filed the lease under seal. *See* ECF No. 3. However, this Memorandum Opinion only includes language from lease provisions already cited by the parties in their motions, which have not been filed under seal.

2

but may be conditioned upon such reasonable terms as landlord may reasonably determine appropriate, in order to assure the lien free completion of same. Tenant agrees to provide Landlord with the name of any proposed contractors of Tenant, certificates of liability insurance maintained by such contractors in reasonable amounts reasonably acceptable to Landlord and copies of all plans for any improvements to be made by Tenant at the time request for Landlord's approval is made by tenant . . . Tenant may make interior non-structural alterations, installations, changes, replacements, additions or improvements to the Demised Premises without Landlord's prior written consent, but Tenant shall provide Landlord with plans or working drawings prior to commencement of any non-structural alterations, installations, changes, replacements, additions or improvements to the Demised Premises . . . ."

Paragraph 18(A)—Events of Default

"The aforesaid reference to fifteen (15) business days in the case of a non-monetary default shall be extended to include such additional time (not in excess of sixty (60) days) reasonably required in order to permit Tenant to fully cure any such non-monetary default hereunder, provided Tenant is diligently prosecuting its cure, with the understanding that no such additional time shall pertain to any default by Tenant of its obligation to continuously operate its business operations within the Demised premises and further that the aforesaid limitation to sixty days shall not apply in the case of a structural repair or replacement required of Tenant hereunder so long as Tenant is diligently and in good faith prosecuting such structural repair or replacement to completion."

Paragraph 21—Quiet Enjoyment

"[I]f the covenants and agreements on the part of Tenant shall be kept, performed and observed by Tenant as in this Lease provided, Tenant shall have the quiet, peaceable and uninterrupted possession and enjoyment of the Demised Premises, subject to the terms and provisions contained herein."

Paragraph 27(J)—Reasonable Consent

"Whenever it is necessary under the terms of this Lease for either party to obtain the consent or approval of the other party, such consent or approval shall not be unreasonably withheld or delayed."

Paragraph 30(A)—Excuse for Nonperformance

"If either party hereto shall be delayed or prevented from the performance of any act required hereunder (other than the payment of monies) by reason of acts of God, strikes, lockouts, labor troubles, plan approval delay, inability to procure materials, restrictive governmental laws or regulations, adverse weather, unusual delay in transportation, delay by the other party hereto or other cause without fault and beyond the control of the party obligated to perform (financial inability excepted), then upon notice to the other party, the performance of such act shall be excused for the period of the delay and the period of performance of such act shall be extended for a period equal to the period of such delay; provided, however, the party so delayed or prevented from performing shall exercise good faith efforts to remedy any such cause of delay or cause preventing performance, and nothing in this paragraph shall excuse Tenant from the prompt payment of any rental or other charges required of Tenant except as may be expressly provided elsewhere in this Lease."

### B. Whole Foods's Well Pleaded Facts

The lease agreement between Whole Foods and Wical runs through January 31, 2021. The agreement provides Whole Foods tenancy of the property at 2321 Wisconsin Avenue, NW, Washington D.C. 20007, at which it operates its Georgetown store. Under the contract, Whole Foods has the option to renew the lease for three additional terms of five years. Whole Foods has consistently paid the rent and from 1996 until 2017 it never closed the store.

In 2017, the District of Columbia issued two separate ordinance violations to Whole Foods related to rodent problems at its store. Both times, Whole Foods was required to close the store. After the second violation notice—issued on March 13, 2017—Whole Foods sought a "complete and lasting resolution" to the problem. Amended Complaint, ECF No. 21 at ¶37. Whole Foods consulted numerous contractors in order to understand the extent of the rodent problem and the proper corrective action needed to solve it. Whole Foods determined that curing the problem required that "the Georgetown Store must be closed, emptied of much of its inventory and fixtures, and gutted, including the removal of drywall and ceiling tiles, and a thorough cleaning of the premises." *Id.* at ¶38. Only after demolition was Whole Foods able to understand the extent of

4

the problem and the necessary remedial measures. The Georgetown store has been closed for business since demolition began in March 2017.

