IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WHOLE FOODS MARKET GROUP, INC.<br><br>    Plaintiff,<br><br>    v.<br><br>WICAL LIMITED PARTNERSHIP<br><br>    Defendant. | Case No. 1:17-cv-01079-RCL |

**DEFENDANT WICAL LIMITED PARTNERSHIP'S
SUPPLEMENT TO PARTIES' RULE 26(F) STATEMENT**

Wical Limited Partnership ("Wical"), submits this supplement to the Parties' Fed. R. Civ. P. 26(f) and LCv-R 16.3 statement to clarify the record about two important issues that may affect discovery: 1) Whole Foods' misrepresentations about whether it plans to make structural changes to the premises; and 2) Whole Foods' misuse of this Court's Memorandum Opinion denying Wical's Rule 12(b)(6) motion to dismiss.

    1.    Plaintiff Whole Foods Market Group, Inc. ("Whole Foods") has been operating its Wisconsin Avenue store (the "Store") under a commercial lease agreement with its landlord, Wical (the "Lease") since 1996. Dkt. 21 (Am. Compl.) ¶¶ 2, 15. The Lease does not allow Whole Foods to make any structural alterations without Wical's consent. *Id.* ¶ 7(A).

    2.    It is undisputed that, despite the fact that Wical owns the property, Whole Foods gutted and demolished the entire interior of the Store without delivering any plans to Wical and without obtaining any permits from the District of Columbia.[1]

---

[1]     *See* Dkt. 17 (attaching Stop Work Order dated May 21, 2017 due to "working with no permits (interior demolition)").

1

3. On July 6, 2017, Whole Foods first delivered plans and drawings to Wical. Am. Compl. ¶ 55. Even then, the drawings (dated May 26, 2017) were incomplete. Although the table of contents reflected the existence of "Structural" drawings, including drawings for "roof framing plan," "typical foundation sections & details," "first floor slab plan," and "wall sections," Whole Foods failed to include any of the "structural" drawings in the plans it delivered to Wical. *See* Dkt. 21-3.

4. On August 7, 2017, in its Opposition to Wical's Motion to Dismiss, Whole Foods represented to the Court that "the intended modifications to the store are not structural" and, accordingly, Whole Foods did not need Wical's consent to make alterations. Dkt. 22, at 6-7. Whole Foods repeated this assertion in a filing on April 17, 2018. *See* Dkt. No. 49 at 4 ("Whole Foods continues to disagree that any proposed modifications are structural.").

5. Whole Foods did not provide the already-existing structural drawings when it provided plans to Wical. The structural drawings were first provided to Wical in late March/early April 2018—after this Court had decided Wical's Motion to Dismiss.[2] As Wical suspected, the plans reflect that Whole Foods *does* intend to make structural modifications to the Store. The plans include drawings previously withheld under the category "structural," including drawings titled "First Floor Slab Plan," "CFMF Bulkhead Framing Plan," "Partial Vestibule 01 Framing Plan," "Wall Sections," and "Typical Foundation Sections & Details." As is common with architectural drawings reflecting alterations to a structure, each page of the drawings relating to structural modifications is marked with an "S."

---

[2] Whole Foods still has not submitted all the information it is required to submit to Wical under Paragraph 7(A) of the Lease, including a list of proposed contractors.

6. Because Whole Foods proposes to make structural changes, which fall squarely within Section 7(A) of the Lease, Whole Foods is required to obtain Wical's consent. The Court was not fully informed on Wical's Motion to Dismiss as to the clear structural nature of Whole Foods' proposed modifications.

7. In addition, Whole Foods has misused the Court's statement in its Memorandum Opinion that "the lease's *force majeure* clause – Paragraph 30(A) – does justify closure beyond 60 days," Dkt. 36, at 8, to argue that the Court has conclusively decided this fact at the pleading stage. *See* Dkt. 38 at 5; *see also* Dkt. 49 at 3.[3] This relates to the Lease requirement that Whole Foods keep the Store free from pests and Whole Foods' claim that it may remain closed for an extended period of time under the Lease because of a "plan approval delay" allegedly "beyond its control" under the *force majeure* clause (Paragraph 30(A)) of the Lease. Am. Compl. Ex. A ¶ 4(F).

