# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WHOLE FOODS MARKET GROUP, INC., | ) |
| Plaintiff, | ) ) ) |
| v. | ) Civil Action No. 1:17-cv-01079-RCL ) |
| WICAL LIMITED PARTNERSHIP, | ) ) |
| Defendant. | ) ) |

## MEMORANDUM OPINION

This lawsuit involves a contractual dispute regarding the lease agreement between landlord Wical Limited Partnership ("Wical") and tenant Whole Foods Market Group, Inc. ("Whole Foods"). Plaintiff Whole Foods has moved for partial summary judgment. Defendant Wical has moved for summary judgment on all counts. The Court has subject matter jurisdiction over this case based on diversity under 28 U.S.C. § 1332(a)(1). For the reasons set forth below, the Court finds that it would be inappropriate to grant summary judgment for either party and will therefore deny both motions.

## BACKGROUND

Whole Foods began operating a grocery store at 2323 Wisconsin Ave. NW, Washington, D.C. 20007 more than twenty years ago. Wical owns the property and entered into a lease agreement with Whole Foods on March 10, 1994. Beginning in 2015, Whole Foods started noticing indications that rodents were present in the store. Plaintiff called upon its pest company, Rentokil-Steritch ("Steritech"), to escalate its services. In January of 2017, the D.C. Department of Health inspected the store and found evidence of rodents, so Whole Foods continued working with Steritech to try to eradicate the infestation. The Department of Health's February 8, 2017

1

inspection found no rodents, but its inspection the following day did show evidence of rodents in the store, so the Department of Health ordered a summary suspension. Whole Foods complied with the closure order and called in pest control services to clean the store and treat the rodent problem. The next day, Whole Foods was able to reopen the store. Following the February 28, 2017 inspection of the insulated drop ceiling in the top level of the underground garage (which lies below the entire sales floor), it became clear that the drop ceiling contained significant rodent activity and harborage and was exacerbating the store's rodent problem. The Department of Health conducted another inspection on March 13, 2017 and found evidence of rodents. Whole Foods closed the store for three days to further investigate and treat the infestation. Its efforts, however, did not fully resolve the store's rodent problem.

Whole Foods decided to demolish the suspended ceiling and the interior of the store and began planning to rebuild and upgrade the interior. Whole Foods met with Wical on March 23, 2017 to discuss the pest problem and rebuilding. Wical allegedly advised Whole Foods that it was in default of the lease because the store would be closed more than sixty days as prohibited by Paragraph 4(G) and offered Whole Foods the opportunity to sign a new lease with higher rent (including a new percentage rent provision) and a twenty-year fixed term. At the time, Whole Foods was one year into its first of four five-year options.

In April of 2017, Whole Foods informed Wical that it would be delayed in re-opening the store as a result of the demolition but asserted that the delayed reopening was excused under the *force majeure* clause in Paragraph 30(A) of the lease. Wical replied by declaring its belief that Paragraph 30(A) did not apply; it demanded that the store reopen by May 12, 2017 in accordance with the lease's cure provision. Whole Foods did not reopen the store by May 12, 2017, so on May 15, 2017, Wical issued a Notice of Default. Whole Foods cannot rebuild the store without a

permit, as the District of Columbia requires the landlord's consent to the proposed plans before it will issue a permit. Whole Foods requested Wical's permission on May 23, 2017. As of this time, Wical has not given its consent.

## THE PARTIES' ALLEGATIONS OF MATERIAL BREACHES

In order for one party's performance on a contract to be excused, the other party must have committed a material breach. In the District of Columbia, a court must consider the following factors when determining whether a breach was material:

> (a) the extent to which the injured party will be deprived of the benefit which he reasonably expected;
>
> (b) the extent to which the injured party can be adequately compensated for the part of that benefit of which he will be deprived;
>
> (c) the extent to which the party failing to perform or to offer to perform will suffer forfeiture;
>
> (d) the likelihood that the party failing to perform or to offer to perform will cure his failure, taking into account all of the circumstances including any reasonable assurances; and
>
> (e) the extent to which the behavior of the party failing to perform or to offer to perform comports with the standards of good faith and fair dealing.

