# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WHOLE FOODS MARKET GROUP, INC., | )<br>) |
| Plaintiff, | )<br>) |
| v. | ) Civil Action No. 1:17-cv-01079-RCL<br>) |
| WICAL LIMITED PARTNERSHIP, | )<br>) |
| Defendant. | )<br>) |

## MEMORANDUM OPINION

Defendant Wical Limited Partnership ("Wical") has moved to strike plaintiff Whole Foods Market Group, Inc.'s ("Whole Foods") damages claims for: (1) cost of repairs and improvements; (2) lost profits; (3) loss of employees; (4) harm to goodwill and reputation; (5) value of future leasehold; (6) relocation expenses; and (7) disgorgement of amounts to which Wical has been unjustly enriched. ECF No. 68. For the reasons set forth below, the Court will deny Wical's motion to strike.

## LEGAL STANDARD

Both parties in this case previously moved for summary judgment. The Court denied both motions, finding that there is a genuine dispute of material fact regarding whether Whole Foods was responsible for the rodent infestation. ECF No. 100. Wical still argues that Whole Foods is not entitled to damages for the aforementioned categories. Under District of Columbia law, the plaintiff must establish both "the fact of damage and a reasonable estimate." *Bedell v. Inver Hous., Inc.*, 506 A.2d 202, 205 (D.C. 1986) (quoting *W.G. Cornell Co. v. Ceramic Coating Co.*, 626 F.2d 990, 933 (D.C. Cir. 1980)). Although "damages are not required to be proven with

mathematical certainty, there must be some reasonable basis on which to estimate damages." *Romer v. District of Columbia*, 449 A.2d 1097, 1100 (D.C. 1982).

The Federal Rules of Civil Procedure ("Fed. R. Civ. P.") also set forth certain requirements regarding damages claims. Fed. R. Civ. P. 26(a)(1)(A)(iii) says that a party must provide "a computation of each category of damages claimed" and "make available for inspection . . . the documents or other evidentiary material . . . on which each computation is based." Parties also have the responsibility of updating and correcting their disclosures "in a timely manner" throughout the litigation. Fed. R. Civ. P. 26(e)(1)(A). Furthermore, Fed. R. Civ. P. 37(c)(1) states, "If a party fails to provide information . . . as required by Rule 26(a) or (e), the party is not allowed to use that information . . . unless the failure was substantially justified or is harmless."

In considering Wical's motion, it is important to note that striking damages claims at this stage of the litigation is disfavored. In *Magdalene Campbell & Fort Lincoln Civic Ass'n v. Ford Lincoln New Town Corp., Inc.*, the Court found that it would be "premature" prior to trial "to say as a matter of law" that appellants could not meet their burden to show damages. 55 A.3d 379, 388-89 (D.C. 2012). Proof of damages is seldom "mathematically precise," so "definitive and precise proof of damages is rarely possible and not required." *Id.* at 388 (quoting *Trs. Of the Univ. of D.C. v. Vossoughi*, 963 A.2d 1162, 1177-78 (D.C. 2009)). A damages award may be based on "probable and inferential considerations as well as direct and positive proof." *Id.* (quoting *Vossoughi*, 963 A.2d at 1175). This is especially true where damages are continuing, meaning that a final computation of damages cannot be completed until after a decision on the merits. With this in mind, the Court finds that it would be inappropriate to grant Wical's motion to strike at this time.

Although the Court will deny Wical's motion, nothing in this Memorandum Opinion should be construed to mean that the Court will even reach the question of damages following its decision on the merits. All of these damages claims are entirely contingent upon Whole Foods' success on the merits, as resolving the dispute in Wical's favor would make the claims discussed below irrelevant. Even a decision for Whole Foods on the merits does not guarantee recovery on all damages claims, as Whole Foods would still have the burden to prove that it deserves each category of damages to which it claims it is entitled. This Memorandum Opinion stands merely for the proposition that Whole Foods has provided sufficient information to make striking any damages claims improper at this time.

## ANALYSIS

Wical makes four primary arguments regarding Whole Foods' various damages claims and why each one should be stricken. These arguments are addressed below in the order that Wical presented them.

### I. Wical is Incorrect in Arguing that All Consequential Damages are Barred under the Lease Agreement.

Wical argues that this Court should strike all of Whole Foods' claims for consequential damages, including the cost of repairs and improvements, lost profits, loss of employees, harm to goodwill and reputation, value of future leasehold, and relocation expenses. Wical claims that under the lease, Whole Foods cannot recover consequential damages arising from its own failure to continuously operate the store. This argument is only valid, however, if Whole Foods' closure of the store was not excused under the *force majeure* clause. This reasoning is more fully explained in the Court's Memorandum Opinion denying both parties' motions for summary judgment. ECF No. 100. It would be inconsistent with the Court's order denying summary

judgment to decide whether Whole Foods is barred from recovering consequential damages under the lease before determining whether Whole Foods or Wical was the first party to materially breach the lease. If it becomes clear at trial that Whole Foods was the first one to materially breach the lease, Whole Foods will lose on the merits and damages will become irrelevant. If, however, Wical was the first to materially breach the lease, Whole Foods may be able to recover some or all of its claimed consequential damages depending on the evidence that it presents. Either way, this Court finds that consequential damages are not categorically barred under the lease.

**II. Wical is Incorrect in Arguing that Whole Foods Failed to Provide Proper Computations for its Claims Regarding Loss of Employees, Harm to Goodwill and Reputation, Value of Future Leasehold, Relocation Expenses, and Disgorgement from Wical.**

Wical's second argument is that the Court should preclude Whole Foods from recovering damages in any category for which it did not provide the proper computations or underlying analyses. Wical asserts that Whole Foods failed to make the requisite showing for the following categories: loss of employees, harm to goodwill and reputation, value of future leasehold, relocation expenses, and disgorgement from Wical. Wical's assertion is incorrect, as Whole Foods did provide computations and supporting documents for these categories.