In late March, representatives from Whole Foods and Wical met to discuss the situation. Whole Foods followed up with a letter on April 5, 2017, informing Wical that the rodent issue had been resolved following demolition and that the interior of the store required a substantial rebuild. Whole Foods further provided Wical notice, pursuant to Paragraph 30(A) of the lease, that the store would remain closed "well beyond the 60 days anticipated in [the] lease." ECF No. 21-2. Whole Foods continued, "We do not yet have a final timetable for the drawing, permitting, reconstruction and reopening of the store, but will keep you updated as our progress advances. As you know, permitting alone will take about 4 months." *Id.*

Since Whole Foods had to rebuild the interior of the store as a result of the rodent problem, it determined that it made sense to remodel the store in order to bring it up to the same standards of similar stores in the area. Whole Foods planned the following improvements: "modernizing the store's layout; replacing existing food display cases; replacing the salad bar; replacing the millwork, cabinetry, register stands, walls, and ceilings which were demolished in curing the ordinance violation; overhauling the elevator and conveyor system; and adding new food presentations which requires the movement of certain major systems such as plumbing and HVAC." Amended Complaint, ECF No. 21 at ¶50. In order to receive the permit to commence this project, the District of Columbia requires Whole Foods to obtain the property owner's approval. Whole Foods reached out to Wical for such approval on May 23, 2017. On May 26, 2017, Wical refused its consent. Construction plans were completed on approximately May 26, 2017. If they receive the necessary approvals, Whole Foods believes that it should take six months

to rebuild the interior of the store. To date, Whole Foods has spent approximately $1 million on this project.

In addition to refusing to consent to the rebuild of the stores interior, on May 15, 2017, Wical sent Whole Foods a Notice of Default, instructing Whole Foods that they had fifteen days to reopen for business to avoid default, at which time Wical could terminate the lease. Whole Foods believes this was a ploy to raise its rent. Whole Foods followed up with its own Notice of Default sent to Wical on July 14, 2017—eight days after Whole Foods delivered a complete copy of its rebuild plans to Wical. In its Notice of Default, Whole Foods alleged that Wical's refusal to consent to the proposed renovation work constituted a breach of contract. On August 4, 2017, Whole Foods filed suit before this Court.

## III. LEGAL STANDARD

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When considering a motion to dismiss under Rule 12(b)(6), "the court must assume 'all the allegations in the complaint are true (even if doubtful in fact),' and the court must give the plaintiff 'the benefit of all reasonable inferences derived from the facts alleged.'" *Aktieselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) (internal citations omitted).

A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While the factual allegations in the complaint need not be "detailed," the Federal Rules require more than "an unadorned, the-defendant-

unlawfully-harmed-me accusation." *Id.* (citing *Twombly*, 550 U.S. at 555). "In determining whether a complaint states a claim, the court may consider the facts alleged in the complaint, documents attached thereto or incorporated therein, and matters of which it may take judicial notice." *Stewart v. Nat'l Educ. Ass'n*, 471 F.3d 169, 173 (D.C. Cir. 2006).

IV. **DISCUSSION**

   A. **Count I: Declaratory Judgement**

The first count of Whole Foods's Amended Complaint boils down to a request that the Court declare (1) that Whole Foods did not breach the lease by remaining closed for more than 60 days and (2) that Wical's Notice of Default was invalid. In addressing this count, the Court must focus on the parties' lease agreement. Courts "analyze leases of real property according to established principles of contract law." *Abdelrhman v. Ackerman*, 76 A.3d 883, 887 (D.C. 2013) (citation omitted). Under the Declaratory Judgment Act, "'[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not such further relief is or could be controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (quoting *Maryland Casualty Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). To survive a motion to dismiss, a declaratory judgment plaintiff must only show that there is "an actual or imminent injury caused by the defendant that can be redressed by judicial relief and that is of 'sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Epos Technology Ltd. v. Pegasus Technologies Ltd.*, 636 F.Supp.2d 57, 61 (D.D.C. 2009) (quoting *Teva Pharm. USA, Inc. v. Novartis Pharm. Corp.*, 482 F.3d 1330, 1338 (Fed. Cir. 2007).