8. Whole Foods ignores the fact that the Court made clear that, in deciding Wical's motion to dismiss, the Court was passing judgment on the *sufficiency* of Whole Foods' Amended Complaint, not drawing any final conclusions: Dkt. 36 at 9 ("Whole Foods sufficiently ***pleads*** that the initial closure of the store was beyond their control.") (emphasis added). Indeed, it is well-settled that a court deciding a motion to dismiss may not make any findings of fact, findings as to mixed questions of law and fact or make any judgment about the probability of the plaintiff's success. *See Aktielselskabet AF 21. Nov. 2001 v. Fame Jeans Inc.*, 525 F.3d 8, 17 (D.C. Cir. 2008) ("A court deciding a motion to dismiss must not make any judgment about the probability of the plaintiff's success"); *Lucas v. District of Columbia*, 214 F. Supp. 3d 1, 5-6 (D.D.C. 2016) ("A court analyzing a motion to dismiss under Rule 12(b)(6) . . . does not make independent factual

---

[3] Although Whole Foods claims that the Court made a legal conclusion, whether Whole Foods was excused under Paragraph 30(A) is a question of fact or, at most, a mixed question of law and fact this Court cannot decide when denying a Rule 12(b)(6) motion to dismiss.

findings . . . .") ; *Hedgeye Risk Management, LLC v. Heldman*, No. 16-935 (RDM), 2017 WL 4250506, at *4 (D.D.C. Sept. 23, 2017) (noting the court "may not make factual findings on a motion to dismiss"); *McConnell v. Air Line Pilots' Ass'n, Int'l*, No. 08-cv-1600 (RMC), 2009 WL 765884, at *1 (D.D.C. Mar. 23, 2009) ("On a motion to dismiss, a court must treat the complaint's factual allegations—including mixed questions of law and fact—as true, drawing all reasonable inferences in the plaintiff's favor."); *Brown v. Porer McGuire Kiakona & Chow, LLP*, No. 16-00448, 2017 WL 3763843, at *11 (D. Haw. Aug. 30, 2017) ("[D]etermining the merits of Plaintiffs' position will involve mixed issues of law and fact that cannot be decided in a motion to dismiss.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

9. It is beyond the pale for Whole Foods to suggest that, at this pleading stage, the Court has already conclusively ruled that Whole Foods' actions were justified by *force majeure* where, as here, there is no record establishing what facts led to the pest infestation resulting in the problem which, in turn, has led to Whole Foods' "plan approval delay" excuse under the *force majeure* clause. Such a ruling cannot be made at this stage and fails to take into account that Wical is entitled to discovery to determine whether it was, in fact, Whole Foods' own failure to maintain its premises that led to the pest infestation or whether, as Whole Foods claims, the pest infestation was beyond its control and, essentially, an act of god falling under Paragraph 30(A). Wical has been unable to locate any cases from any jurisdiction that have ever held that pest infestation of any kind meets the requirements of *force majeure*. Clearly, the District did not find Whole Foods blameless, given that the city government closed Whole Foods down temporarily for failure to control pests.

10. Finally, the Lease itself reflects the Parties' intent that pest problems are not considered events "without fault and beyond the control" of the Parties to trigger the *force majeure*

clause of Paragraph 30(A). The Lease expressly refers to "pests" in Section 4(F). However, there is no mention of "pests" in the *force majeure* clause. Under axiomatic principles of contract construction, the omission of this language in Paragraph 30(A) leads to the clear conclusion that the existence of "pests" leading to an alleged need to change the structure of Wical's property was never intended by the parties to meet the requirements of the *force majeure* clause. *See, e.g.*, *St. Paul Fire & Marine Ins. Co. v. Thypin Steel Co.*, No. 95 CIV. 4439 (MBM), 1999 WL 163562, at *3 n.2 (S.D.N.Y. Mar. 24, 1999) ("Omission of a term in one provision of a contract but inclusion of that term in another provision must be assumed to have been intentional under accepted canons of contract construction.").

Dated: May 25, 2018

Respectfully submitted,

/s/     Moxila A. Upadhyaya
J. Douglas Baldridge (DC Bar No. 437678)
Moxila A. Upadhyaya (DC Bar No. 494373)
Kevin W. Weigand (DC Bar No. 1004998)
600 Massachusetts Avenue, NW
Washington, D.C. 20001
Phone: (202) 344-4000
Facsimile: (202) 344-8300
jbaldridge@venable.com
maupadhyaya@venable.com
kwweigand@venable.com

*Counsel for Defendant Wical Limited Partnership*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the 25th day of May, 2018, I served a copy of the foregoing through the Court's Electronic Case Filing System, which will send notification to the following:

>Brian P. Waagner
>Husch Blackwell LLP
>750 17th Street NW, Suite 900
>Washington, DC 20006
>Brian.Waagner@HuschBlackwell.com

>Norman B. Berger
>Sandra D. Mertens
>Gensburg, Calandriello & Kanter, P.C.
>200 West Adams Street, Suite 2425
>Chicago, Illinois 60606
>NBerger@gcklegal.com
>SMertens@gcklegal.com

*Counsel for Plaintiff*

/s/   Moxila A. Upadhyaya
Moxila A. Upadhyaya