*Howard Town Center Developer, LLC v. Howard Univ.*, 278 F. Supp. 3d 333, 394 (D.D.C. Aug. 14, 2017) (citing *Greyhound Lines, Inc. v. Bender*, 595 F. Supp. 1209, 1224 (D.D.C. 1984) (quoting Restatement (Second) of Contracts § 241)). As explained below, it would be premature at this stage of the litigation to find that either party has breached the lease, so any determination of materiality must wait until trial. It is, however, still important to remember that a breach alone is insufficient to excuse further performance—that breach must also be material in nature before the other party may refuse to perform.

Plaintiff claims that defendant materially breached the lease in six ways: (i) by claiming that the lease was in default prior to the termination of sixty days; (ii) by demanding a new lease

with higher rent and a longer term; (iii) by refusing to recognize Whole Foods' notice of excused delay under Paragraph 30(A) of the lease; (iv) by issuing an unlawful and pretextual Notice of Default on May 15, 2017; (v) by threatening to terminate the lease; and (vi) by unreasonably withholding its consent to Whole Foods' permit application to the District of Columbia for reconstruction of the interior of the store in violation of Paragraphs 7(A) and 21 of the lease, thus depriving Whole Foods of its use and enjoyment of the property. All six of Whole Foods' allegations rest on the premise that any previous breach on its part is excused under Paragraph 30(A)'s *force majeure* clause. If any prior material breach on Whole Foods' part is not excused, then any alleged breach on Wical's part is irrelevant.

Whole Foods alleges that it has been harmed by continuing to pay rent despite being unable to use the store. Whole Foods also claims that it has incurred substantial property upkeep costs to maintain the property in its semi-demolished state, as well as the cost of repairs and improvements performed with the understanding that the lease would continue. Additionally, Whole Foods believes that it is entitled to lost profits resulting from Wical's refusal to consent to the permit application as well as damages for the harm to its goodwill and reputation in the community. Finally, Whole Foods seeks repayment of attorneys' fees incurred throughout this litigation.

Defendant, in turn, alleges that plaintiff is actually the one who materially breached the lease. Wical cites six different ways in which it believes Whole Foods breached the lease: (i) by failing to reopen the store after closing it for sixty days; (ii) by failing to keep the store clean and free from pests; (iii) by failing to comply with all laws regarding the cleanliness, safety, and operation of the store; (iv) by failing to provide Wical with any plans prior to demolishing the interior of the store; (v) by failing to perform its maintenance obligations; and (vi) by subletting

the parking garage to the public without Wical's consent. Wical contends that because of these six material breaches, Wical was no longer required to perform under the lease, was not required to consent to the permit, and is entitled to judgment as a matter of law on all four counts.

Wical's first, second, third, and fifth allegations raise the same question that all of Whole Foods' allegations raise: Was the infestation an "act of God" under the *force majeure* clause, thereby excusing any breach on Whole Foods' part? As explained below, the Court cannot grant summary judgment on that issue, and those allegations should be determined at trial. Wical's fourth allegation simply cannot be answered until after the question of whether the infestation was an "act of God" is answered; if the infestation had never occurred, there would have been no need to renovate and make either structural or non-structural changes. Therefore, if the infestation was Whole Foods' fault, Whole Foods breached the lease before making any interior changes or requesting Wical's consent for the permit, making any notice of or consent to renovations a non-issue. Therefore, it is improper to rule on Wical's fourth allegation—that Whole Foods failed to provide Wical with any plans prior to demolishing the interior of the store—before ruling on whether the infestation was an "act of God." Similarly, it would be inappropriate to make any determinations at this time about whether Wical violated the lease by withholding its consent for the permit application, as its refusal is irrelevant if Whole Foods had already breached the lease. Therefore, the Court will not discuss Wical's fourth allegation any further. Finally, Whole Foods vehemently disputes Wical's sixth allegation, making summary judgment on that issue inappropriate; this sixth allegation is explored in more detail below.