What Wical provided is sufficient for this stage of the litigation. Whole Foods produced emails and spreadsheets listing the Whole Foods' employees who lost their jobs at the store upon its closure. Scott Allhouse also testified at his deposition that (as best he recalled), approximately 150 employees worked at the Georgetown store at the time it closed. Harm to goodwill and reputation is inherently a bit less precise of a claim, but numerous newspaper articles demonstrate the community's feelings about the infestation and the store's subsequent closure. The value of future leasehold claim simply refers to Whole Foods being denied the opportunity

4

to exercise its future options "on the backside of the current lease" meaning that there is "a value for [Whole Foods] that [it] would be denied because of this action." Allhouse Deposition at 67:14-20. It would be premature to calculate that amount at this time. Similarly, relocation expenses cannot currently be calculated because Whole Foods has not yet moved the store, so this category of damages will only become relevant should Whole Foods decide to move the store. As for the disgorgement claim, Whole Foods appears simply to be asking for repayment of the money that it believes Wical wrongfully obtained. This should be fairly straightforward, as Whole Foods has been making its monthly rent payments into the Court's escrow, which is clearly reflected on the docket. Of course, if Whole Foods were to prevail on the merits, Wical is more than welcome to contest Whole Foods' analyses and calculations for these categories, but what Whole Foods has provided is sufficient for these claims to survive a motion to strike.

**III. Wical is Incorrect in Arguing that Whole Foods Failed to Adequately Support its Lost Profits Claim.**

Wical's third argument is that the Court should strike Whole Foods' lost profits claim because Whole Foods not only failed to disclose an expert witness to testify about the lost profits issue, but also failed to provide a reasonable computation or supporting documentation to support its claim. Whole Foods claims that as of November 18, 2018 it was entitled to $4,862,480 in lost profits. Wical asserts that Whole Foods failed to provide an expert witness or any other underlying support to explain this amount and thus the claim should be stricken.

Turning first to the issue of whether a lost profits claim automatically necessitates disclosure of an expert witness, this Court finds that it does not. Although of course an expert witness is extremely helpful and can often be what sways a factfinder to award lost profits damages, there is no definitive rule requiring an expert in every lost profits case. Wical is correct that District of Columbia law requires an expert when the subject matter at issue is "beyond the

ken of the average layman." *District of Columbia v. Davis*, 386 A.2d 1195, 1200 (D.C. 1978). It is true that calculating lost profits includes the consideration of numerous factors and many different numbers. The mere presence of large numbers, however, does not necessarily mean that an expert is required. In *Columbus Properties v. O'Connell*, for example, the lessee of a commercial lease was not required to provide expert testimony on the valuation of damages for the landlord's breaches. 644 A.2d 444, 447-48 (D.C. App. 1994). Essentially, Whole Foods may pursue other avenues to develop its lost profits claim, as a factfinder does not necessarily need specialized training to interpret numbers. Therefore, Whole Foods' failure to disclose an expert is not an absolute bar to its lost profits claim.

Although there is no categorical requirement to disclose an expert witness for a lost profits claim, the claimant still has the burden to prove that it deserves to recover its purported amount of lost profits. Wical claims that Whole Foods has not provided sufficient supporting documentation for its claim of $4,862,480 in lost profits. Whole Foods argues that it has provided sufficient evidence. Whole Foods disclosed the names of numerous potential witnesses with knowledge of damages, and Whole Foods is correct that it cannot be punished for Wical's failure to depose those witnesses. Although these witnesses may not end up providing any useful information at trial, the Court cannot definitively say that Whole Foods will be unable to substantiate its lost profits claim.

Furthermore, even without these witnesses, Whole Foods has provided sufficient evidence of its lost profits calculations to survive a motion to strike. It disclosed many documents, including a spreadsheet detailing its lost profits calculations, emails regarding anticipated profits, and its profit/loss statements for the fiscal years 2012, 2013, 2014, 2015, 2016, and 2017 (prior to the store's closure). Essentially, at this stage of the litigation, a plaintiff

6

merely needs to provide enough evidence to show that there are damages as well as the general analyses it used in arriving at its calculations. Whole Foods may ultimately regret its decision not to call an expert witness, but that does not mean that its claim should be stricken. Although Whole Foods may not ultimately be able to prove that it suffered $4,862,480 (plus the additional damages that have accrued since it provided that amount) in lost profits, at this time, it would be inappropriate to strike the claim.

**IV. Wical is Incorrect in Arguing that Whole Foods Failed to Adequately Support its Claims for Costs of Repairs and Improvements.**

Wical's fourth argument is that the Court should strike Whole Foods' claims for costs of repairs and improvements because it failed to provide supporting documentation. This argument is inaccurate. Whole Foods did provide evidence of its damages for costs of repairs and improvements. It disclosed (among other things) numerous emails regarding remodeling costs, spreadsheets itemizing the costs associated with repairs and maintenance, pest control costs, and invoices and contracts from vendors. As explained above, Whole Foods may not ultimately prevail on this claim, but it would be premature to strike it entirely at this stage. Therefore, the Court will not strike Whole Foods' claim for damages for repairs and improvements.

## **CONCLUSION**

Based on the foregoing, the Court will DENY Wical Limited Partnership's Motion to Strike Whole Foods' Damages Claims.

A separate Order accompanies this Memorandum Opinion.

Date: October 24, 2019

/s/
Royce C. Lamberth
United States District Court Judge