Wical contends that the plain terms of the lease require dismissal of this count. Paragraph 4(G) of the lease provides that Whole Foods "close the [store] to the public for such periods as may be reasonably required in order to diligently modernize or improve same, but in no event shall such closures exceed sixty (60) days in the aggregate during any three (3) year period elapsing during the Lease Term." Whole Foods itself admits that it has been closed since March 2017, well beyond the 60 days allowed u the lease. Thus, according to Wical, Whole Foods breached the lease.

In response, Whole Foods incorrectly posits that their actions are excused pursuant to Paragraph 4(F) of the lease. Under Paragraph 4(F), Whole Foods must "continuously conduct its business at the [store] in accordance with the same standards of operation and in the same quality as it presently operates its other similar stores" and the store must be kept "clean and free from pests...." However, the paragraph also notes that those obligations are "subject to the other terms and provisions of this Lease." Thus, Paragraph 4(F) does not provide Whole Foods justification to remain closed longer than 60 days. Whole Foods's obligation to modernize the store and keep it "clean and free of pests"—pursuant to Paragraph 4(F)—must be accomplished in accordance with Paragraph 4(G), which explicitly disallows the store from remaining closed for more than 60 days. Paragraph 18(A) also does not provide Whole Foods cover for the delay in opening. While the paragraph does speak to an extended cure period, it explicitly defines the period to be "not in excess of sixty (60) days" and that the period cannot be extended if Whole Foods fails in "its obligation to continuously operate its business operations."

However, the lease's *force majeure* clause—Paragraph 30(A)—does justify closure beyond 60 days. The paragraph provides that Whole Foods is excused from the performance of a required act ("other than the payment of monies") due to "acts of God, strikes, lockouts, labor

8

troubles, **plan approval delay**, inability to procure materials, restrictive governmental laws or regulations, adverse weather, unusual delay in transportation, delay by the other party hereto **or other cause without fault and beyond the control of the party obligated to perform.**"

As an initial matter, this clause is certainly meant to apply to the obligation re-open the business within 60 days. The lease specifically calls out that "payment of monies" are not excused. If the parties intended to preclude excusal of the 60-day requirement, it could have also been explicitly called out in the lease. The Court must therefore assess whether the well pleaded facts provide grounds for excuse under this paragraph.

Whole Foods sufficiently pleads that the initial closure of the store was beyond their control. They had in place a pest control program dating back to April 2, 2014. Despite that program, the rodent issue persisted and Whole Foods received two notices of violation from the District of Columbia, requiring immediate closure of the store. Upon receiving their second notice, Whole Foods engaged multiple contractors who advised that one of the causes of the problem was "inferior building construction." Amended Complaint, ECF No. 21 at ¶ 50. In order to understand the extent of the problem and ultimately solve it, the store had to be "be closed, emptied of much of its inventory and fixtures, and gutted, including the removal of drywall and ceiling tiles, and a thorough cleaning of the premises." *Id.* at ¶ 38. Whole Foods promptly followed that advice and began demolition on the interior of the store. The Court finds, based on the well pleaded facts, that Whole Foods was forced to close and gut the interior of the store due to a cause "beyond [their] control"—a rodent problem.

The Court also finds that ongoing delay in re-opening is excused under the contract. Paragraph 30(A) explicitly excuses performance due to "plan approval delay." Rebuilding the interior of the store required that Whole Foods obtain permits from the District of Columbia. And

as Whole Foods pleaded, "the District of Columbia may not approve the plans and issue permits for months or more due to a backlog in permitting requests"—a process that is beyond its control and excused under Paragraph 30(A). *Id.* at ¶ 53.