## **LEGAL STANDARD FOR SUMMARY JUDGMENT**

The Court may only grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact" and that "the movant is entitled to judgment as a matter

of law." Fed. R. Civ. P. 56. A material fact is one that "is capable of affecting the outcome of the litigation." *Carter v. Urban Serv. Sys. Corp.*, 324 F. Supp. 3d 19, 28 (D.D.C. 2018). A genuine dispute means that a reasonable factfinder "could return a verdict for the nonmoving party." *Id.*

## ANALYSIS

Because neither plaintiff nor defendant can show "that there is no genuine dispute as to any material fact," the Court cannot grant either party's summary judgment motion. Fed. R. Civ. P. 56. Whole Foods and Wical both agree that while Paragraph 4(G) of the lease prevents Whole Foods from closing the store for more than sixty days, Paragraph 30(A)'s *force majeure* clause could potentially excuse a breach of Paragraph 4(G). Both parties agree that the *force majeure* clause excuses "acts of God, strikes, lockouts, labor troubles, plan approval delay, inability to procure materials, restrictive government laws or regulations, adverse weather, unusual delay in transportation, delay by the other party hereto or other cause without fault and beyond the control of the party obligated to perform." Lease Agreement at ¶ 30(A). It is also undisputed that in certain circumstances, a rodent infestation could constitute an "act of God" if it was truly a force of nature outside the control of the party claiming the benefit of the *force majeure* clause. In order to qualify as an "act of God," however, the infestation must be "of such character that it could not have been prevented or avoided by foresight or prudence." *Watts v. Smith*, 226 A.2d 160, 162 (D.C. 1967). This means that "human interference or influence on what could otherwise be considered an act of God . . . precludes an 'Act of God' legal defense." *Am. Nat. Red Cross v. Vinton Roofing Co.*, 629 F. Supp. 2d 5, 9 (D.D.C. 2009).

Wical argues that although a rodent infestation could constitute an "act of God" in certain situations, the infestation does not meet that threshold in this case because Whole Foods caused the problem. Plaintiff and defendant have presented conflicting evidence regarding whether

6

Whole Foods caused the rodent issue (and if so, to what extent). This conflicting evidence, which is outlined in further detail below, means that there is still a genuine dispute of fact. This genuinely disputed fact is also material, as Whole Foods' level of responsibility for the infestation is the linchpin of this case. Whole Foods believes that closing the store for more than sixty days was also excused because of the need to obtain a permit under D.C. law, but Whole Foods never would have needed to obtain a permit if there hadn't been an infestation requiring a new design for the store.[1] Therefore, this case still hinges on whether the rodent problem was an "act of God."

      To demonstrate that it could not have prevented the rodent problem, Whole Foods offers the findings of Dr. Godfrey Nalyanya. As explained in the Court's Memorandum Opinion and Order (ECF No. 97) denying Wical's Motion in Limine to Exclude the Testimony of Plaintiff's Rebuttal Expert Godfrey Nalyanya, Ph.D. (ECF No. 67), Dr. Nalyanya meets the requirements set forth in Federal Rule of Evidence ("Fed. R. Evid.") 702 to testify as an expert. This does not mean that the Court will necessarily agree with his trial testimony, but for the purposes of summary judgment, the Court must recognize that his findings are different from those of Wical's expert, Dr. Richard Kramer. Dr. Nalyanya concludes that the infestation was out of Whole Foods' control and was instead the result of external factors like Georgetown's widespread rat problem and a nearby baseball field that is known to attract rodents. Although

---

[1] Even if Wical had consented to the permit application, renovations would have closed the store for more than sixty days, meaning that Whole Foods still would have been in violation of the lease. Although it is true that Wical has refused to consent to the permit, this never would have happened if the infestation had not occurred, so the Court cannot answer the question of whether Wical must consent to the permit application until the Court first decides whether the infestation was an "act of God." If Whole Foods materially breached the lease first, then any subsequent breach on Wical's part is irrelevant, as Wical would no longer have been required to perform. Therefore, Whole Foods' level of culpability for the infestation remains the ultimate question in this case.

Wical may be able to undermine his credibility in some way on cross-examination, that is a matter for trial, not summary judgment.