Moreover, D.C. requires that the property owner consent to plans before the permitting process can begin. Whole Foods alleges that Wical's refusal to consent also constituted excusable delay. Wical responds that [1] Whole Foods did not ask for their consent until May 23, 2017, [2] only provided them with the construction plans on July 6, 2017, and [3] failed to provide them with "the *complete* set of papers required under Paragraph 7(A), namely the plans along with required certificates of liability insurance and proposed contractors." ECF No. 26-1 at 5-6. As to Wical's first two contentions, Whole Foods pleaded that it "immediately engaged an architect to draw up plans incorporating the repairs and improvements and approved expedited services from all vendors relating to the remodeling project" and that "[o]nce the architect's plans were substantially completed, they were submitted to the general contractor to draw up construction plans necessary to obtain permits." The well pleaded facts indicate that Whole Foods diligently pursued plans and that was not the cause of any ongoing delays.

Next the Court turns to Wical's third contention—that Whole Foods failed to provide them with the complete set papers required under Paragraph 7(A). Paragraph 7(A) provides that Whole Foods must obtain Wical's consent before making any "structural alterations" to the premises. In seeking consent, Whole Foods must "provide [Wical] with the name of any proposed contractors of Tenant, certificates of liability insurance maintained by such contractors in reasonable amounts reasonably acceptable to Landlord and copies of all plans for any improvements to be made by Tenant at the time request for Landlord's approval is made by tenant." But Whole Foods need

only provide Wical with the "complete set of papers" to get approval for *structural* changes. The complete set of papers is not needed to get Wical's approval for *non-structural* changes.

In its Amended Complaint, Whole Foods asserts that it is making the following alterations: "modernizing the store's layout; replacing existing food display cases; replacing the salad bar; replacing the millwork, cabinetry, register stands, walls, and ceilings which were demolished in curing the ordinance violation; overhauling the elevator and conveyor system; and adding new food presentations which requires the movement of certain major systems such as plumbing and HVAC." Amended Complaint, ECF No. 21 at ¶50. While these are not minor alterations, that does not make them structural. The parties have not pointed to a definition of "structural" in the lease, nor has the Court found one on its own. So the Court must turn to other sources. Black's Law Dictionary defines structural alteration as a "significant change to a building or other structure, *essentially creating a different building or structure.*" Structural Alteration, BLACK'S LAW DICTIONARY (10th ed. 2014) (emphasis added). Other courts have taken a similar approach, drawing a distinction between major alterations and alternations that are structural. *See, e.g., Aetna Cas. & Sur. Co. v. Ocean Acc. & Guarantee Corp.*, 386 F.2d 413, 415 (3d Cir. 1967) ("Without attempting to give an all-inclusive definition of the term, it is our judgment that the replacement of a cooling system, although perhaps a major undertaking, is not a structural alteration within the accepted meaning of that term."). It is the Court's judgement that the alterations contemplated by Whole Foods will not essentially create a different structure. There is no evidence to suggest that Whole Foods is planning on removing load-bearing walls or repurposing the premises for an entirely different function. Rather, moving around the HVAC and plumbing system, upgrading equipment, and replacing drywall and ceiling tiles that were demolished, will result in a structure that will still look like and function as a grocery store.

Wical argues that the Court must consider that the architectural plans provided to them by Whole Foods in July, and which were attached to Whole Foods's Amended Complaint, include a category of changes that are described by the architectural firm as "structural." ECF No. 21-3 at 11. The Court takes this argument seriously. It is certainly relevant that the architect describes the alterations as "structural." However, the Court does not agree with Wical that it is dispositive of the issue. The Court has no way of knowing whether the architect had seen the contract or intended to use the word "structural" in the same way the parties construed the term in their lease agreement. It is entirely plausible that the architect thought about the term in a different way. Therefore, at this stage of the proceeding, when viewing the facts in the light most favorable to Whole Foods, the Court finds the proposed changes to be non-structural. As such, the fact that Whole Foods did not provide the complete set of papers to Wical in seeking consent cannot be seen as a reason for delay in re-opening of the business, since Whole Foods was not required to provide them under the lease agreement.