To demonstrate that Whole Foods was responsible for the infestation (which is required to support Wical's first, second, third, and fifth allegations), Wical relies upon the findings of Dr. Kramer. According to his expert report, Dr. Kramer was able to conclude that Whole Foods was responsible for the infestation. He believes that the presence of mice as opposed to rats inside the store suggests that Georgetown's rat problem was not to blame; rather, Whole Foods' failure to maintain proper conditions within the store was the source of the issue. Summary judgment is rarely appropriate where there is a "battle of the experts"—such a battle should be fought at trial with the benefit of live testimony and cross-examination.

Furthermore, as explained in the Court's Memorandum Opinion and Order (ECF No. 98) denying Whole Foods' Motion to Strike and Exclude Dr. Jill Gordon and All References to Dr. Jill Gordon Report (ECF No. 81), Dr. Gordon's report in a separate but related litigation is admissible due to a hearsay exemption under Fed. R. Evid. 801(d)(2)(B). The report concludes that the store's manager, Mr. Jean-Michel Bartolo, was at least partly to blame for the infestation. This does not, however, mean that Whole Foods cannot find ways to undermine her report. Essentially, too much of the evidence that both sides have presented needs to be weighed at trial where the Court can more appropriately make the necessary credibility determinations.

Additionally, as noted above, Wical contends that Whole Foods materially breached the lease by failing to obtain Wical's consent before subletting the parking garage. Because each side has presented conflicting evidence about whether that actually happened, the Court cannot determine at this time whether Whole Foods committed a material breach. Wical points to statements made by Scott Allhouse during his deposition about another Whole Foods employee

claiming that Mr. Bartolo was subletting parking spaces. Wical may be able to establish this at trial through the testimony of various Whole Foods employees, but at this stage, the Court certainly sees no basis for finding a material breach. Additionally, Whole Foods correctly points out that Wical would need to show that more than 5,000 square feet of the parking garage was being subleased in order for Whole Foods to have breached the lease. Whole Foods submitted an affidavit from Derek Gruber, the store's assistant manager, explaining that he understood there to be an informal agreement between the store and a nearby parking garage that allowed them to use some parking spaces but that this informal agreement did not involve the exchange of money. The alleged subletting will need to be more fully fleshed out at trial before the Court can determine whether Whole Foods materially breached the lease. Wical may ultimately be able to demonstrate that such a breach occurred, but at this time, it has not convinced the Court that there is no genuine dispute of material fact regarding its sixth allegation.

The contractual dispute in this case ultimately boils down to whether the infestation was out of Whole Foods' control. If the infestation truly was out of its control, then the "act of God" language in the lease's *force majeure* clause operates as an excuse. If, however, Whole Foods could have prevented the infestation, then the infestation was not an "act of God" and the *force majeure* clause is inapplicable. It is also possible that Whole Foods could have partially prevented the infestation but could not have stopped it entirely, in which case the store still may have needed to close for more than sixty days. In that scenario, the infestation may still constitute an "act of God" depending on the degree to which Whole Foods could have prevented it.

Essentially, the applicability of the lease's *force majeure* clause is critical to the outcome of this case. If Whole Foods is correct that the *force majeure* clause applies, then Wical may have been wrong to issue a notice of default and to withhold its consent for the permit

9

application. If Wical is correct that the *force majeure* clause does not apply, then Whole Foods was wrong to keep the store closed in violation of Paragraph 4(G), making Wical perfectly justified in issuing a notice of default and withholding its consent for the permit application. Therefore, the conflicting evidence regarding whether Whole Foods could have prevented or alleviated the rodent issues makes summary judgment for either party inappropriate here. Quite simply, this Court cannot grant summary judgment when each side has presented conflicting evidence that could be believed at trial. Because it is possible that either party could prevail at trial depending on the testimony and other evidence presented, the Court must deny both summary judgment motions.

## **CONCLUSION**

Based on the foregoing, we will DENY plaintiff Whole Foods Market Group, Inc.'s Motion for Partial Summary Judgment.

We will also DENY defendant Wical Limited Partnership's Motion for Summary Judgment.

A separate Order accompanies this Memorandum Opinion.

Date: October 22, 2019 /s/
Royce C. Lamberth
United States District Court Judge