In sum, the two major reasons for the store remaining closed—the rodent problem and the delay in acquiring permits to rebuild—were beyond Whole Foods's control. Whole Foods is therefore excused, under Paragraph 30(A), from ensuring that the store does not remain closed beyond 60 days. Accordingly, Whole Foods's count seeking declaratory judgment that it did not breach the lease and that Wical's Notice of Default was invalid will not be dismissed. At this stage, the Court does not need to weigh in on each specific request that Whole Foods wants this Court to declare, *see* Amended Complaint, ECF No. 21 at 22-23, except to say that Whole Foods has pleaded sufficient facts to survive a motion to dismiss on this count.

**B.    Count II: Damages for a Breach of the Covenant of Good Faith and Fair Dealing**

As to Count II, Whole Foods seeks damages due to Wical's breach of the implied covenant of good faith and fair dealing. Whole Foods alleges that Wical breached its duty by issuing a notice of default which "is contrary to the spirit of the Lease" and destroys their ability to receive the fruits of the contract. Amended Complaint, ECF No. 21 at ¶127.

Wical first maintains that the Court must dismiss this claim since Whole Foods's "allegations in support of its implied covenant claim are based on a breach of express provisions of the Lease—which is the entire premise of Whole Foods' declaratory judgment claim." ECF No. 26-1 at 14. Wical notes that under D.C. law "a party may not bring a claim for breach of the implied covenant of good faith and fair dealing when it is identical to other claims for relief under an established cause of action, such as a breach of contract claim." *Id.* at 13-14 (citing *Washington Metro. Area Transit Auth. v. Quik Serve Foods, Inc.*, 2006 WL 1147933, at *5 (D.D.C. Apr. 28, 2006). However, it is also the case that "[p]laintiffs are not required at the pleadings stage to choose between alternative remedies." *Jacobson v. Hofgard*, 168 F.Supp.3d 187, 208 (D.D.C. 2016) (citing *Parr v. Ebrahimian*, 774 F. Supp. 2d 234, 240 (D.D.C. 2011). Here, Wical contends that Count II mirrors the contract claim in Count I. In Count I, however, Whole Foods seeks a declaratory judgement. In Count II, Whole Foods seeks damages. Since the remedies are different, the Court will not dismiss the claim on the grounds that it mirrors the claim in Count I.

Wical further argues that even if the claim stands alone, it should be dismissed because Wical acted within its rights under the contract by issuing a notice of default. According to Wical, Whole Foods breached the express terms of the lease by remaining closed for longer than 60 days. Therefore, Wical was within its contract rights to issue a notice of default. As Wical puts it, "a breach of the implied covenant cannot stand when a defendant ... acts in accordance with the terms of the contract." ECF No. 31 at 9. "It is axiomatic that '[t]he implied covenant of good faith and

fair dealing cannot contradict, modify, negate, or override the express terms of a contract.'" *Billups v. Lab. Corp. of Am.*, 2017 WL 435723, at *5 (D.D.C. Jan. 30, 2017) (quoting 17A C.J.S. *Contracts* §437 (2016)).

This argument is belied by the fact that, as the Court just held, Whole Foods did not breach the contract. Whole Foods's failure to re-open the store within 60 days was excused under Paragraph 30(A) of the lease. Therefore, Wical was not within its rights to issue a notice of default. Under D.C. law, "[t]o state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious." *Kumar v. George Washington Univ.*, 174 F.Supp.3d 172, 189-90 (D.D.C. 2016) (quoting *Wright v. Howard Univ.*, 60 A.3d 749, 754 (D.C. 2013)). At this stage of the proceeding, Whole Foods has pleaded sufficient facts to meet that burden. Despite not having breached the contract, Wical sent Whole Foods a notice of default, which Whole Foods alleges was done for the purpose of getting out of the lease and raising the rent. Since Whole Foods met its pleading burden, the Court will DENY Wical's motion to dismiss this count.

### C. Count III: Specific Performance and Injunctive Relief for a Breach of the Covenant of Good Faith and Fair Dealing

Next, Whole Foods requests that the Court grant injunctive relief and specific performance due to Wical's breach of the implied covenant of good faith and fair dealing. Whole Foods appears to be seeking two forms of specific performance: (1) that the Court require Wical to extend the cure period and excuse closure under Paragraph 30(A) of the lease and (2) that the Court require Wical "to consent to the permit application under Paragraph 27(J) of the Lease." Amended Complaint, ECF No. 21 at ¶ 143. As to injunctive relief, Whole Food requests that the Court enjoin Wical "from taking any steps to terminate the Lease, repossess the Georgetown Store, evict Plaintiff, or pursue forfeiture." *Id.*

14

Wical first argues that this count should be dismissed because "Whole Foods cannot state a claim for breach of the implied covenant in this case." ECF No. 26-1 at 15. This argument fails for the reasons discussed above—Whole Foods met its burden on that claim. Turning to the appropriateness of the remedy, Wical avers that "specific performance cannot be awarded where there is no clear right to the relief a plaintiff requests under the Lease—here, among other things, forcing Wical to sign off on permits which would materially alter the premises and keep the Store closed for far longer than 60 days." *Id.* (citing *Clark v. Route*, 951 A.2d 757, 761 (D.C. 2008) ("[T]o sustain the right to specific performance of their contract, the purchasers must show that they have performed or have offered to perform all of the obligations required of them by the contract."). This argument is unavailing as it relates to Whole Foods's first request for specific performance, but it effectively explains why the Court must dismiss Whole Foods's second request for specific performance.

As the Court has explained, Whole Foods pleaded sufficient facts to prove that it did not breach the contract for failing to re-open the store within 60 days, given that it was excused under Paragraph 30(A). Therefore, it has the right to specific performance on this issue—the Court can require Wical excuse the store closure. *See City Stores Co. v. Ammerman*, 266 F. Supp. 766, 776 (D.D.C. 1967) (finding that specific performance is an appropriate remedy for claims related to "[c]ontracts involving interests in land...").

Whole Foods also asks the Court to require Wical consent to the permit application pursuant to Paragraph 27(J) of the lease, arguing that Wical is unreasonably withholding its consent. But Paragraph 27(J) only applies "[w]henever it is necessary under the terms of this Lease for either party to obtain the consent or approval of the other party." The only disputed term of the lease that contains a requirement "for either party to obtain the consent or approval of the

15

other party" is Paragraph 7(A). Paragraph 7(A) of the lease makes clear that structural changes to the building require landlord consent; but non-structural changes do not require landlord consent. ("Tenant may make interior non-structural alterations, installations, changes, replacements, additions or improvements to the Demised Premises without Landlord's prior written consent..."). The Court has already explained why Whole Foods's proposed alterations are non-structural in nature (at least when viewed in the light most favorable to Whole Foods). Therefore, Wical's consent *is not required* under the lease.[2] Since Paragraph 27(J) only applies when consent *is required* under the lease, it does not apply to this situation. Accordingly, Whole Foods does not have a legal right to consent under the terms of Paragraph 27(J).[3]

Turning to Whole Foods's request for injunctive relief, Wical contends that Whole Foods fails to establish it will suffer irreparable harm absent an injunction. See *American Civil Liberties Union v. Mineta*, 319 F. Supp. 2d 69, 87 *(D.D.C. 2004)* ("In determining whether to enter a permanent injunction, the Court considers a modified iteration of the factors it utilizes in assessing preliminary injunctions: (1) success on the merits, (2) whether the plaintiffs will suffer irreparable injury absent an injunction, (3) whether, balancing the hardships, there is harm to defendants or other interested parties, and (4) whether the public interest favors granting the injunction."). Whole Foods is correct that economic harm is only irreparable when it "is so severe as to cause extreme hardship to the business or threaten its very existence." *Hill Dermaceuticals, Inc. v. U.S. Food & Drug Admin.*, 826 F. Supp. 2d 252, 261 (D.D.C. 2011). But as Whole Foods points out,

---

[2] Wical's consent may be necessary under D.C. law, but that is very different from being required under the lease.

[3] While Wical's denial of consent may not be required under Paragraph 27(J) of the lease, it may constitute a violation of the covenant of quiet enjoyment. But the Court will address that issue later in this opinion.

it alleges more than just economic harm in this case. Whole Foods alleges "harm to its goodwill and reputation in the community, its employees, and the value of the existing property rights and future leasehold." ECF No. 29 at 24. The Court finds that those injuries sufficiently allege irreparable harm. For instance, if Wical attempts to break the lease based on the notice of default and Whole Foods is forced to move out of the store, it can suffer harm to its reputation in the community—harm that cannot be reversed. Moreover, D.C. courts have held that a tenant's right to possession of a property is irreparable, given that property "tends to have unique characteristics." *See, e.g., Simpson v. Lee*, 499 A.2d 889, 896 (D.C. 1985).

The Court also finds that Whole Foods has pleaded sufficient facts to meet the other three factors of the permanent injunction test. For the reasons already discussed by the Court, Whole Foods adequately pleaded success on the merits of its breach-of-the-covenant-of-good-faith-and-fair-dealing claim. Wical does not contest the last two factors—balancing of the hardships and public policy—and the Court finds that Whole Foods adequately pleaded them. Without an injunction, Whole Foods stands to lose its ability to lease the property and operate its store, while Wical will merely be required to abide by the contract. Finally, public interest favors the enforcement of contracts if a party has not breached. In this case, Whole Foods pleaded facts sufficient to support that they have not breached the lease. Thus, it is in the public interest for Wical to be enjoined from breaking the lease.

In sum, the Court will DENY Wical's motion to dismiss Count III, except as it relates to Whole Foods's request that Wical be required to consent to the permit application under Paragraph 27(J) of the lease.

### D. Count IV: Declaratory Relief & Damages for a Breach of Contract Claim under Paragraphs 18(A), 21, and 27(J) of the Lease

As Wical neatly summarizes, in Count IV "Whole Foods seeks a declaration that Wical breached the Lease by: (1) withholding consent for the permit applications (Am. Compl. ¶¶147-48); (2) failing to recognize Whole Foods' right to excuse any delays for causes outside Whole Foods' control (Am. Compl. ¶ 149); and (3) interrupting Whole Foods' possession and quiet enjoyment of the Store by refusing to consent to the permits and threatening forfeiture of the Lease. Am. Compl. ¶¶ 151-52." ECF No. 26-1 at 16. As a result of Wical's breach, Whole Foods alleges it can terminate the lease and seek damages. The Court has already addressed the first two reasons. Wical did not breach the lease by withholding consent for the permit applications pursuant to Paragraph 27(J) of the lease. The proposed alterations are non-structural and Wical's consent is not required under the contract. Wical did breach the lease, however, by failing to recognize that Whole Foods was excused from its obligation to re-open within 60 days.

Whole Foods's only new argument here is that Wical breached Paragraph 21 of the Lease by "interrupt[ing] Whole Foods' possession and enjoyment of the [Store]." Amended Complaint, ECF No.26-1 at ¶ 151. Whole Foods alleges that "[b]y refusing to consent to Whole Foods' permit application and threatening forfeiture of the Lease, Defendant has made it impossible for Whole Foods to exercise its rights of possession and enjoyment of the Georgetown Store. Whole Foods is unable to obtain permits, begin construction, or re-open." *Id.* at ¶ 152. Wical points out that quiet enjoyment can only be violated under the contract "if the covenants and agreements on the part of Tenant shall be kept, performed and observed by Tenant as in this Lease provided ..." And that Whole Foods violated their obligations under the contract by (1) failing to re-open within 60 days; (2) by failing to operate the store at the same standard and quality of similar stores, and (3) by delivering the architectural plans late and in an incomplete manner.

18

The Court has already addressed why Whole Foods did not breach the contract based on reasons one and three. Turning to the second reason, Whole Foods submitted plans to Wical for consent that were designed to raise the quality of the store. Wical refused to consent to those plans. Wical says that it did not breach the covenant of quiet enjoyment by refusing to consent to those plans because Whole Foods did not uphold its end of the bargain—to operate the store at a higher standard. That argument strikes the Court as disingenuous.

Courts set a high bar for finding a breach of the covenant of quiet enjoyment—there is no breach of the covenant "unless there is an eviction from, or some actual disturbance in, the possession by the landlord or by some third person under paramount title." *Hyde v. Brandler*, 118 A.2d 398, 400 (D.C.1955). While Wical did not change the locks on the property, its refusal to consent to the architectural plans has disturbed Whole Foods's possession. Without Wical's approval, Whole Foods is unable to apply for a permit to rebuild the interior of the store. Without a permit, Whole Foods is unable to open and operate its store. Yet Whole Foods continues to pay rent. The Court acknowledges that it cannot be that Wical must provide consent to any plans that Whole Foods puts in front of them. But there is no evidence in this case that Wical engaged with the plans and discussed with Whole Foods to what, if any, repairs and renovations Wical would consent. Rather, Whole Foods pleaded that Wical "failed to respond to [its] July 5, 2017 letter [with the attached architectural plans] in any manner." ECF No. 21 at ¶56. Accordingly, the Court finds that Whole Foods has pleaded sufficient facts to adequately support a breach of the covenant of quiet enjoyment.

Next, the Court will turn to the issue of whether Whole Foods can terminate the lease and vacate the premises as a result of Wical's breach. The lease itself is clear as to when the parties can terminate the lease: in the event of a bankruptcy (Section 17 of the lease) or in the event that

Whole Foods defaults (Section 18 of the lease). Whole Foods does not point to, nor has the Court found, a provision of the lease permitting them to terminate the lease upon Wical's breach of the contract. Rather, Whole Foods relies on a theory of constructive eviction to warrant termination of the lease. *See* ECF No. 29 ("Since Defendant's breaches threaten Whole Foods' ability to regain possession and continue operating, Whole Foods requested that this Court declare that Whole Foods is entitled, at its option, to terminate the lease.") "Constructive eviction, like actual eviction, is a violation of the covenant of quiet enjoyment implied in leases." *Bown v. Hamilton*, 601 A.2d 1074, 1077-78 (D.C. 1992). Since Whole Foods adequately states a claim for quiet enjoyment, it also states a claim for constructive eviction and survives a motion to dismiss on this issue.

In sum, the Court will DENY Wical's motion to dismiss Count IV, except as it relates to Whole Foods's request that the Court declare Wical in breach Paragraph 27(J) of the lease.

## V. CONCLUSION

For the foregoing reasons, the Court will grant in part and deny in part Wical's motion to dismiss. The Court will **DENY** the motion with respect to: (1) Counts I and II of Whole Foods's Amended Complaint; (2) Count III (except as it relates to Whole Foods's request that Wical be required to consent to the permit application under Paragraph 27(J) of the lease, on which the Court will **GRANT** dismissal); and (3) Count IV (except as it relates to Whole Foods's request that the Court declare Wical in breach of Paragraph 27(J) of the lease, on which the Court will **GRANT** dismissal). A separate Order accompanies this Memorandum Opinion.

Date: January 22, 2018

Royce C. Lamberth
United States District Judge